IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MCHAEL MAEDA and ILIANA SANCHEZ, individually and on behalf of all others similarly situated, | ) ) ) | CIVIL NO. 18-00459 JAO-RLP |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiffs, | ) ) | DENYING IN PART DEFENDANT PINNACLE FOODS INC.'S MOTION |
| | ) | TO DISMISS PLAINTIFFS' CLASS |
| vs. | ) | ACTION COMPLAINT |
| | ) | |
| PINNACLE FOODS INC.; DOES 1 THROUGH 50, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT PINNACLE FOODS INC.'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

This putative consumer class action arises out of the sale and marketing of

Defendant Pinnacle Food Inc.'s ("Defendant") Hawaiian brand snacks, including:

Hawaiian Kettle Style Potato Chips, Original; Hawaiian Kettle Style Potato Chips,

Luau BBQ; Hawaiian Kettle Style Potato Chips, Sweet Maui Onion; Hawaiian

Kettle Style Potato Chips, Ginger Wasabi; Hawaiian Kettle Style Potato Chips,

Hulapeno; Hawaiian Kettle Style Potato Chips, Mango Habanero; Hawaiian Luau

Barbeque Rings; and Hawaiian Sweet Maui Onion Rings (collectively "Hawaiian

Snacks"). Plaintiffs allege that they purchased these snacks due to false and

deceptive labeling, packaging, and advertising, which misled them into believing that the snacks are made in Hawaiʻi from local ingredients.

Defendant moves to dismiss this action for lack of personal jurisdiction, lack of actionable misrepresentation as to the consumer protection claims, failure to state a claim, and lack of standing. For the reasons articulated below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint. ECF No. 11.

## BACKGROUND

Plaintiffs commenced this action on October 12, 2018 in the Circuit Court of the First Circuit, State of Hawaiʻi. Defendant removed the action on November 23, 2018. Plaintiffs allege that although the Hawaiian Snacks are manufactured in Algona, Washington, Defendant markets them in such a manner as to mislead consumers into believing that they were manufactured in Hawaiʻi.

Plaintiffs assert the following claims: (1) violation of Hawaiʻi's made in Hawaiʻi statute (Haw. Rev. Stat. § 486-119); (2) violation of Hawaiʻi's Uniform Deceptive Trade Practices Act (Haw. Rev. Stat. Chapter 480); (3) violation of Hawaiʻi's false advertising law (Haw. Rev. Stat. § 708-871); (4) violation of California's Consumers Legal Remedies Act (Cal. Civil Code § 1750); (5) violation of California's unfair competition law (Cal. Business & Professions Code § 17200); (6) violation of California's false advertising law (Cal. Business &

Professions Code § 17500); (7) breach of express warranty; (8) breach of implied warranty; (9) common law fraud; (10) intentional misrepresentation; (11) negligent misrepresentation; and (12) quasi-contract/unjust enrichment/restitution.

The three proposed classes identified by Plaintiffs are as follows:

<u>Hawaii Class</u>: All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of Hawai'i.

<u>California Class</u>: All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of California.

<u>California Consumer Subclass</u>: All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks for personal, family, or household purpose, in the State of California.

Compl. at ¶ 51.

In their prayer for relief, Plaintiffs request a declaration that Defendant's conduct violates the law; restitution; damages; punitive damages; attorneys' fees and costs; and pre and post judgment interest. *Id.* at 31-32.

LEGAL STANDARD

A. <u>Rule 12(b)(1)</u>

Under Federal Rule of Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint. Fed. R. Civ. P. 12(b)(1). "Standing is a threshold matter central to our subject matter jurisdiction." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[L]ack of Article III standing requires dismissal for lack

of subject matter jurisdiction under [FRCP] 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citations omitted). In determining constitutional standing, the trial court has the authority to "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing." *Id.* (citation and quotations omitted). The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of standing." *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

B. Rule 12(b)(2)

Under FRCP 12(b)(2), a defendant may seek dismissal of an action, or of particular claims, for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In determining whether personal jurisdiction exists, courts may consider evidence presented in affidavits and declarations. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001) *abrogated on other grounds by Daimler AG v. Bauman*, 571 U.S. 117 (2014). Plaintiffs bear the burden of showing that courts have personal jurisdiction over defendants. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Absent formal discovery or an evidentiary hearing, "this demonstration requires that the plaintiff make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (quotations omitted).

To make this prima facie showing, a plaintiff can rely on the allegations in its complaint to the extent that the moving party does not controvert those allegations. *See Doe*, 248 F.3d at 922.

C. Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "'the court accepts the facts alleged in the complaint as true,' and '[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged.'" *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000). Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice. *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions. *Id.* As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original). If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment. *Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007).

<u>DISCUSSION</u>

Defendant seeks dismissal of the Complaint with prejudice on the following grounds: (1) the Court lacks personal jurisdiction over the claims asserted by Plaintiff Iliana Sanchez; (2) Plaintiffs' consumer protection claims fail because Plaintiffs have not alleged an actionable misrepresentation; (3) Plaintiffs' common law claims fail as a matter of law; and (4) Plaintiffs lack standing to seek

prospective injunctive relief.  The Court addresses each of Defendant's arguments in turn.

A. Personal Jurisdiction Over Nonresident Plaintiff Iliana Sanchez and Unnamed Nonresident Class Members

Defendant contends that the Court lacks personal jurisdiction over the claims asserted by Plaintiff Iliana Sanchez, as well as the unnamed nonresident class members.

1. The Court Lacks Personal Jurisdiction Over Plaintiff Sanchez's Claims

Defendant successfully challenges Plaintiff Sanchez's satisfaction of personal jurisdiction requirements.  Although they bear the burden of establishing that jurisdiction is proper, *Boschetto v. Hansing*, 539 F.2d 1011, 1015 (9th Cir. 2008), Plaintiffs have not demonstrated that the Court has personal jurisdiction over Plaintiff Sanchez's claims, nor even addressed the specific jurisdiction test.  It is well established that in a class action, personal jurisdiction requirements "must be satisfied for each and every named plaintiff for the suit to go forward."  *AM Tr. v. UBS AG*, 78 F. Supp. 3d 977, 987 (N.D. Cal. 2015) (quoting *Abrams Shell v. Shell Oil Co.*, 165 F. Supp. 2d 1096, 1107 n.5 (C.D. Cal. 2001)) (citation and quotations omitted); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004) ("Personal jurisdiction must exist for each claim asserted against a defendant.").

Hawaiʻi's long-arm statute, Hawaii Revised Statutes ("HRS") § 634-35, Authorizes the exercise of personal jurisdiction to the extent permitted by the Due Process clause of the Fourteenth Amendment. *Barranco v. 3D Sys. Corp.*, 6 F. Supp. 3d 1068, 1077 (D. Haw. 2014) (citing *Cowan v. First Ins. Co. of Haw.*, 61 Haw. 644, 649, 608 P.2d 394, 399 (1980)). Due Process requires that a defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted) (internal quotations omitted).

There are two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., San Francisco Cty.*, __ U.S. __, 137 S. Ct. 1773, 1779-80 (2017). A corporate defendant's place of incorporation and principal place of business are "paradig[m] . . . .bases for general jurisdiction." *Daimler*, 571 U.S. at 137 (citation omitted) (alteration in original). When a court has general jurisdiction, it "may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different State." *Bristol-Myers*, __ U.S. at __, 137 S. Ct. at 1780 (citation omitted). That said, "'only a limited set of affiliations with a forum will render a defendant

amenable to' general jurisdiction in that State." *Id.* (citation omitted). It is undisputed that the Court lacks general jurisdiction over Defendant.

A court has specific jurisdiction over a nonresident defendant when it "purposefully avails itself of the privilege of conducting activities within the forum State," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), and "the suit 'aris[es] out of or relate[s] to the defendant's contacts with the forum.'" *Daimler*, 571 U.S. at 127 (citation omitted); *Bristol-Myers*, __ U.S. at __, 137 S. Ct. at 1781 (alteration in original) ("In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State.'"). Although courts must consider a variety of interests in determining whether personal jurisdiction is present, including those of the forum State and the plaintiff's forum of choice, the "primary concern" is "the burden on the defendant." *Bristol-Myers*, __ U.S. at __, 137 S. Ct. at 1780 (citations omitted) (internal quotations omitted).

The Ninth Circuit employs a three-part test to determine whether a court may exercise specific jurisdiction over a nonresident defendant:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of conducting activities in the forum; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (internal citations and quotations omitted). The plaintiff bears the burden of establishing the first two prongs. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). If either prong is not satisfied, "personal jurisdiction is not established in the forum state." *Id.* If the plaintiff satisfies the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

The specific jurisdiction inquiry focuses on the relationship between the nonresident defendant, the forum, and the litigation. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* This requires the relationship to "arise out of contracts that the 'defendant *himself*' creates with the forum state" and "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 284-85.

Before applying the specific jurisdiction test, the Court addresses the parties' dispute concerning the extension of *Bristol-Myers Squibb Co. v. Superior Court of*

*California, San Francisco County* to this case.[1]  In its briefing, Defendant contends

that the Court should apply *Bristol-Myers* to dismiss the unnamed non-resident

class members for lack of personal jurisdiction.  At the hearing, however, defense

counsel conceded that the personal jurisdiction inquiry before the Court can be

resolved without reliance on *Bristol-Myers*.  While a number of district courts have

weighed in on whether *Bristol-Myers* should apply to federal courts and/or class

actions, the Court finds it unnecessary to resolve this issue because well-

established jurisprudence governs the present jurisdictional inquiry.  Indeed,

*Bristol-Myers* involved the "straightforward application . . . of settled principles of

personal jurisdiction," *Bristol-Myers*, __ U.S. __, 137 S. Ct. at 1783; *see also id.* at

1781 ("Our settled principles regarding specific jurisdiction control this case.").

Accordingly, the Court declines to speculate as to the applicability of *Bristol-*

*Myers* in this particular context.  *Id.* at __, 137 S. Ct. at 1783-84 ("[S]ince our

decision concerns the due process limits on the exercise of specific jurisdiction by

a State, we leave open the question whether the Fifth Amendment imposes the

same restrictions on the exercise of personal jurisdiction by a federal court.").  Any

---

[1]  In *Bristol-Myers*, a mass tort action, the Supreme Court held that the California
courts could not exercise specific jurisdiction because the relevant plaintiffs were
not California residents and did not claim to have suffered harm in California.  __
U.S. at __, 137 S. Ct. at 1782.

reference to *Bristol-Myers* is limited to the longstanding personal jurisdiction principles therein.

Turning to the specific jurisdiction test, Plaintiff Sanchez has made no effort to establish either of the first two prongs, nor has she cited the relevant test or explained how this Court has specific jurisdiction over her claims, which concern Defendant's purported conduct in California and do not arise out of any of Defendant's contacts with Hawai'i.

### a. Prong One: Purposeful Direction

When cases sound in tort, courts employ the purposeful direction test, also known as the "effects" test. *Axiom Foods*, 874 F.3d at 1069. Under this test, which derives from *Calder v. Jones*, 465 U.S. 783 (1984), "[t]he defendant must have '(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Id.* (citation omitted). Purposeful direction "usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." *Schwarzenegger*, 374 F.3d at 803.

### i. Intentional Act

An intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Washington Shoe Co. v. A–Z*

*Sporting Goods, Inc.*, 704 F.3d 668, 674 (9th Cir. 2012), *abrogated as recognized in Axiom Foods*, 874 F.3d at 1069-70; *Schwarzenegger*, 374 F.3d at 806.  In the Complaint, Plaintiffs allege that Defendant deceptively labeled the Hawaiian Snacks to create impression that they are made in Hawaiʻi and that it sells the snacks at multiple retail locations throughout Hawaiʻi and California.  Defendant's conduct constitutes an intentional act.

ii.  Express Aiming

The second element requires Defendant to have "expressly aimed" its intentional act at the forum state:  Hawaiʻi.  *Schwarzenegger*, 374 F.3d at 806.  As noted above, Plaintiffs allege that the deceptively labeled Hawaiian Snacks were and are sold throughout Hawaiʻi.  Accepting Plaintiffs' allegations as true, Defendant expressly aimed its conduct at Hawaiʻi, but only as to Plaintiff Maeda and the Hawaiʻi class.  *See Calder*, 465 U.S. at 789 ("In sum, California is the focal point both of the story and of the harm suffered.  Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in California.").  The same cannot be said of Plaintiff Sanchez, who claims to have suffered harm in California based on Defendant's deceptive labeling and advertising of the Hawaiian Snacks in California.  Therefore, Plaintiff Sanchez fails to meet the second element of the purposeful direction test.

### iii. Foreseeable Harm

The third and final element of the purposeful direction test is satisfied if Defendant's actions had "foreseeable effects" in the forum state. *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1131 (9th Cir. 2010), *abrogated on other grounds by Axiom Foods*, 874 F.3d at 1069. Although it was foreseeable that Plaintiff Maeda would suffer harm in Hawaiʻi, it was not foreseeable that Defendant's actions in Hawaiʻi (the advertising and sale of its products) would cause harm to Plaintiff Sanchez in California. Accordingly, Plaintiff Sanchez has not satisfied the elements of the purposeful direction test and has correspondingly failed to establish the first prong of the specific jurisdiction test.

### b. Prong Two: Claims Arising Out of Defendant's Forum-Related Activities

The second prong of the specific jurisdiction test requires Plaintiff Sanchez's claims to arise out of or relate to Defendant's forum-related activities. *Axiom Foods*, 874 F.3d at 1068. Plaintiff Sanchez has not argued, nor could she, that her claims involving Defendant's conduct in California arise out of Defendant's activities in Hawaiʻi. Thus, even though Defendant directed certain actions to Hawaiʻi, said conduct has no bearing on the harm allegedly suffered in California.

Because Plaintiff Sanchez has not met her burden as to the first and second prongs, the Court finds that specific jurisdiction is lacking over Plaintiff Sanchez's

claims against Defendant, and it is unnecessary to address the reasonableness prong of the specific jurisdiction test.

      2.  <u>The Court Cannot Exercise Pendent Jurisdiction Over Plaintiff Sanchez's Claims</u>

In an effort to save Plaintiff Sanchez's claims, Plaintiffs posit that the Court can and should exercise pendent personal jurisdiction because her claims arise out of the same nucleus of operative facts as those asserted by Plaintiff Maeda. "Pendent jurisdiction exists *where there is a sufficiently substantial federal claim to confer federal jurisdiction*, and a common nucleus of operative fact between the state and federal claims." *Gilder v. PGA Tour, Inc.*, 936 F.2d 417, 421 (9th Cir. 1991) (emphasis added) (citing *In re Nucorp Energy Sec. Litig.*, 772 F.2d 1486, 1490 (9th Cir. 1985)); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) ("Pendent jurisdiction, in the sense of judicial power, exists whenever there is a claim 'arising under (the) Constitution, the Laws of the United States, and Treaties made'. . . and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.'"); *Action Embroidery*, 368 F.3d at 1180-81 ("Pendent personal jurisdiction is typically found where one or more federal claims for which there is nationwide personal jurisdiction are combined in the same suit with one or more state or federal claims for which there is not nationwide personal

jurisdiction.").[2]

It is within the district court's discretion to exercise personal pendent jurisdiction. *Action Embroidery,* 368 F.3d at 1181. Pendent claims may be dismissed "where considerations of judicial economy, convenience and fairness to litigants so dictate." *Id.* (citation and internal quotations omitted).

Here, there is no federal claim to which Plaintiff Sanchez's claims could relate. A common nucleus of operative fact between Hawai'i and California state law claims cannot alone confer pendent personal jurisdiction. As such, the Court declines to exercise pendent jurisdiction over Plaintiff Sanchez's claims. *Reitman v. Champion Petfoods USA, Inc.*, No. CV181736DOCJPRX, 2018 WL 4945645, at *6 (C.D. Cal. Oct. 10, 2018) (declining to exercise pendent personal jurisdiction over the nonresident named defendants' claims because there was no federal claim upon which the plaintiffs could hook the out-of-state claims).

---

[2] Plaintiffs represent that *Action Embroidery Corp. v. Atlantic Embroidery, Inc.* does not hold that a federal claim is required. But the plaintiffs in *Action Embroidery* alleged antitrust violations under the Sherman Act, a federal claim, in addition to their California state law claims. *Action Embroidery*, 368 F.3d at 1176. Plaintiffs further cite two California district court cases—*Allen v. ConAgra Foods, Inc.*, No. 3:13-CV-01279-WHO, 2018 WL 6460451 (N.D. Cal. Dec. 10, 2018), and *Allen v. Similasan Corp.*, No. 12CV0376-BTM-WMC, 2013 WL 2120825 (S.D. Cal. May 14, 2013)—to support the proposition that pendent jurisdiction can exist in the absence of a federal claim. However, neither case discussed the critical requirement that state law claims share a common nucleus of operative fact with federal claims. *Similasan*, 2013 WL 2120825, at *3; *ConAgra*, 2018 WL 6460451, at *7.

Insofar as Plaintiffs have failed to establish specific jurisdiction over Plaintiff Sanchez's claims and pendent jurisdiction is inapplicable absent a federal claim, the Court DISMISSES Plaintiff Sanchez's claims with prejudice.

### 3. The Nonresident Unnamed Class Members

Defendant initially sought dismissal of the nonresident unnamed class members' claims for lack of personal jurisdiction. But at the hearing, Plaintiffs' counsel clarified that Plaintiff Maeda will represent the Hawaiʻi and California classes because he purchased Hawaiian Snacks in both states, and so Defendant conceded that, for the time being, the nonresident unnamed claim members' claims remain.

## B. Hawaiʻi Consumer Protection Claims

Defendants argue that Plaintiff Maeda's consumer protection claims fail because they have not alleged an actionable misrepresentation. Defendants identify six bases for dismissal: (1) the Hawaiian trade name and imagery are truthful and accurate references to the Hawaiian Brand Snacks' heritage and are nonactionable as a matter of law; (2) the challenged statements are nonactionable puffery; (3) the challenged trade dress is not likely to mislead a significant portion of reasonable consumers; (4) the Hawaiian trade name and trade dress indicate the style, not the origin, of the product; (5) the Food and Drug Administration ("FDA") mandated labeling statements plainly disclose the products' non-

Hawaiian origin plainly in English; and (6) the Made in Hawaii statute does not

create a private right of action and the products do not violate the statute.[3]

    1.  "Made in Hawaii" Statute – Count 1

Plaintiff Maeda alleges that Defendant violated HRS § 486-119[4] by

---

[3] These arguments also apply to Plaintiff Maeda's California consumer protection claims.

[4] Section 486-119 provides:

> (a) No person shall keep, offer, display or expose for sale, or solicit for the sale of any item, product, souvenir, or any other merchandise that is labeled "made in Hawaii" or that by any other means misrepresents the origin of the item as being from any place within the State, or uses the phrase "made in Hawaii" as an advertising or media tool for any craft item that has not been manufactured, assembled, fabricated, or produced within the State and that has not had at least fifty-one per cent of its wholesale value added by manufacture, assembly, fabrication, or production within the State.

> (b) Subsection (a) notwithstanding, no person shall keep, offer, display, expose for sale, or solicit the sale of any perishable consumer commodity that is labeled "made in Hawaii", "produced in Hawaii", or "processed in Hawaii" or that by any other means represents the origin of the perishable consumer commodity as being from any place within the State, or use the phrase "made in Hawaii", "produced in Hawaii", or "processed in Hawaii" as an advertising or media tool for any perishable consumer commodity, unless the perishable consumer commodity is wholly or partially manufactured, processed, or produced within the State from raw materials that originate from inside or outside the State and at least fifty-one per cent of the wholesale value of the perishable consumer commodity is added by manufacture, processing, or production within the State.

Haw. Rev. Stat. § 486-119.

misrepresenting that the Hawaiian Snacks originated from Hawaiʻi when they were in fact produced on the mainland.  Compl. at ¶ 68.  The parties dispute Plaintiff Maeda's ability to assert a private cause of action pursuant to HRS § 486-119.  Defendant contends that the Board of Agriculture is vested with the authority to enforce this provision.  Plaintiff Maeda counters that because this provision is found in Title 26, along with the Unfair and Deceptive Acts and Practices and Uniform Deceptive Trade Practice Act, and those statutes provide private rights of action, so too does HRS § 486-119.  The Court disagrees.

"To determine whether a private right of action exists under Hawaii statutory or regulatory law, the court must determine whether the state legislature intended to create a private cause of action."  *White v. Time Warner Cable Inc.*, No. CIV. 12-00406 JMS, 2013 WL 787967, at *5 (D. Haw. Feb. 28, 2013) (citing *Alakai Na Keiki, Inc. v. Matayoshi*, 127 Hawaiʻi. 263, 285, 277 P.3d 988, 1010 (2012)).  Hawaiʻi courts consider the following factors in determining whether a private cause of action exists based on statutory requirements:

> (1) whether the plaintiff is "one of the class for whose special benefit the statute was enacted"; (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one"; and (3) whether a private cause of action would be "consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff."

*Hungate v. Law Office of David B. Rosen*, 139 Haw. 394, 406, 391 P.3d 1, 13 (2017) (quoting *Whitey's Boat Cruises, Inc. v. Napali-Kauai Boat Charters, Inc.*, 110 Hawai'i 302, 312, 132 P.3d 1213, 1223 (2006)). Each of the foregoing are relevant, but "'the key factor' is whether the legislature 'intended to provide the plaintiff with a private right of action.'" *Id.* (quoting *Whitey's Boat Cruises*, 110 Hawai'i at 313 n.20, 132 P.3d at 1224 n.20; *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (2012) (noting that the three factors used to assess whether a private cause of action may be implied from statutory language ultimately "are ones traditionally relied upon in determining legislative intent")).

Plaintiff Maeda has not demonstrated that these factors support the existence of a private right of action under HRS § 486-119.

a. Class for Whose Special Benefit the Statute was Enacted

With respect to the first factor, Plaintiff Maeda is not a member of the class for whose special benefit HRS § 486-119 was enacted. Although Conference Committee Reports during the 2009 legislative session initially identified the "protect[ion of] consumers from false or misleading advertising" as one of the purposes of the made in Hawai'i statute, a later Report limited the purpose to "preserv[ing] the credibility of the 'Made in Hawaii label.'" *Compare* https://www.capitol.hawaii.gov/session2009/commreports/SB1223_HD2_HSCR1694_.pdf *with* https://www.capitol.hawaii.gov/session2009/commreports/

SB1223_CD1_CCR95_.pdf (last visited May 9, 2019). Committee findings also

confirm that the statute was enacted to protect local craftspeople, not consumers:

> Your Committee finds that the "Made in Hawaii" label is an important designation and should be a clear indication that the product was produced in Hawaii and is substantially composed of materials from Hawaii. Your Committee further finds that preserving the integrity of the "Made in Hawaii" label is important from an economic standpoint as well as to honor the local artisans who keep native traditions alive through art. A meaningful "Made in Hawaii" label benefits local artisans and craftspersons who are currently forced to compete at an unfair disadvantage in the marketplace against unethical producers who unfairly imply that mass-produced, imported, or other counterfeit goods are made in Hawaii through labeling or other means.

https://www.capitol.hawaii.gov/session2009/commreports/SB1223_CD1_CCR95_

.pdf (last visited May 9, 2019).

> b. <u>Indication of Legislative Intent</u>

The second factor—whether there is any indication of legislative intent,

explicit or implicit, to create or deny a remedy—likewise militates against a

finding that Plaintiff Maeda has a private cause of action under HRS § 486-119.

The express provisions of HRS Chapter 486 limit causes of action to the Board of

Agriculture. HRS § 486-36 states: "Notwithstanding other penalties provided in

this chapter, including but not limited to penalties provided under section 486-32,

the [B]oard [of Agriculture] may enforce this chapter in both administrative and

judicial proceedings." Haw. Rev. Stat. § 486-36. The Board of Agriculture[5] may institute a civil action in any court of competent jurisdiction to enforce an order issued pursuant to HRS § 486-36 or "for injunctive relief to enjoin violation of any order issued or rule adopted pursuant to this chapter, in addition to any other remedy or penalty provided for under this chapter." *Id.* This clearly identifies who may enforce HRS § 486-119 and under what circumstances. The legislature's express identification of the entity conferred with the authority to enforce HRS Chapter 486, coupled with the absence of a provision authorizing a private cause of action under HRS § 486-119, indicates that Plaintiff Maeda may not avail himself of this statute.

Moreover, the fact that Title 26 explicitly authorizes private causes of action for some (*e.g.,* Chapter 480), but not all, of its chapters cuts against Plaintiff Maeda's contention that a private cause of action should correspondingly extend to HRS § 486-119. The absence of a provision authorizing a private right of action under HRS § 486-119 more reasonably suggests that that the legislature did not contemplate one.

---

[5] Plaintiff Maeda claims that the Office of Consumer Protection has filed lawsuits to enforce HRS § 486-119. Opp'n at 26 n.14. This does not support the argument that he is entitled to assert a private cause of action pursuant to HRS § 486-119. At most, it demonstrates that an agency may enforce the chapter.

c.  Consistency of a Private Cause of Action with the Underlying
       Purposes of Legislative Scheme

The third factor considers "whether a private cause of action would be 'consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff.'" *Hungate*, 139 Haw. at 406, 391 P.3d at 13 (citation omitted).  Implying a private cause of action here would contravene the applicable statutory provisions and legislative intent discussed above.

Though not determinative, Plaintiff Maeda has not cited, and the Court has not found, a case in which an individual plaintiff has brought a claim under HRS § 486-119.  It appearing that enforcement of this section is limited to the Board of Agriculture or another governmental agency, the Court finds that Plaintiff Maeda does not have a private cause of action under HRS § 486-119.  Accordingly, the Court DISMISSES his "Made in Hawaii" claim (Count 1) without leave to amend.

   2.  Unfair and Deceptive Acts or Practices ("UDAP") – Count 2

HRS § 480-2(a) deems unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Haw. Rev. Stat. § 480-2(a).  A deceptive practice has "the capacity or tendency to mislead or deceive."  *Courbat v. Dahana Ranch, Inc.*, 111 Hawaiʻi 254, 261, 141 P.3d 427, 434 (2006) (citation and quotations omitted).  A practice is unfair when it "offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Balthazar v.*

*Verizon Haw., Inc.*, 109 Hawai'i 69, 77, 123 P.3d 194, 202 (2005). A "deceptive act or practice is '(1) a representation, omission, or practice[ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) [ ] the representation, omission, or practice is material.'" *Courbat*, 111 Hawai'i at 262, 141 P.3d at 43 (citation omitted) (alterations in original). Representations, omissions, or practices are considered "material" if they involve "information that is important to consumers and, hence, likely to affect their choice of or conduct regarding, a product." *Id.* (citations and quotations omitted). The above test is objective, "turning on whether the act or omission 'is likely to mislead consumers' . . . as to information 'important to consumers' . . . in making a decision regarding the product or service." *Id.* (citations omitted). "Hawaii's consumer protection laws look to a reasonable consumer, not the particular consumer." *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1092 (9th Cir. 2010)). Ordinarily, the question of whether a practice constitutes an unfair or deceptive trade practice is a question of fact. *Balthazar*, 109 Hawai'i at 72 n.4, 123 P.3d at 197 n.4 (citation omitted).

An HRS § 480-13 claim requires "four essential elements: (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is

in the public interest or that the defendant is a merchant." *Davis v. Four Seasons Hotel Ltd.*, 122 Hawai'i 423, 455, 228 P.3d 303, 335 (2010).

To the extent Plaintiff Maeda's UDAP claim is based on fraudulent acts, allegations must be pled with particularity pursuant to FRCP 9(b). *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010). FRCP 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u–4. FRCP 9(b)'s purpose is threefold:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citations omitted) (alterations in original).

The "who, what, when, where, and how" of the alleged misconduct must accompany averments of fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). A plaintiff must offer something greater "than the neutral facts necessary to identify the transaction." *Vess*, 317

F.3d at 1106. He or she must identify "what is false or misleading about a statement, and why it is false." *Id.* (citation omitted). The circumstances constituting the alleged fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (citations omitted).

In the Complaint, Plaintiff Maeda alleges that

77.    [Defendant] violated HRS Chapter 480 and specifically § 480-2(a), by the conduct alleged above including, but not limited to, employing the unfair and deceptive acts and practices set forth herein. [Defendant]'s conduct of misrepresenting, concealing, suppressing, or otherwise omitting its actual practices created a likelihood of confusion or of misunderstanding and was both unfair and deceptive.

78.    As a result of [Defendant]'s unlawful business acts and practices [Defendant] has unlawfully obtained money from Plaintiff Maeda and members of the Hawaiʻi Class. . . .

 . . . .

80.    [Defendant]'s false and misleading advertising of the Hawaiian Snacks therefore was and continues to be "unlawful" because it violates H.R.S. § 486-119 and other applicable laws described herein.

Compl. at ¶¶ 77-78, 80.

Plaintiff Maeda offers insufficient factual allegations to state a claim under HRS § 480-13 and his allegations fall well short of satisfying FRCP 9(b)'s particularity requirement. Not only are Plaintiff Maeda's allegations conclusory, he fails to even identify the elements of an HRS § 480-13 claim. Mere incorporation by reference of prior paragraphs and articulation of the legal

conclusion that Defendant has violated HRS § 480-2(a) and other applicable laws does not provide Defendant with fair notice of the factual premises of this claim, nor satisfy federal pleading standards.  Accordingly, Plaintiff Maeda's UDAP claim (Count 2) is DISMISSED.  Because the identified deficiencies could potentially be cured by amendment, the Court grants leave to amend this claim.

    3.  <u>Hawaiʻi's False Advertising Law – HRS § 708-871 – Count 3</u>

Plaintiff Maeda alleges that Defendant has represented and continues to represent to the public, "through deceptive packaging and marketing, that the Hawaiian Snacks are products made in Hawaii" which is "misleading because the Hawaiian Snacks are made in the continental United States."  Compl. at ¶ 84. Plaintiff Maeda asserts that Defendant has violated HRS § 708-871 by disseminating misleading information when it "knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading."  *Id.*

Under § 708-871, "[a] person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading

statement in any advertisement addressed to the public or to a substantial number of persons." Haw. Rev. Stat. § 708-871.[6]

The Court finds that Plaintiff Maeda adequately states a claim for false advertising (Count 3). Consequently, Defendant's Motion to Dismiss is DENIED as to the false advertising claim.

4. California Consumer Protection Claims – Consumers Legal Remedies Act, Unfair Competition Law and False Advertising Law – Counts 4-6

Defendant seeks dismissal of Plaintiff Maeda's Consumers Legal Remedies Act ("CLRA"), California Unfair Competition Law ("UCL") and False Advertising Law ("FAL") claims because he has not pointed to any conduct that is likely to deceive a reasonable consumer.

California's consumer protection laws all prohibit "unlawful, unfair, or fraudulent business practices." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citing Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770). They "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or

---

[6] Although HRS § 708-871 is a criminal statutory provision, HRS § 603-23.5 authorizes a private right of action. Haw. Rev. Stat. § 603-23.5 ("Any person, firm, private corporation, or municipal or other public corporation or trade association or the attorney general or any county attorney, prosecuting attorney, or corporation counsel may maintain an action to enjoin a continuance of any act in violation of section 708-871 and if injured thereby for recovery of damages.").

tendency to deceive or confuse the public.'" *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (alteration in original) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002), *as modified* (May 22, 2002) (quoting *Leoni v. State Bar*, 704 P.2d 183, 194 (Cal. 1985))).  Any violation of the FAL necessarily violates the UCL.  *Ebner*, 838 F.3d at 963.

Notwithstanding their differences, the consumer protection statutes are all governed by the "reasonable consumer" test.  *Williams*, 552 F.3d at 938.  The reasonable consumer test requires Plaintiff Maeda to "show that 'members of the public are likely to be deceived.'"  *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (quoting *Bank of the West v. Superior Court,* 833 P.2d 545, 553 (Cal. 1992))) (quotations omitted).  "Likely to deceive" requires more than a mere possibility that Defendant's packaging and marketing of the Hawaiian Snacks "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner*, 838 F.3d at 965 (citation omitted); *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003).  "The reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, *could* be misled.'"  *Ebner*, 838 F.3d at 965 (emphasis added) (citation omitted).  "[W]hether or not a business practice is deceptive will usually

be a question of fact not appropriate for decision on demurrer." *Williams*, 552 F.3d at 938.

The crux of Plaintiff Maeda's California consumer protection claims is that Defendant markets and packages the Hawaiian Snacks in such a manner to suggest that they are made in Hawaiʻi when they are in fact manufactured in Washington. Plaintiff Maeda's claims characterize Defendant's conduct as fraudulent. In connection with his CLRA claim, Plaintiff Maeda alleges that he "reasonably and justifiably relied on [Defendant]'s misleading and fraudulent conduct when purchasing Hawaiian Snacks." Compl. at ¶ 95. As part of his UCL claim, Plaintiff Maeda avers that Defendant's

> conduct . . . was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Hawaiian Snacks are made in Hawaiʻi, when they are not. . . . As a result of [Defendant]'s fraudulent business acts and practices, [Defendant] has and continues to fraudulently obtain money from Plaintiffs.

*Id.* at ¶ 109-10. Plaintiff Maeda's FAL claim charges Defendant with fraudulently obtaining money from him as a result of its false advertising. *Id.* at ¶ 116. Because Plaintiff Maeda alleges a course of fraudulent conduct applicable to all of his consumer protection claims, the claims sound in fraud and FRCP 9(b) applies. *Kearns*, 567 F.3d at 1125-27 (concluding that FRCP 9(b) applied to the plaintiff's UCL and CLRA claims because they were grounded in fraud).

The Court cannot at this stage conclude as a matter of law that a reasonable consumer would not be deceived by the Hawaiian Snacks' packaging and marketing. However, even though Plaintiff Maeda's allegations may pass muster under ordinary notice pleading standards, they are insufficient under FRCP 9(b). His conclusory and generalized allegations that Defendant's conduct was and continues to be unlawful, deceptive, and fraudulent, do not satisfy FRCP 9(b)'s heightened pleading standard. Accordingly, Plaintiff Maeda's California consumer protection claims are DISMISSED. If Plaintiff Maeda offers more particularized allegations concerning Defendant's conduct, it is possible that the present deficiencies could be cured by amendment. Therefore, the Court grants Plaintiff Maeda leave to amend the California consumer protection claims (Counts 4-6).

C. Breach of Warranty

    1. Breach of Express Warranty – Count 7

Plaintiff Maeda alleges that through its "HAWAIIAN" representation and imagery on the Hawaiian Snacks' packaging, Defendant expressly warranted that the products are made in Hawaiʻi. Compl. at ¶ 122. Under Hawaiʻi law, express warranties are created by a seller when:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

Haw. Rev. Stat. § 490:2-313.  In a breach of express warranty claim, Plaintiff Maeda must prove that (1) Defendant made an affirmation of fact or promise regarding the product; (2) that statement became part of the basis of the bargain; and (3) the product failed to perform according to the statement.  *Neilsen v. Am. Honda Motor Co., Inc.*, 92 Haw. 180, 190-91, 989 P.2d 264, 274-75 (Haw. Ct. App. 1999).

Defendant argues, and the Court agrees, that the use of the word "Hawaiian," combined with the imagery on the packaging, do not constitute an affirmation of fact or promise.  *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *10 (N.D. Cal. Sept. 1, 2017) (dismissing the plaintiffs' express warranty claim with leave to amend because none of the representations on the Kona beer packaging constitutes an express promise that Kona beer is brewed exclusively in Hawaiʻi).[7]  As such, Plaintiff Maeda has failed to state a breach of express warranty claim.  The Court therefore DISMISSES the claim (Count 7).  Because there is a possibility that this claim could be saved by amendment, the Court grants Plaintiff Maeda leave to amend.  Plaintiff Maeda is

---

[7]  The *Broomfield* plaintiff's express warranty claim was premised on California Commercial Code § 2313, which is identical to HRS § 490:2-313.

cautioned that failure to identify an affirmation of fact or promise in any amended pleading will result in the dismissal of the claim without leave to amend.

2. <u>Breach of Implied Warranty of Merchantability – Count 8</u>

Plaintiff Maeda additionally alleges that Defendant impliedly promised that the Hawaiian Snacks were made in Hawaiʻi, based on the packaging. Compl. at ¶ 133. Because the snacks were not made in Hawaiʻi, Plaintiff Maeda avers that Defendant "has not 'conformed to the promises . . . made on the container or label,'" and as a result, he "did not receive the goods as impliedly warranted by [Defendant] to be merchantable." *Id.* Hawaiʻi's implied warranty of merchantability law reads:

> [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.
>
> (2) Goods to be merchantable must be at least such as:
>
> . . . . .
>
> (f) Conform to the promises or affirmations of fact made on the container or label if any.

Haw. Rev. Stat. § 490:2-314(1)-(2).[8] The implied warranty of merchantability is

---

[8] Plaintiff Maeda mis-cites this provision as HRS § 490:2-2314.

arguably the broadest warranty in the Uniform Commercial Code and is "implied by operation of law into every sale of goods by a merchant seller." *Ontai v. Straub Clinic and Hosp. Inc.*, 66 Haw. 237, 249-50, 659 P.2d 734, 744 (1983) (citations omitted).

Plaintiff Maeda's breach of implied warranty of merchantability claim is based solely on Defendant's purported failure to "conform to the promises or affirmations of fact made on the container or label." Compl. at ¶ 130. Such a claim rises and falls with Plaintiff Maeda's breach of express warranty claim. *Broomfield*, 2017 WL 3838453, at *11 (citations omitted). Inasmuch as the Court already determined that the Hawaiian Snacks' packaging—use of the word "Hawaiian," combined with the imagery on the packaging—does not constitute an affirmation of fact or promise sufficient to establish an express warranty, the Court likewise finds that Plaintiff Maeda's breach of implied warranty claim is insufficiently pled. *Id.* (holding that the implied warranty of merchantability claim rises and falls with the express warranty claim; because the Kona beer packaging did "not establish a promise sufficient to establish an express warranty," the implied warranty of merchantability claim was also insufficiently pled).[9]  Hence,

---

[9]  The *Broomfield* plaintiff's implied warranty of merchantability claim was predicated on California Commercial Code § 2314(2)(f), which is identical to HRS § 490:2-314(2)(f).

the Court DISMISSES Plaintiff Maeda's breach of implied warranty of merchantability claim (Count 8) with leave to amend.

D. Common Law Fraud /Intentional Misrepresentation – Counts 9 and 10

Plaintiff Maeda alleges that Defendant "willfully, falsely, or knowingly packaged and marketed the Hawaiian Snacks in a manner indicating that the Hawaiian Snacks are made in Hawaiʻi" even though they are made in the continental United States. Compl. at ¶ 138. Plaintiff Maeda submits that Defendant's misrepresentations are and were material and that Defendant's use of "HAWAIIAN" and Hawaiian images in its labeling evidences its intention for Plaintiff Maeda and consumers to rely on these representations. *Id.* at ¶¶ 139, 141. Plaintiff Maeda claims that he relied on Defendant's misrepresentations; had he known the correct facts, he would not have purchased the Hawaiian Snacks, or he would have declined to purchase the snacks at the set prices.[10] *Id.* at ¶ 142.

To establish a common law fraud claim, a plaintiff must show that there was "(1) a representation of a material fact, (2) made for the purpose of inducing the other party to act, (3) known to be false but reasonably believed true by the other

---

[10] The allegations supporting Plaintiff Maeda's intentional misrepresentation claim mirror his fraud claim. Compl. at ¶¶ 146-150.

party, and (4) upon which the other party relies and acts to his or her damage."[11]

*Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Hawaiʻi 277,

298, 172 P.3d 1021, 1042 (2007).

To establish an intentional misrepresentation claim, a plaintiff must

demonstrate that "(1) false representations were made by defendants, (2) with

knowledge of their falsity (or without knowledge of their truth or falsity), in

contemplation of plaintiff's reliance upon these false representations, and (4)

plaintiff did rely upon them." *Shoppe v. Gucci Am., Inc.*, 94 Hawaiʻi 368, 386, 14

P.3d 1049, 1067 (2000). "To be actionable, the alleged false representation must

relate to a past or existing material fact and not the occurrence of a future event."

*Id.* (citation omitted).

Because these claims sound in fraud, FRCP 9(b)'s heightened pleading

standards apply. *Vess*, 317 F.3d at 1103 (explaining that FRCP 9(b)'s particularity

requirement must be satisfied in addition to the pleading requirements for

fraud/intentional misrepresentation claims under state law). Plaintiff Maeda's

---

[11] In California, fraud consists of the following elements: "(a) misrepresentation (false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns*, 567 F.3d at 1126 (citation and quotations omitted). Intentional misrepresentation claims are comprised of the same elements. *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1134 (S.D. Cal. 2014) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) (citation omitted)).

conclusory allegations fail to satisfy FRCP 9(b)'s particularity requirements.  He

alleges that Defendant packaged and marketed the Hawaiian Snacks in a manner

indicating that the snacks are made in Hawai'i when they are in fact made in the

continental United States, but he has not adequately specified the "who, what,

when, where, and how" of the alleged misrepresentations.  Plaintiff Maeda offers

little more than his bare assertion that the use of Hawaiian images and the word

"Hawaiian" on the Hawaiian Snacks' packaging violated the law and deceived

consumers.  Plaintiff Maeda's fraud and intentional misrepresentation claims

(Counts 9 and 10) must therefore be DISMISSED for failure to satisfy FRCP 9(b).

Insofar as the identified deficiencies could potentially be cured by amendment,

however, the Court grants leave to amend these claims.[12]

E.  Negligent Misrepresentation – Count 11

For his negligent misrepresentation claim, Plaintiff Maeda proffers that

Defendant has misrepresented that the Hawaiian Snacks were manufactured in

Hawai'i when they were actually produced in Washington.  Compl. at ¶ 154.

Plaintiff Maeda characterizes the misrepresentations as material because they relate

to the products' characteristics and place of manufacture.  *Id.* at ¶ 155.  Plaintiff

Maeda alleges that Defendant knew or has been negligent in failing to know that

---

[12] Given that these claims are essentially one in the same, any amendment could consolidate these claims into a single claim.

the Hawaiian Snacks were made in Washington and that Defendant intended, through its use of the term "HAWAIIAN" and Hawaiian images, for Plaintiff Maeda and consumers to rely on the misrepresentations. *Id.* at ¶¶ 156-157. According to Plaintiff Maeda, he reasonably and justifiably relied on Defendant's misrepresentations when purchasing the Hawaiian Snacks and would not have purchased the snacks, or would not have purchased the snacks at the prices offered, had he been aware of the correct facts. *Id.* at ¶ 158.

To sustain a claim for negligent misrepresentation under Hawai'i law, Plaintiff Maeda must demonstrate that: (1) false information was supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information was supplied suffered the loss; and (3) the recipient relied upon the misrepresentation. *Ass'n of Apartment Owners of Newtown Meadows ex rel. its Bd. of Dirs. v. Venture 15*, 115 Hawai'i 232, 263, 167 P.3d 225, 256 (2007) (citation omitted). To establish a claim for negligent misrepresentation under California law, Plaintiff Maeda must show that Defendant: "(1) made a misrepresentation of a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage." *Woods v. Davol, Inc.*, No. 16-CV-02616-KJM-CKD, 2017 WL 3421973, at *6 (E.D. Cal. Aug. 9, 2017) (citing

*Anschutz Corp. v. Merrill Lynch and Co. Inc.*, 785 F. Supp. 2d 799, 822 (N.D. Cal. 2011) (quoting *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC*, 158 Cal. App. 4th 226, 243 (2007))).

In a footnote, Defendant argues that the economic loss rule bars this claim. Mem. in Supp. of Mot. at 30 n.14. The economic loss rule bars causes of action "where a plaintiff alleges a purely economic loss stemming from injury only to the product itself."[13] *State of Hawaii ex rel. Bronster v. U.S. Steel Corp.*, 82 Hawai'i 32, 39, 919 P.2d 294, 301 (1996); *City Express, Inc. v. Express Partners*, 87 Hawai'i 466, 469, 959 P.2d 836, 839 (1998). By its plain terms, the economic loss rule is inapplicable to the facts of this case.

Although district courts within the Ninth Circuit are split as to whether a negligent misrepresentation claim is subject to FRCP 9(b), the judges in this district have consistently concluded that a negligent misrepresentation claim is not subject to FRCP 9(b) because it does not require intent. *Smallwood*, 730 F. Supp. 2d at 1231; *Peace Software, Inc. v. Hawaiian Elec. Co.*, No. CIV. 09-00408 SOM/ LEK, 2009 WL 3923350, at *8 (D. Haw. Nov. 17, 2009); *Illinois Nat. Ins. Co. v.*

---

[13] This rule is codified at HRS § 663-1.2, *BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, 780 F. Supp. 2d 1061, 1082 (D. Haw. 2011), which provides that "[n]o person may recover damages, including punitive damages, in tort for a breach of a contract in the absence of conduct that: (1) Violated a duty that is independently recognized by principles of tort law; and (2) Transcended the breach of the contract." Haw. Rev. Stat. § 663-1.2.

*Nordic PCL Const., Inc.*, 870 F. Supp. 2d 1015, 1038 (D. Haw. 2012); *Hele Ku KB, LLC . BAC Home Loans Servicing*, LP, No. CIV. 11-00183 LEK, 2011 WL 5239744, at *10 (D. Haw. Oct. 31, 2011); *Liberty Mut. Ins. Co. v. Sumo-Nan LLC*, No. CV 14-00520 DKW-KSC, 2015 WL 6755212, at *5 (D. Haw. Nov. 4, 2015).

California district courts are divided as to the applicability of FRCP 9(b) to negligent misrepresentation claims, but many have likewise held that FRCP 9(b) does not apply to negligent misrepresentation claims under California law. *See, e.g.*, *Petersen v. Allstate Indem. Co.*, 281 F.R.D. 413, 417 (C.D. Cal. 2012) ("Because the California tort of 'negligent misrepresentation' has a critically different element from the tort of 'fraud,' analyzing negligent misrepresentation under Rule 9(b) is contrary to both the express language and policy of the statute."); *Cutler v. Rancher Energy Corp.*, No. SACV 13-00906-DOC, 2014 WL 1153054, at *4 (C.D. Cal. Mar. 11, 2014) (finding that "Rule 9(b) does not apply to claims of negligent misrepresentation for two reasons: (1) the Ninth Circuit has held that Rule 9(b) does not apply in cases where fraud is not an essential element of a claim, and (2) California state law suggests that such claims sound primarily in negligence, not fraud"); *Woods*, 2017 WL 3421973, at *7 (applying FRCP 8 to the plaintiff's negligent misrepresentation claim); *Bernstein v. Vocus, Inc.*, No. 14-CV-01561-TEH, 2014 WL 3673307, at *5 (N.D. Cal. July 23, 2014) (concluding that

"negligent misrepresentation claims are not subject to the heightened pleading standards of Rule 9(b)").

Under ordinary notice pleading standards, and accepting Plaintiff Maeda's factual allegations as true, the Court finds that he adequately states a claim for negligent misrepresentation. Plaintiff Maeda asserts that Defendant made misrepresentations concerning the origin of the Hawaiian Snacks knowing they were false, to induce him and other consumers to rely on the representations, upon which they relied, and he suffered damages as a result. Defendant's Motion is therefore DENIED as to Count 11.

F. Quasi-Contract/Unjust Enrichment/Restitution – Count 12

Plaintiff Maeda lastly alleges that he reasonably relied on Defendant's intentional and recklessly misleading representations without receiving all benefits promised by Defendant and that Defendant retained monies it received. Compl. at ¶¶ 162-163. To prevail on an unjust enrichment claim in Hawai'i, "a plaintiff must show that: 1) it has conferred a benefit upon the defendant, and 2) that the retention of the benefit was unjust." *State Farm Fire and Cas. Co. v. Chung*, 882 F. Supp. 2d 1180, 1192 (D. Haw. 2012) (citation omitted). California does not recognize a standalone cause of action for unjust enrichment, which it

synonymizes with restitution.[14]  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015).

It is well settled in Hawaiʻi "that equitable remedies are not available when an express contract exists between the parties concerning the same subject matter." *AAA Haw., LLC v. Haw. Ins. Consultants, Ltd.*, CV. No. 08-00299 DAE-BMK, 2008 WL 4907976, at *3 (D. Haw. Nov. 12, 2008) (citations omitted); *Chung*, 882 F. Supp. 2d at 1192 ("As a general rule, '[a]n action for unjust enrichment cannot lie in the face of an express contract.'").  Thus, "[w]here the parties to a contract have bargained for a particular set of rights and obligations, all claims involving those express rights and obligations properly lie in contract law and not in equity." *AAA*, 2008 WL 4907976, at *3.

In examining California law, the Ninth Circuit has held that district courts may construe unjust enrichment claims as "quasi-contract claims seeking restitution." *Astiana*, 783 F.3d at 762.

Here, while Plaintiff Maeda asserts breach of warranty claims, an express contract does not exist between the parties.  Even if a contract existed, Plaintiff

---

[14]  Unjust enrichment "broadly provides that a person who is unjustly enriched at the expense of another is subject to liability in restitution." *Khasin v. R. C. Bigelow, Inc.*, No. 12-CV-02204-WHO, 2015 WL 4104868, at *2 (N.D. Cal. July 7, 2015) (citation and quotations omitted).  To advance a basis for obtaining restitution, a plaintiff must demonstrate the "defendant's receipt and unjust retention of a benefit."  *Id.* (citation and quotations omitted).

Maeda "may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(2); *Astiana*, 783 F.3d at 762. The Court additionally finds that Plaintiff Maeda's allegations adequately state a quasi-contract/unjust enrichment/restitution claim under both Hawai'i and California law. *See, e.g.*, *Astiana*, 783 F.3d at 762 (holding that the plaintiff's straightforward statement—that the defendant had enticed her to purchase its products through "false and misleading" labeling and that it was "unjustly enriched" as a result— was sufficient to state a quasi-contract cause of action). Accordingly, the Motion is DENIED as to the quasi-contract/unjust enrichment/restitution claim (Count 12).

G. Standing for Injunctive Relief

In his prayer for damages, Plaintiff Maeda seeks "injunctive and other equitable relief as is necessary to protect the interests of Plaintiffs and the Classes, including . . . an order prohibiting [Defendant] from engaging in the unlawful act described above." Compl. at 37. Defendant contends that Plaintiff Maeda lacks standing to seek prospective injunctive relief.

Article III of the Constitution limits the jurisdiction of the federal courts to certain "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Plaintiffs are required to demonstrate three elements to establish that

43

they have "standing" to sue in federal court: (1) "injury in fact" that is "concrete and particularized" and "actual and imminent"; (2) the injury must be fairly traceable to defendant's conduct; and (3) the injury can be redressed through adjudication. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016). "[T]he 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of possible future injury are not sufficient.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted). Article III requires a plaintiff seeking prospective injunctive relief to show irreparable injury; that is, "a sufficient likelihood that he will again be wronged in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Even if "an injury is shared by a large class of other possible litigants," a plaintiff must nevertheless "allege a distinct and palpable injury to himself." *Warth*, 422 U.S. at 501 (citation omitted); *Spokeo*, __ U.S. at __ n.6, 136 S. Ct. at 1547 n.6 (2016) ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'").

A plaintiff invoking federal jurisdiction must satisfy Article III's standing

requirements even if the plaintiff only asserts state law claims. *See Birdsong v.*

*Apple. Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009).

In the consumer protection arena, the Ninth Circuit has held that

> a previously deceived consumer may have standing to seek an
> injunction against false advertising or labeling, even though the
> consumer now knows or suspects that the advertising was false
> at the time of the original purchase, because the consumer may
> suffer an "actual and imminent, not conjectural or hypothetical"
> threat of future harm.

*Davidson*, 889 F.3d at 969. That the plaintiff knew "the advertisement or label was

false in the past does not equate to knowledge that it will remain false in the

future." *Id.* Threats of future harm may include the consumer's plausible

allegations that (1) "she will be unable to rely on the product's advertising or

labeling in the future, and so will not purchase the product although she would like

to" or (2) "she might purchase the product in the future, despite the fact it was once

marred by false advertising or labeling, as she may reasonably, but incorrectly,

assume the product was improved." *Id.* at 969-70 (citations omitted).

Plaintiff Maeda's allegations pertaining to the request for injunctive relief

are contained in paragraph 50 of the Complaint:

> 50.     Despite being misled by [Defendant], *Plaintiffs wish and*
> *are likely to continue purchasing Hawaiian Snacks, if they are*
> *made in Hawaiʻi or if they could rely with confidence on the*
> *packaging and could then make an informed purchasing*
> *decision based on truthful information regarding where the*

> *Hawaiian Snacks are made.* Although Plaintiffs regularly visit stores where the Hawaiian Snacks are sold, because they were deceived in the past by [Defendant], *absent an injunction, they will be unable to rely with confidence on [Defendant's] representations in the future and will therefore abstain from purchasing the Hawaiian Snacks, even though they would like to purchase them.* In addition, members of the proposed Classes run the risk of continuing to purchase the Hawaiian Snacks, under the assumption that the Hawaiian Snacks are made in Hawaii. Until [Defendant] begins to produce the Hawaiian Snacks in Hawaiʻi or is enjoined from making further false and misleading representations, Plaintiffs and other consumers will continue to bear this ongoing injury.

Compl. at ¶ 50 (emphases added). Plaintiff Maeda asserts that his allegations fall under the first category of threats of future harm identified in *Davidson v. Kimberly-Clark Corp.* because he is unable to rely on Defendant's representations about where the Hawaiian Snacks are produced.

Defendant contends that this case is distinguishable from *Davidson* because Plaintiff Maeda knows that the Hawaiian Snacks are no longer produced in Hawaiʻi, the Hawaiian Snacks are produced on the mainland, and the place of production is identified on the FDA-mandated geographic disclosure. Reply at 20. Under *Davidson*, however, "a previously deceived plaintiff may have standing to seek injunctive relief[.]" *Davidson*, 889 F.3d at 970.

In *Davidson*, the plaintiff purchased Scott Wipes based on the "flushable" notation on the packaging. *Id.* at 961. After realizing that the wipes were not truly flushable, she stopped using them. *Id.* at 962. The plaintiff wanted to purchase

wipes that were genuinely flushable, if she could determine that the wipes were suitable for flushing prior to purchase. *Id.* The Ninth Circuit's determination that the plaintiff had standing to pursue injunctive relief because she faced a threat of imminent or actual harm was based on her inability to rely on the defendant's label in the future; that is, she had "no way of determining whether the representation 'flushable' [was] in fact true." *Id.* at 967, 970. Although acknowledging that it was a "close question," the *Davidson* court reasoned that the plaintiff alleged that she desired to purchase the defendant's flushable wipes in the future and that the first amended complaint was "devoid of any grounds to discount [Davidson's] stated intent to purchase [the wipes] in the future." *Id.* at 971 (alterations in original).

Based on the allegations in the Complaint, the Court finds that this case presents an even closer call than *Davidson*, as unlike the *Davidson* plaintiff, Plaintiff Maeda is not precluded from verifying the origin of the Hawaiian Snacks until consumption/use. Giving the Court additional pause is Plaintiff Maeda's somewhat contradictory allegation that he will abstain from purchasing the Hawaiian Snacks absent an injunction and that he will continue to suffer ongoing injury until the snacks are *manufactured in Hawaiʻi* or Defendant is "enjoined

from making further false and misleading representations."[15]  Compl. at ¶ 50

(emphasis added).

However, given the Court's obligation to presume the truth of Plaintiff

Maeda's allegations and construe all allegations in his favor at this stage of the

proceedings, the Court finds that Plaintiff Maeda has adequately alleged that he

faces an imminent or actual threat of future harm by being unable to rely on

Defendant's packaging and marketing.  As in *Davidson*, Plaintiff Maeda alleges

that he wishes to purchase the Hawaiian Snacks.  Accepting the truth of this claim,

as it must, the Court finds that Plaintiff Maeda's alleged harm sufficiently confers

standing to seek injunctive relief.  The Court therefore DENIES Defendant's

Motion as to the standing issue.[16]

---

[15]  In any amended pleading, Plaintiff Maeda might consider refining his
allegations pertaining to injunctive relief.

[16]  Defendant cites *Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG
(JCX), 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018), to demonstrate that not
every case presents a *Davidson* injury.  *Cordes* differs in a material respect.  There,
the plaintiff did not allege that he had any interest in purchasing the subject
product in the future.  *Id.*  On that basis alone, the court found that the plaintiff
lacked standing to sue for injunctive relief.  *Id.* ("The complete absence of any
allegations about Plaintiff's future intentions with regard to the Product is enough
for the Court to find that he lacks standing to sue for injunctive relief.").

In cases with analogous facts, courts have found that the plaintiffs had
standing to seek injunctive relief under *Davidson*. *See, e.g.*, *Cesta v. Trader Joe's
Co.*, No. CV 18-895-DMG (RAOX), 2018 WL 6075352, at *3 (C.D. Cal. Aug. 28,
2018) (concluding that the plaintiff's allegations—that she would like to purchase
(continued. . . . )

<u>CONCLUSION</u>

In accordance with the foregoing, the Court HEREBY GRANTS IN PART

AND DENIES IN PART Defendant's Motion as follows:

- Plaintiff Sanchez's claims are DISMISSED WITH PREJUDICE for lack of personal jurisdiction.

- The "Made in Hawaii" claim (Count 1) is DISMISSED WITH PREJUDICE.

--------

(. . . . continued)

the subject product from the defendant in the future, she cannot rely on the labeling; that she will not know what she is purchasing without investigating the product's ingredients prior to purchase; and that had she known that the product was primarily composed of soybean oil versus vitamin E oil she would not have purchased it—satisfy *Davidson*'s standard); *ConAgra*, 2018 WL 6460451, at *13 (holding that the plaintiffs satisfied *Davidson* and established a "threat of repeated injury that is concrete, particularized, and redressable" because they wished to purchase a product from defendant but had no way of knowing whether "zero fact, zero calorie" representations were true and were therefore at risk of being misled again); *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520, 528 (N.D. Cal. 2018) (deeming the plaintiffs' allegations that they wish to continue patronizing Chipotle if Chipotle has a non-GMO/GMO-free menu sufficient on their face to allege standing to seek injunctive relief in light of *Davidson*); *Wisdom v. Easton Diamond Sports, LLC*, No. CV 18-4078 DSF (SSX), 2019 WL 580670, at *3 (C.D. Cal. Feb. 11, 2019) (holding that the plaintiff's allegations that he "regularly visits sporting goods stores where Easton bats are sold in order to browse and purchase the latest bat models"; has and often purchases new bats in anticipation of upcoming baseball seasons; and wishes to purchase Easton bats in the future if accurately labeled, despite being misled by the defendant's labeling, were sufficient to confer Article III standing for injunctive relief under *Davidson*); *Robinson v. J.M. Smucker Co.*, No. 18-CV-04654-HSG, 2019 WL 2029069, at *4 (N.D. Cal. May 8, 2019) (alteration in original) (finding sufficient to establish standing for injunctive relief the plaintiff's allegations that she "will not purchase the Crisco EVOO product in the future, although [she] would like to do so, unless and until Defendant takes corrective action").

- The UDAP claim (Count 2), California consumer protection claims (Counts 4-6), breach of warranty claims (Counts 7 and 8), and fraud/intentional misrepresentation claims (Count 9 and 10) are DISMISSED WITH LEAVE TO AMEND.

- The Motion is DENIED as to the unnamed non-resident class members, the Hawai'i false advertising claim (Count 3), the negligent misrepresentation claim (Count 11), the quasi-contact/unjust enrichment/restitution claim (Count 12), and the request for injunctive relief.

Plaintiff Maeda may file an amended pleading by **June 10, 2019** correcting the deficiencies identified herein and in conformance with this Order. Failure to do so will result in the dismissal of this action.

IT IS SO ORDERED.

DATED: Honolulu, Hawai'i, May 9, 2019.

Jill A. Otake
United States District Judge

Civil No. 18-00459 JAO-RLP; *Maeda, et al. v. Pinnacle Foods, Inc.*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

50