IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL MAEDA and RICK SMITH, individually and on behalf of all others similarly situated, | ) ) ) | CIVIL NO. 18-00459 JAO-WRP |
| | ) | ORDER GRANTING IN PART AND |
| Plaintiffs, | ) ) | DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' |
| | ) | SECOND AMENDED CLASS ACTION |
| vs. | ) ) | COMPLAINT FILED ON JULY 17, 2019 |
| KENNEDY ENDEAVORS, INC.; DOES 1 THROUGH 50, | ) ) ) | |
| Defendants. | ) ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FILED ON JULY 17, 2019

This putative consumer class action arises out of the sale and marketing of

Defendant Kennedy Endeavors, Inc.'s ("Defendant") Hawaiian brand snacks,

including:  Hawaiian Kettle Style Potato Chips, Original; Hawaiian Kettle Style

Potato Chips, Luau BBQ; Hawaiian Kettle Style Potato Chips, Sweet Maui Onion;

Hawaiian Kettle Style Potato Chips, Ginger Wasabi; Hawaiian Kettle Style Potato

Chips, Hulapeno; Hawaiian Kettle Style Potato Chips, Mango Habanero; Hawaiian

Luau Barbeque Rings; and Hawaiian Sweet Maui Onion Rings (collectively

"Hawaiian Snacks").  Plaintiffs Michael Maeda and Rick Smith (collectively

"Plaintiffs") allege that they purchased certain varieties of these snacks due to false

and deceptive labeling, packaging, and advertising, which misled them into believing that the snacks are made in Hawaiʻi from local ingredients.

Defendant moves to dismiss this action on the following grounds:  (1) its brand name and trade dress are at most puffery; (2) Plaintiffs' fraud-based claims continue to be deficient; and (3) the Court lacks subject matter jurisdiction over any claims related to the six varieties of chips that Plaintiffs did not purchase.  For the reasons articulated below, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Filed on July 17, 2019.  ECF No. 55.

## BACKGROUND

Plaintiffs commenced this action on October 12, 2018 in the Circuit Court of the First Circuit, State of Hawaiʻi.  Defendant removed the action on November 23, 2018.

On May 10, 2019, the Court issued an Order Granting in Part and Denying in Part Defendant Pinnacle Foods Inc.'s[1] Motion to Dismiss Plaintiffs' Class Action Complaint ("Order"), which (1) dismissed formerly named Plaintiff Iliana Sanchez's claims for lack of personal jurisdiction; (2) dismissed with prejudice the

---

[1]  "Pinnacle Foods, Inc. merged into Peak Finance Holdings, LLC, which distributed all assets to Kennedy Endeavors, Inc."  ECF No. 44 at 2.  Plaintiff changed Defendant's name to Kennedy Endeavors in the First Amended Complaint.  ECF No. 47.

"made in Hawaii" claim; (3) dismissed with leave to amend the Hawaiʻi Revised Statutes ("HRS") Chapter 480, California consumer protection, breach of warranty, and fraud/intentional misrepresentation claims; (4) denied the Motion to Dismiss as to the jurisdictional challenges to the unnamed non-resident class members; and (5) denied the Motion to Dismiss as to the Hawaiʻi false advertising, negligent misrepresentation, quasi-contract/unjust enrichment/restitution claims, and the request for injunctive relief.  ECF No. 32.  The Court granted Plaintiffs until June 10, 2019 to file an amended pleading in conformance with the Order.  *Id.* at 50.

Plaintiffs timely filed a First Amended Complaint, adding Plaintiff Smith[2] and a Hawaiʻi Uniform Deceptive Trade Practices Act ("UDTPA") claim.  ECF No. 39.  The Court struck the First Amended Complaint for violating the Order but allowed Plaintiffs to file another First Amended Complaint that conformed with the Order.  ECF No. 46.  The Court admonished Plaintiffs that they must seek leave of court for any amendments not authorized by the Order.  *Id.*

Plaintiffs subsequently filed their corrected First Amended Complaint ("FAC").  ECF No. 47.  They then filed a Motion for Leave to File Second

---

[2]  Curiously, according to the allegations in the SAC, Plaintiff Smith purchased the Hawaiian Kettle Style Potato Chips, Original Flavor on October 13, 2018 and November 18, 2018, both of which occurred after the commencement of this action.  As a general matter, events occurring after the filing of the Complaint or prior pleading should be added by supplementation, not amendment.  Fed. R. Civ. P. 15(d).

Amended Class Action Complaint.  ECF No. 50.  Due to Defendant's lack of opposition, ECF No. 52, the Magistrate Judge granted the Motion for Leave to File Second Amended Class Action Complaint.  ECF No. 53.  On July 17, 2019, Plaintiffs filed their Second Amended Complaint ("SAC").  ECF No. 54.

Plaintiffs continue to allege that although the Hawaiian Snacks are manufactured in Algona, Washington, Defendant markets them in such a manner as to mislead consumers into believing that they were manufactured in Hawaiʻi. The SAC asserts the following claims:  (1) violation of Hawaiʻi's Unfair Deceptive Acts or Practices Statute ("UDAP"), HRS Chapter 480 (Count 1); (2) violation of Hawaiʻi's false advertising law, HRS § 708-871 (Count 2); (3) violation of UDTPA, HRS Chapter 481A (Count 3); (4) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 (Count 4); (5) violation of California's unfair competition law ("UCL"), Cal. Business & Professions Code § 17200 (Count 5); (6) violation of California's false advertising law ("FAL"), Cal. Business & Professions Code § 17500 (Count 6) ; (7) common law fraud/intentional misrepresentation (Count 7); (8) negligent misrepresentation (Count 8); and (9) quasi-contract/unjust enrichment/restitution (Count 9).

The three proposed classes identified by Plaintiffs are as follows:

Hawaiʻi Class:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of Hawaiʻi.

<u>California Class</u>:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of California.

<u>California Consumer Subclass</u>:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks for personal, family, or household purpose, in the State of California.

SAC, ECF No. 54 at ¶ 54.

In their prayer for relief, Plaintiffs request a declaration that Defendant's conduct violates the law; injunctive and other equitable relief; restitution; damages; punitive damages; treble damages; attorneys' fees and costs; and pre and post judgment interest.  *Id.* at 64-65.

## LEGAL STANDARDS

A. <u>Rule 12(b)(1)</u>

Under Federal Rule of Procedure ("FRCP") 12(b)(1), a district court must dismiss a complaint if it lacks subject matter jurisdiction to hear the claims alleged in the complaint.  Fed. R. Civ. P. 12(b)(1).  "Standing is a threshold matter central to our subject matter jurisdiction."  *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007).  "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [FRCP] 12(b)(1)."  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (citations omitted).  In determining constitutional standing, the trial court has the authority "to allow or to require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing."  *Id.* (citation and

quotations omitted).  The court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party" when "ruling on a motion to dismiss for want of standing."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).

B. Rule 12(b)(6)

FRCP 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion to dismiss, "'the court accepts the facts alleged in the complaint as true,' and '[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The tenet that the court must accept as true all of the allegations contained in the complaint does not apply to legal conclusions.  *Id.*  As such, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (citing Fed. R. Civ. P. 8(a)(2)) (some alterations in original).  If dismissal is ordered, the plaintiff should be granted leave to amend unless it is clear that the claims could not be saved by amendment.  *Swartz v. KPMG LLP*, 476 F.3d 756, 760 (9th Cir. 2007).

<u>DISCUSSION</u>

Defendant seeks dismissal of the SAC because:  (1) the Hawaiian brand name and trade dress accurately reflect the Hawaiian Snacks' heritage, and are

puffery, at most;[3] (2) Plaintiffs' fraud-based claims are facially deficient pursuant to FRCP 9(b); and (3) the Court lacks subject matter jurisdiction over any claims pertaining to the six varieties of Hawaiian snacks not purchased by Plaintiffs.  The Court addresses each of Defendant's arguments in turn.

I.   Consumer Protection Claims

Plaintiffs' Hawaiʻi and California consumer protection claims are premised on the same underlying facts:  Plaintiffs reasonably believed that the Hawaiian Snacks were made in Hawaiʻi based on Defendant's deceptive "Hawaiian" reference and packaging and they would not have purchased, or would have paid less for the Hawaiian Snacks, had they known that the snacks are not manufactured in Hawaiʻi.  Defendant argues that Plaintiffs' claims are subject to dismissal because its use of "Hawaiian" and Hawaiʻi imagery are mere puffery, and do not amount to actionable misrepresentations.  Mem. in Supp. of Mot., ECF No. 55-1 at 7.  Plaintiffs characterize this argument as an attempt by Defendant to seek reconsideration of the Court's prior ruling that it could not conclude as a matter of law that a reasonable consumer would not be deceived by the Hawaiian Snacks'

---

[3]  Defendant contends that the entire SAC is subject to dismissal based on its puffery defense, but the related reasonable consumer test, to be discussed below, only applies to California consumer protection claims.  *Broomfield v. Craft Brew All., Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *5 n.1 (N.D. Cal. Sept. 1, 2017).

packaging and marketing.  Opp'n, ECF No. 58 at 4.  Plaintiffs urge the Court not to revisit and reverse its prior holding under the law of the case doctrine.  *Id.*

A. <u>Law of the Case Doctrine</u>

The law of the case doctrine "generally provides that 'when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case,'" *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035, 1042 (9th Cir. 2018) (quoting *Musacchio v. United States*, __ U.S. __, 136 S. Ct. 709, 716 (2016) (citation omitted)), and "applies most clearly where an issue has been decided by a higher court; in that case, the lower court is precluded from reconsidering the issue and abuses its discretion in doing so except in the limited circumstances the district court identified." *Id.* (citations omitted).  The doctrine "does not preclude a court from reassessing its own legal rulings in the same case," however.  *Id.*  Indeed, a court may reconsider "its own orders before judgment is entered or the court is otherwise divested of jurisdiction over the order." *Id.* (citations omitted).

Where, as here, a plaintiff files an amended complaint, the law of the case doctrine is inapplicable:

> Once the plaintiff elects to file an amended complaint, the new complaint is the only operative complaint before the district court. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992) ("[A]fter amendment the original pleading no longer performs any function and is treated thereafter as non-existent[.]" (internal quotation marks omitted)).  Thus, when an original

complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint.  The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; we do not ask whether the plaintiff is "precluded" or "barred" by the prior ruling.  When the defendant files a motion to dismiss the amended complaint, it may urge the district court to determine that the plaintiff's amended complaint did not cure the deficiencies of the initial complaint.  If the district court determines the amended complaint is substantially the same as the initial complaint, the district court is free to follow the same reasoning and hold that the amended claims suffer from the same legal insufficiencies. *The district court is not, however, bound by any law of the case.* The district court may decide the second motion to dismiss in the same way it decided the first, but permitting the filing of an amended complaint requires a new determination. That leaves the district court free to correct any errors or misunderstandings without having to find that its prior decision was "clearly erroneous." [*United States v.*] *Cuddy*, 147 F.3d [1111,] 1114 [(9th Cir. 1998)].  By contrast, where a final legal determination has been made by a higher court, or by the district court in the same or a related case, the law of the case doctrine allows the court to impose a heightened burden on the plaintiff—to show clear error, changed law, new evidence, changed circumstances, or manifest injustice.  *Id.*

*Id.* (emphasis added).  In this case, the Court dismissed the claims at issue with leave to amend.  The Court must therefore consider the SAC on its merits and it is not constrained by statements its prior Order.  *Id.*

Even if the law of the case doctrine applied, the Court did not "decide" the puffery issue, as Plaintiffs claim.  Rather, without addressing puffery and in reviewing the sufficiency of Plaintiff Maeda's California consumer protection claims, the Court merely stated that it "cannot at this stage conclude as a matter of

10

law that a reasonable consumer would not be deceived by the Hawaiian Snacks'

packaging and marketing."  Order, ECF No. 32 at 31.  The Court instead dismissed

Plaintiff Maeda's California consumer protection claims for failure to sufficiently

plead fraud and granted Plaintiff Maeda leave to amend those claims.  *Id.*  Because

Plaintiffs should be given leave to amend claims that could be saved by

amendment, the Court properly allowed Plaintiff Maeda to cure his defective

California consumer protection claims before considering whether dismissal is

appropriate on puffery grounds and/or for failure to satisfy the reasonable

consumer test.

    B. <u>Puffery</u>

      Defendant contends that Plaintiffs' claims are subject to dismissal because

the Hawaiian Snacks' trade names and trade dress are mere puffery; that is, they

are "an accurate homage to their history and heritage . . . and not a concrete

statement of geographic origin."  Mem. in Supp. of Mot., ECF No. 55-1 at 10.

Now that Plaintiffs are on the fourth iteration of their pleading, the Court finds it

appropriate to evaluate whether certain claims are subject to dismissal as a matter

of law based on puffery grounds.

      Statements that are "generalized, vague and unspecific assertions []

constitu[te] mere 'puffery' upon which a reasonable consumer could not rely" and

are not actionable under the California consumer protection statutes.  *Glen Holly*

*Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003); *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1081 (N.D. Cal. 2017).  Put another way, a "statement is considered puffery if the claim is extremely unlikely to induce consumer reliance."  *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) (affirming district court's dismissal of false advertising claim under the Lanham Act because the statement—"we're the low cost commercial collection experts"—was mere puffery and holding that "it is beyond the realm of reason to assert . . . that a reasonable consumer would interpret this as a factual claim upon which he or she could rely").

"California consumer protection law distinguishes between concrete statements about a product and generalized boasts or statements of opinion, and only the former is actionable under the [consumer protection statutes]."  *Bruton v. Gerber Prod. Co.*, No. 12-CV-02412-LHK, 2014 WL 172111, at \*11 (N.D. Cal. Jan. 15, 2014) (citing *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360-62 (2003)); *Newcal Indus.*, 513 F.3d at 1053 ("Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim.").  "If an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then the claim may be dismissed as a matter of law."  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-

MD-02752-LHK, 2017 WL 3727318, at *26 (N.D. Cal. Aug. 30, 2017) (quoting

*Baltazar v. Apple Inc.*, 2011 WL 6747884, at *4 (N.D. Cal. Dec. 22, 2014)).

When considering a motion to dismiss pursuant to FRCP 12(b)(6), "[d]istrict

courts often resolve whether a statement is puffery." *Cook*, 911 F.2d at 245.

However, "whether a business practice is deceptive will usually be a question of

fact not appropriate for decision on demurrer." *Williams v. Gerber Prod. Co.*, 552

F.3d 934, 938 (9th Cir. 2008). Only in a "rare situation" is a motion to dismiss

granted on this ground. *Id.* at 939.

Both Hawaiʻi and California employ the reasonable consumer standard in

evaluating consumer protection claims. *Yokoyama v. Midland Natʻl Life Ins. Co.*,

594 F.3d 1087, 1092 (9th Cir. 2010) ("Hawaii's consumer protection laws look to

a reasonable consumer, not the particular consumer."); *Williams*, 552 F.3d at 938

(explaining that the California consumer protection statutes are governed by the

reasonable consumer test). However, only the California courts apply the puffery

defense in the manner urged by Defendant.[4] Therefore, although the parties

conflate the Hawaiʻi and California claims and their related analyses, the Court

evaluates the Hawaiʻi and California consumer protection claims as they are

---

[4] Defendant has not cited, and the Court has not found, a Hawaiʻi appellate case
analyzing the Hawaiʻi consumer protection statutes as the California courts do. At
the hearing, defense counsel conceded that there are no such Hawaiʻi cases but
advocated for the application of the analyses employed by other federal district
courts.

conventionally addressed by the respective state appellate courts and federal district courts.

### C. Hawai'i Consumer Protection Claims

#### 1. UDAP – Count 1

With respect to the UDAP claim, Plaintiffs allege that Defendant's conduct was and continues to be deceptive and of no benefit to consumers because Defendant misleads consumers into believing that the Hawaiian Snacks are made in Hawai'i, when they are in fact manufactured in Washington.  SAC, ECF No. 54 at ¶¶ 74, 76.  According to Plaintiffs, the "HAWAIIAN" wording "and accompanying Hawaiian imagery and references printed on the front packaging are likely to be interpreted by a reasonable consumer to mean that the Hawaiian snacks are made in Hawai'i."  *Id.* at ¶ 76.

 HRS § 480-13(b) authorizes a cause of action for "[a]ny consumer who is injured by any unfair or deceptive act or practice forbidden or declared unlawful by section 480-2."  Haw. Rev. Stat. § 480-13(b).  HRS § 480-2(a) deems unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Haw. Rev. Stat. § 480-2(a).  A deceptive practice has "the capacity or tendency to mislead or deceive."  *Courbat v. Dahana Ranch, Inc.*, 111 Hawai'i 254, 261, 141 P.3d 427, 434 (2006) (citation and quotations omitted).  A practice is unfair when it "offends established public policy

and when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Balthazar v. Verizon Haw., Inc.*, 109 Hawai'i 69, 77, 123 P.3d 194, 202 (2005).  A "deceptive act or practice is '(1) a representation, omission, or practice[ ] that (2) is likely to mislead consumers acting reasonably under the circumstances [where] (3) [ ] the representation, omission, or practice is material.'" *Courbat*, 111 Hawai'i at 262, 141 P.3d at 43 (citation omitted) (alterations in original).  Representations, omissions, or practices are considered "material" if they involve "information that is important to consumers and, hence, likely to affect their choice of or conduct regarding, a product." *Id.* (citations and quotations omitted).

The above test is objective, "turning on whether the act or omission 'is likely to mislead consumers' . . . as to information 'important to consumers' . . . in making a decision regarding the product or service." *Id.* (citations omitted). "Hawaii's consumer protection laws look to a reasonable consumer, not the particular consumer." *Yokoyama*, 594 F.3d at 1092.  Ordinarily, the question of whether a practice constitutes an unfair or deceptive trade practice is a question of fact. *Balthazar*, 109 Hawai'i at 72 n.4, 123 P.3d at 197 n.4 (citation omitted).

An HRS § 480-13 claim requires "four essential elements:  (1) a violation of chapter 480; (2) injury to plaintiff's business or property resulting from such violation; (3) proof of the amount of damages; and (4) a showing that the action is

in the public interest or that the defendant is a merchant." *Davis v. Four Seasons Hotel Ltd.*, 122 Hawaiʻi 423, 455, 228 P.3d 303, 335 (2010).

Because Plaintiffs allege fraudulent conduct by Defendant, their allegations must be pled with particularity pursuant to FRCP 9(b). *Smallwood v. NCsoft Corp.*, 730 F. Supp. 2d 1213, 1232-33 (D. Haw. 2010). FRCP 9(b) requires a party alleging fraud or mistake to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc), *superseded on other grounds by* 15 U.S.C. § 78u–4. FRCP 9(b)'s purpose is threefold:

> (1) to provide defendants with adequate notice to allow them to defend the charge and deter plaintiffs from the filing of complaints "as a pretext for the discovery of unknown wrongs"; (2) to protect those whose reputation would be harmed as a result of being subject to fraud charges; and (3) to "prohibit [] plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citations omitted) (alterations in original).

The "who, what, when, where, and how" of the alleged misconduct must accompany averments of fraud." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). A plaintiff must offer something greater "than the neutral facts necessary to identify the transaction." *Vess*, 317

F.3d at 1106.  He or she must identify "what is false or misleading about a statement, and why it is false." *Id.* (citation omitted).  The circumstances constituting the alleged fraud must "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (citations omitted).

In the original Complaint, Plaintiffs failed to satisfy FRCP 9(b)'s heightened pleading requirements.  Defendant argues that Plaintiffs have yet to comply with FRCP 9(b)'s heightened pleading standards because although they have included more factual allegations, they have not added any new allegations concerning Defendant's conduct.  After reviewing Plaintiffs' allegations related to this claim, the Court finds that Plaintiffs sufficiently state a UDAP cause of action. The allegations added to the SAC provide Defendant with ample notice of the purportedly violative conduct and in fact, it is unclear what more they could allege concerning the circumstances that serve as the basis for their claim.  Hence, the Court DENIES the Motion as to the UDAP claim (Count 1).

### 2.   Hawai'i's False Advertising Law – HRS § 708-871 – Count 2

In its Order, the Court concluded that Plaintiff Maeda adequately stated a claim for false advertising.  ECF No. 32 at 28.  Plaintiffs added factual allegations in the SAC regarding their purchases, but their legal allegations remain the same: Defendant has represented and continues to represent to the public, "through

deceptive packaging and marketing, that the Hawaiian Snacks are products made in Hawaii" which is "misleading because the Hawaiian Snacks are made in the continental United States, and more specifically, in Algona, Washington."  SAC, ECF No. 54 at ¶ 85.  Plaintiffs continue to assert that Defendant has violated HRS § 708-871[5] by disseminating misleading information when it "knows, knew, or should have known through the exercise of reasonable care that the representation was and continues to be misleading."  *Id.*

In light of the Court's prior determination that Plaintiffs sufficiently stated a claim, and Defendant having failed to specifically address or challenge this claim, the Court again finds that Plaintiffs adequately state a claim for false advertising. Consequently, the Motion is DENIED as to the false advertising claim (Count 2).

---

[5]  Under § 708-871, "[a] person commits the offense of false advertising if, in connection with the promotion of the sale of property or services, the person knowingly or recklessly makes or causes to be made a false or misleading statement in any advertisement addressed to the public or to a substantial number of persons."  Haw. Rev. Stat. § 708-871.  Although HRS § 708-871 is a criminal statutory provision, HRS § 603-23.5 authorizes a private right of action.  Haw. Rev. Stat. § 603-23.5 ("Any person, firm, private corporation, or municipal or other public corporation or trade association or the attorney general or any county attorney, prosecuting attorney, or corporation counsel may maintain an action to enjoin a continuance of any act in violation of section 708-871 and if injured thereby for recovery of damages.").

### 3.  UDTPA – HRS Chapter 481A – Count 3

Plaintiffs present their UDTPA claim for the first time in the SAC, alleging

that Defendant violated HRS §§ 481A-3(a)(2), 481A-3(a)(4), 481A-3(a)(5), and

481A-3(a)(7) by marketing the Hawaii Snacks with their current labeling, packing,

and advertisements because this practice (1) "caused likelihood of confusion or

misunderstanding that the source of the Hawaiian Snacks is Hawai'i, when it is

not," *id.* at ¶ 90; (2) "used deceptive representation and designations of the

product's geographic origin in connection with goods or services," *id.* at ¶ 91; (3)

"represented and continues to represent that the Hawaiian Snacks have

characteristics (made in Hawai'i) which they do not have," *id.* at ¶ 92; and (4)

"represented and continues to represent that the products are made in Hawai'i

when they are actually made in the mainland." *Id.* at ¶ 93.

Plaintiffs further allege that Defendant violated HRS §§ 481A-3(a)(9) and

481A-3(a)(12) by packaging and marketing the Hawaiian Snacks as originating

from Hawai'i, because it intentionally did not sell the products as such and it

created confusion and misunderstanding about the geographic origin of the

Hawaiian Snacks. *Id.* at ¶¶ 94-95.  Plaintiffs claim to have reasonably and

justifiably relied on Defendant's misleading and fraudulent conduct when

purchasing the Hawaiian Snacks and aver that they would not have purchased the

snacks, or would have paid less, had they known the snacks were made on the

mainland. *Id.* at ¶¶ 97-98. Plaintiffs seek injunctive relief pursuant to § 481A-4[6]

to prevent Defendant "from continuing to engage in the [identified] wrongful acts

and unfair and unlawful business practices." *Id.* at ¶ 100.

Defendant moves for dismissal of this claim because § 481A-4 only offers

injunctive relief as a remedy and Plaintiffs have not plausibly alleged future harm.

Plaintiffs misconstrue this as a standing argument and insist that their reference to

paragraphs 1-65 in paragraph 87 cures the purported technical defect because

paragraph 53[7] explains that Plaintiffs wish to continue purchasing Hawaiian

Snacks if they are made in Hawai'i or Plaintiffs are confident about their place of

manufacture. Opp'n, ECF No. 58 at 21-22. The Court disagrees.

Plaintiffs expanded their pleading from 38 to 65 pages due in large part to

lengthy factual redundancies within each claim. As such, Plaintiffs should have

and easily could have presented the requisite future harm allegations within their

UDTPA claim, which is achievable in a sentence or two. Given the verbosity of

_____

[6] HRS § 481A-4 provides: "(a) A person likely to be damaged by a deceptive
trade practice of another may be granted an injunction against it under the
principles of equity and on terms that the court considers reasonable." Haw. Rev.
Stat. § 481A-4(a).

[7] In its Order, the Court signaled that Plaintiff Maeda should refine his allegations
pertaining to injunctive relief. ECF No. 32 at 48 n.15. Plaintiffs changed
Defendant's name and made a typographical edit but made no substantive edits.
SAC, Doc. No. 54 at ¶ 53.

the SAC, neither Defendant nor the Court should be required to scour 65

paragraphs of general factual allegations to ascertain whether those allegations,

when coupled with allegations specifically pertaining to the UDTPA claim,

adequately state a claim. *Villela v. Nevada*, No. 2:15-CV-826-LDG-VCF, 2015

WL 4570297, at *2 (D. Nev. May 6, 2015), *adopted by*, 2017 WL 1293978 (D.

Nev. Mar. 10, 2017) ("It is not the court's job to laboriously search the Complaint

for factual assertions that could, in theory, be used to support one legal claim or

another."); *cf. Nw. Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, 662-63 (7th Cir. 1994)

("District judges are not archaeologists. They need not excavate masses of papers

in search of revealing tidbits—not only because the rules of procedure place the

burden on the litigants, but also because their time is scarce.").

Insofar as Plaintiffs bolstered their allegations with respect to the other

claims, the Court finds unconvincing their contention that they adequately pled a

UDTPA claim by referencing paragraphs 1 through 65. Their reliance on prior

paragraphs to save this claim highlights the inadequacy of their allegations, which

identify past harm but fail to allege future harm even though an injunction is

Chapter 481A's exclusive remedy. The Court also notes that as pled, this claim

fails to satisfy FRCP 9(b).

Defendant requests that the claim be dismissed without leave to amend

because Plaintiffs have already had multiple opportunities to perfect their

allegations.  The Court agrees that Plaintiffs have had ample opportunity and further notes that the facts underlying Plaintiffs' claims precede the inception of this case.  This is Plaintiffs' fourth iteration of their pleading; there is no identifiable reason for their failure to include this claim at the outset, nor their failure to proffer sufficient allegations.  However, the Court must apply the liberal standard concerning the amendment of pleadings.  Because Plaintiffs could potentially cure the aforementioned defects, the Court DISMISSES the UDTPA claim, but grants Plaintiffs leave to amend.  This will be Plaintiffs' sole opportunity to amend this claim.

   D. <u>California Consumer Protection Claims</u>

      1. <u>CLRA, UCL and FAL – Counts 4-6</u>

Defendant seeks dismissal with prejudice of Plaintiff Maeda's California CLRA, UCL, and FAL claims on the basis that the Hawaiian Snacks' trade name and dress are mere puffery, at most, and/or because Plaintiffs do not satisfy the reasonable consumer test.  As explained above, courts may dismiss California consumer protection claims as a matter of law when a purported misrepresentation amounts to puffery or would not deceive a reasonable consumer.  *In re Yahoo!*, 2017 WL 3727318, at *26.

California's consumer protection laws all prohibit "unlawful, unfair, or fraudulent business practices."  *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir.

2016) (citing Cal. Bus. & Prof. Code §§ 17200, 17500; Cal. Civ. Code § 1770).

They "prohibit 'not only advertising which is false, but also advertising which[,]

although true, is either actually misleading or which has a capacity, likelihood or

tendency to deceive or confuse the public.'" *Williams*, 552 F.3d at 938 (alteration

in original) (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002), *as modified*

(May 22, 2002) (quoting *Leoni v. State Bar*, 704 P.2d 183, 194 (Cal. 1985))).  Any

violation of the FAL necessarily violates the UCL.  *Ebner*, 838 F.3d at 963.

Notwithstanding their differences, California's consumer protection statutes

are all governed by the "reasonable consumer" test.  *Williams*, 552 F.3d at 938.

The reasonable consumer test requires Plaintiff Maeda to "show that 'members of

the public are likely to be deceived.'"  *Id.* (quoting *Freeman v. Time, Inc.*, 68 F.3d

285, 289 (9th Cir. 1995) (quoting *Bank of the West v. Superior Court*, 833 P.2d

545, 553 (Cal. 1992))) (quotations omitted).  The reasonable consumer test does

not contemplate a particularly naïve consumer:

> Thus, for example, the standard is not a least sophisticated
> consumer, unless the advertising is specifically targeted to such
> a consumer.  Nor do we test the impact on the unwary
> consumer, although a reasonable consumer "need not be
> 'exceptionally acute and sophisticated'" and might not
> "necessarily be wary or suspicious of advertising claims."
> "Rather, California courts consistently have looked to the
> ordinary consumer within the larger population."

*Hill v. Roll Int'l Corp.*, 128 Cal. Rptr. 3d 109, 115-16 (Cal. Ct. App. 2011).

"Likely to deceive" requires more than a mere possibility that Defendant's packaging and marketing of the Hawaiian Snacks "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Ebner*, 838 F.3d at 965 (citation omitted); *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003).  "The reasonable consumer standard requires a probability 'that a *significant portion* of the general consuming public or of targeted consumers, acting reasonably in the circumstances, *could* be misled.'" *Ebner*, 838 F.3d at 965 (emphases added) (citation omitted).

Central to this litigation is whether Defendant markets and packages the Hawaiian Snacks in such a manner to suggest that they are made in Hawai'i when they in fact originate from Washington.  The Hawaiian Snacks packaging all include the word "HAWAIIAN" at top.  SAC, ECF No. 54 at ¶¶ 26-33.  Beneath that, the chips are identified as "KETTLE STYLE POTATO CHIPS" followed by their respective flavors.  SAC, ECF No. 54 at ¶¶ 26-31.  By contrast, the rings are described as "LUAU BARBEQUE RINGS" or "SWEET MAUI ONION RINGS." *Id.* at ¶¶ 32-33.  All packaging includes a variety of imagery associated with

Hawaiʻi, such as hula dancers, canoes, beaches, palm trees, and volcanoes.[8]

_____

[8] Although Plaintiffs neglected to include images of the backs of the packages, they do not dispute that the labeling there identifies Algona, Washington as the place of manufacture.  The Court makes note of this fact, but emphasizes that the presence of the Washington address on the back of the packaging does not factor into the Court's analysis.  At the hearing, Plaintiffs' counsel argued that pursuant to *Williams v. Gerber Products Co.*, consumers are not expected to look beyond the front of the packaging.  The *Williams* court indeed "disagree[d] with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the *ingredient list in small print* on the side of the box."  *Williams*, 552 F.3d at 939 (emphasis added).  However, *Williams* involved fruit juice snacks and multiple images and representations that might cause a consumer to believe the snacks were natural and made of fruits.  The *Williams* court held:

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 939-40.  Defendant argues that the Washington address is conspicuously placed on the back of the package.  Even if that was not the case, an origination label readily identifies location to correct potential misconceptions about geographic origin, while an ingredient list requires an examination to ascertain whether representations about a product are true.  *See, e.g., Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 390-92 (E.D.N.Y. 2017) (holding that no reasonable consumer would believe that Sapporo beer was brewed in Japan, despite the use of Japanese imagery, trademarked North Star symbol representing Japan, and the word "imported" on the label, because the label also included a disclosure, in small font, of the beer's Canadian origin).

Two examples are depicted here:



SAC, ECF No. 54 at ¶¶ 26, 32.

As explained above, Defendant argues that the Hawaiian trade dress and imagery, even taken together, are non-actionable and amount to no more than puffery. In response an inquiry at the hearing, defense counsel explained that Defendant concurrently and/or alternatively argues that Plaintiffs do not satisfy the reasonable consumer test. *Broomfield*, 2017 WL 3838453, at *5 (noting that the defendant's puffery argument and argument that no reasonable consumer could be misled by the subject representations were interrelated under the reasonable consumer test). The Court agrees that Defendant's packaging is non-actionable,

but primarily because no *reasonable* consumer[9] could be deceived or misled by Defendant's packaging, not necessarily because the packaging constitutes puffery. *Glen Holly*, 343 F.3d at 1015 ("[G]eneralized, vague and unspecific assertions, constitut[e] mere 'puffery' upon which a reasonable consumer could not rely."). Other than the word "HAWAIIAN" there are no assertions, phrases, or claims to assess on the packaging at issue. "Hawaiian" is not a general claim of superiority, nor a generalized boast or statement of opinion. *Cook, Perkiss & Liehe*, 911 F.2d at 246; *Bruton*, 2014 WL 172111, at *11. But neither is it a specific assertion or concrete statement about a product. *Id.* Therefore, while it may not fall neatly into the category of claims or assertions constituting puffery, it is nevertheless non-actionable, even when taken together with the corresponding images.

Defendant persuasively points to its exclusive use of the word "Hawaiian" and associated imagery, and that there is no "specific geographic indicia related to Hawaii—such as a map, invitation to visit Defendant on the island, or Hawaiian address or geographic emblem—that indicate a 'specific place that the Product is

---

[9]  The Court again acknowledges that Hawaiʻi employs a reasonable consumer test in connection with its consumer protection statutes. However, as earlier discussed, there is an absence of Hawaiʻi case law dismissing as a matter of law consumer protection claims based on puffery and/or failure to meet the reasonable consumer test. Consequently, although the Court dismisses the California consumer protection claims, it declines to dismiss the Hawaiʻi consumer protection claims on a FRCP 12(b)(6) motion.

produced and that the consumer can visit.'"  Reply, ECF No. 60 at 5 (citation omitted).  The Court finds instructive *Broomfield v. Craft Brew Alliance, Inc.*, No. 17-CV-01027-BLF, 2017 WL 3838453, at *1 (N.D. Cal. Sept. 1, 2017).  While the *Broomfield* court ultimately concluded that the plaintiffs alleged actionable misrepresentations, 2017 WL 3838453, at *8, it delineated between actionable and non-actionable representations that are applicable here.  *Broomfield* involved representations printed on the packaging and bottles of Kona beer, including an image of a map of Hawai'i marking the location of the Kona Brewing Co. Brewery on the Big Island; the statement "We invite you to visit our brewery and pubs whenever you are in Hawaii"; an image of the Hawaiian island chain; the phrase "Liquid Aloha"; Hawaiian-related images (orchids, volcanoes, palm trees, surfers, canoes, waterfalls, and hula dancers); various slogans ("Thirst's Up!", "Catch a Wave!", "Crack Open Aloha!"); an image of a Hawaiian island next to a narrative and description of the specific beer; and a Kailua-Kona, Hawai'i address.  *Id.* at *1-2.

Under the *Broomfield* court's analysis, the allegations in this case fall flat. The word "Hawaiian," combined with a single Hawai'i-related image simply could not deceive a *reasonable* consumer about the origin of the Hawaiian Snacks. Indeed, the *Broomfield* court stated, in the context of a motion to dismiss:  "merely referencing Hawaii and its culture on the packaging is not enough on its own to

28

confuse a reasonable consumer regarding the origin of the beer." *Id.* at *6.  That is essentially what Plaintiffs present here.  Mere evocation of Hawaiʻi, with no additional representations that could deceive a reasonable consumer into believing that a product is made in Hawaiʻi, is insufficient.  *Id.*  ("If the Consolidated Complaint solely alleged pictures of surfboards and the vague phrase 'Liquid Aloha' on the beer packaging, the case would end there.").  The *Broomfield* decision turned on the inclusion of "the Hawaiian address, the map of Hawaii identifying Kona's brewery on the Big Island, and the statement 'visit our brewery and pubs whenever you are in Hawaii'" because those were not mere puffery, but "specific and measurable representations of fact that could deceive a reasonable consumer into believing that the six- and twelve-packs of Kona beer were brewed in Hawaii." *Id.*  Absent those types of elements, the Court finds that Defendant's packaging—which only contains the word "HAWAIIAN" and Hawaiʻi-related imagery—would not likely deceive a significant portion of the general public into believing that the Hawaiian Snacks are manufactured in Hawaiʻi.[10]  The Court accordingly dismisses the California consumer protection claims as a matter of law.

---

[10]  As earlier explained, this is without factoring the presence of the Washington address on the back of the package.  Also, while not dispositive of the issue, the Court further notes that unlike products such as macadamia nuts or coffee, chips are not inherently associated with Hawaiʻi.

Defendant relies on *Dumas v. Diageo PLC*, No. 15CV1681 BTM(BLM), 2016 WL 1367511, at *1 (S.D. Cal. Apr. 6, 2016), which, while somewhat distinguishable, addressed facts similar to the instant case.  In *Dumas*, six- and twelve-pack bottle trays of Red Stripe beer contained the language "Jamaican Style Lager" and "The Taste of Jamaica." *Id.* at *3.  The court granted a motion to dismiss the California consumer protection claims because "no reasonable consumer could be misled by the packaging or bottle labels into thinking that Red Stripe is brewed in Jamaica with Jamaican ingredients." *Id.* at *6.  The court reasoned that (1) "'Jamaican' modifies the word 'Style' not 'Lager.'  The very fact that the word 'style' is used indicates that the product is *not* from Jamaica"; and (2) "'The Taste of Jamaica' is a vague and meaningless phrase . . . . When viewed together with the phrase 'Jamaican Style Lager,' a reasonable interpretation of the phrase is that the beer is made in a way that people identify with Jamaica . . . and evokes the spirit or feeling of Jamaica." *Id.* at *4.

In the present case, the label does not contain the textual qualifiers found in *Dumas*, but as already explained, the word "Hawaiian," even when accompanied by the subject images, does not represent that the Hawaiian Snacks are from Hawaiʻi.  Like "The Taste of Jamaica" phrase in *Dumas*, it more reasonably evokes the spirit of Hawaiʻi.  But as already determined, merely referencing or evoking the

spirit of Hawaiʻi is insufficient to confuse a reasonable consumer about the origin of the Hawaiian Snacks. [11]

Cases in which plaintiffs were found to have alleged actionable misrepresentations about defendants' packaging as it pertains to geographic origin require more than is presented here. *Reed v. Gen. Mills, Inc.,* No. C19-0005-JCC, 2019 WL 2475706, at *4-5 (W.D. Wash. June 13, 2019) (holding that the features of the product packaging were not, as a matter, of law, non-actionable because: (1) "'VISIT OUR HOME FARM,' 'SKAGIT VALLEY, WA,' and 'SINCE 1972' . . indicate a specific place that the Product is produced and that the consumer can visit . . . not a feeling that the Product is 'similar to' or 'evokes the spirit of' Washington" and (2) "it is not implausible that a consumer could believe the Products came from a Cascadian farm because of the 'Cascadian Farm' brand

---

[11] The *Broomfield* court considered *Dumas* but found it distinguishable:

> [T]here is no equivalent in *Dumas* to Plaintiffs' allegations regarding the Hawaiian address, the map of Hawaii that identifies the Kona brewery, and the invitation to "visit our brewery" in Kona. These representations go beyond those held to be non-actionable in *Dumas*, and they do more than evoke the "spirit" of Hawaii or indicate that the beer is "Hawaiian-style." Considered together in context, these statements and images amount to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii at the specific brewery location listed and depicted on the package.

*Broomfield*, 2017 WL 3838453, at *7.

name, particularly in light of the corresponding Skagit Valley emblem"); *Shalikar v. Asahi Beer U.S.A., Inc.*, No. LACV1702713JAKJPRX, 2017 WL 9362139, at \*8 (C.D. Cal. Oct. 16, 2017) (finding that reasonable consumers could be misled into believing that the beer is produced in Japan because the name "Asahi" means "morning sun" in Japanese and the packaging contains Japanese katakana and kanji characters that in Japanese describe the name and characteristics of the beer); *Peacock v. 21st Amendment Brewery Cafe, LLC*, No. 17-CV-01918-JST, 2018 WL 452153, at \*5 (N.D. Cal. Jan. 17, 2018) ("Peacock plausibly alleges that the Bay Area map with an 'x' marking 'The Brewery' is likely to deceive a reasonable consumer . . . . it would be reasonable for a consumer looking at 21st Amendment's carton map to believe that its beer was brewed in California."); *Marty v. Anheuser-Busch Cos., LLC*, 43 F. Supp. 3d 1333, 1340-42 (S.D. Fla. 2014) (finding that the statements "Originated in Germany," "German Quality," and "Brewed under the German Purity Law of 1516," taken together, could mislead a reasonable consumer into believing that Beck's beer is an imported beer brewed in Germany).

Even in the non-geographic origin context, far more is required to avoid dismissal. For example, in *William*s, the Ninth Circuit reversed the dismissal of the appellants' California consumer protection, fraud, and warranty claims because the features of Gerber's Fruit Juice Snacks packaging could likely deceive a

reasonable consumer—the product was called "fruit juice snacks"; the packaging

included a number of different fruit images; the label stated that the snack was

made with "fruit juice and other all natural ingredients"; and the label claimed that

the snack was "just one of a variety of nutritious Gerber Graduates foods and

juices that have been specifically designed to help toddlers grow up strong and

healthy." *Williams*, 552 F.3d at 939.

Based on the foregoing, the California consumer protection claims presented

here fall into the exceptional category of cases susceptible to dismissal because a

reasonable consumer would not be misled into believing that the Hawaiian Snacks

originate from Hawaiʻi due to the mere inclusion of the word "Hawaiian" plus

Hawaiʻi-related imagery on the snacks' packaging.

II. <u>Common Law Claims</u>

    A. <u>Common Law Fraud /Intentional Misrepresentation – Count 7</u>

Plaintiffs again allege that Defendant "willfully, falsely, or knowingly

packaged and marketed the Hawaiian Snacks in a manner indicating that the

Hawaiian Snacks are made in Hawaiʻi" even though they are made in the

continental United States, namely in Algona, Washington. SAC, ECF No. 54 at

¶ 137. They aver that Defendant's misrepresentations are and were material and

that Defendant's use of "HAWAIIAN" and Hawaiian images in its labeling

evidences its intention for Plaintiffs and consumers to rely on these

representations.  *Id.* at ¶¶ 138, 140.  Plaintiffs assert that this intention is further

confirmed by a statement made by Jeff Leichleiter, general manager for Tim's

Cascade Snacks:  "We know 'Luau Barbeque Rings' doesn't make sense, but 98

percent of the country doesn't know . . . The Hawaii image is a powerful brand, —

and it's done well for us."  *Id.* at ¶ 140.

Plaintiffs added paragraphs of factual allegations concerning their purchase

of the Hawaiian Snacks, claiming that the packaging caused them to reasonably

believe that the snacks are from Hawai'i.  *Id.* at ¶¶ 141-142.  They represent that

were it not for their reliance on Defendant's misrepresentations, they would not

have purchased the Hawaiian Snacks, or they would have declined to purchase the

snacks at the offered prices.  *Id.* at ¶ 143.

To establish a common law fraud claim in Hawai'i, a plaintiff must show

that there was "(1) a representation of a material fact, (2) made for the purpose of

inducing the other party to act, (3) known to be false but reasonably believed true

by the other party, and (4) upon which the other party relies and acts to his or her

damage."[12]  *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116

Hawai'i 277, 298, 172 P.3d 1021, 1042 (2007).

---

[12]  In California, fraud consists of the following elements: "(a) misrepresentation
(false representation, concealment, or *nondisclosure*); (b) knowledge of falsity (or
'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance;
and (e) resulting damage."  *Kearns*, 567 F.3d at 1126 (citation and quotations
(continued. . . . )

To establish an intentional misrepresentation claim, a plaintiff must demonstrate that "(1) false representations were made by defendants, (2) with knowledge of their falsity (or without knowledge of their truth or falsity), (3) in contemplation of plaintiff's reliance upon these false representations, and (4) plaintiff did rely upon them." *Shoppe v. Gucci Am., Inc.*, 94 Hawai'i 368, 386, 14 P.3d 1049, 1067 (2000). "To be actionable, the alleged false representation must relate to a past or existing material fact and not the occurrence of a future event." *Id.* (citation omitted).

The Court dismissed Plaintiffs' fraud and intentional misrepresentation claims asserted in the original Complaint for failure to to satisfy FRCP 9(b)'s heightened pleading requirements. *See Vess*, 317 F.3d at 1103 (explaining that FRCP 9(b)'s particularity requirement must be satisfied in addition to the pleading requirements for fraud/intentional misrepresentation claims under state law). Defendant argues that this claim remains deficient under FRCP 9(b) despite the addition of factual allegations because Plaintiffs have not added necessary allegations concerning Defendant's conduct. Based on the Court's review of Plaintiffs' additional allegations related to this claim, it concludes that Plaintiffs

---

( . . . . continued)
omitted). Intentional misrepresentation claims are comprised of the same elements. *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, 16 F. Supp. 3d 1123, 1134 (S.D. Cal. 2014) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 102 P.3d 268, 274 (Cal. 2004) (citation omitted)).

sufficiently state a fraud/intentional misrepresentation claim.  Plaintiffs have

provided factual context, identified Defendant's purported misrepresentations, and

explained how they were harmed. The newly-added allegations provide Defendant

with enough notice of the conduct that purportedly caused harm to Plaintiffs.

Thus, the Court DENIES the Motion as to the fraud/intentional misrepresentation

claim (Count 7).

B. Negligent Misrepresentation – Count 8

Plaintiffs' core negligent misrepresentation allegations are by and large

identical to those asserted in the Complaint.  *See* SAC, ECF No. 54 at ¶¶ 145-148,

153-155.  The Court found that Plaintiff Maeda adequately stated a claim for

negligent misrepresentation by asserting that Defendant made misrepresentations

concerning the origin of the Hawaiian Snacks knowing they were false, to induce

him and other consumers to rely on the representations, upon which they relied,

and he suffered damages as a result.  Order, ECF No. 32 at 41.  Based on this

reasoning, the Court denied Defendant's prior motion to dismiss.  *Id.*  Other than

its blanket request for dismissal, Defendant does not advance any arguments

concerning deficiencies with respect to this claim.[13]  Accordingly, the Court again

finds that Plaintiffs adequately state a claim for negligence misrepresentation.  The

---

[13]  The Court already determined that the allegations need not satisfy FRCP 9(b). Therefore, Defendant's argument that Plaintiffs have yet to plead fraud with particularity is unavailing.

Motion is therefore DENIED as to the negligent misrepresentation claim (Count 8).

### C. Quasi-Contract/Unjust Enrichment/Restitution – Count 9

The Court previously found that Plaintiff Maeda adequately stated a quasi-contract/unjust enrichment/restitution claim under both Hawai'i and California law. *Id.* at 43. Defendant does not raise any specific challenges—other than to suggest that all claims must be dismissed pursuant to its puffery defense—to this claim and neither party offered any briefing or analysis. Therefore, as it did before, the Court DENIES the Motion with respect to this claim.

### III. Standing as to the Unpurchased Hawaiian Snacks

Defendant argues that Plaintiffs lack standing with respect to six varieties of the Hawaiian Snacks they did not purchase: Hawaiian Kettle Style Potato Chips in the Sweet Maui Onion, Ginger Wasabi, Hulapeno, and Mango Habanero flavors, and the Hawaiian Rings in Luau Barbeque and Sweet Maui Onion flavors. Plaintiffs counter that they have standing because the products they purchased— Hawaiian Kettle Style Potato Chips in Original and Luau BBQ flavors—are substantially similar to the other six products. Alternatively, Plaintiffs suggest that the Court could defer ruling on this issue until class certification.

A. Constitutional Standing

Article III of the Constitution limits the jurisdiction of the federal courts to certain "cases" and "controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). Plaintiffs are required to demonstrate three elements to establish that they have "standing" to sue in federal court: (1) "injury in fact" that is "concrete and particularized" and "actual and imminent"; (2) the injury must be fairly traceable to defendant's conduct; and (3) the injury can be redressed through adjudication. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Spokeo, Inc. v. Robins*, __ U.S. __, 136 S. Ct. 1540, 1547 (2016). When a plaintiff lacks constitutional standing, a suit "is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit." *City of Oakland v. Lynch*, 798 F.3d 1159, 1163 (9th Cir. 2015) (quoting *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004)) (quotations omitted); *City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).

Even if "an injury is shared by a large class of other possible litigants," a plaintiff must nevertheless "allege a distinct and palpable injury to himself." *Warth*, 422 U.S. at 501 (citation omitted); *Spokeo*, __ U.S. at __ n.6, 136 S. Ct. at 1547 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other,

38

unidentified members of the class to which they belong.'"").  A plaintiff invoking

federal jurisdiction must satisfy Article III's standing requirements even if the

plaintiff only asserts state law claims.  *See Birdsong v. Apple. Inc.*, 590 F.3d 955,

960 n.4 (9th Cir. 2009).

     B. <u>Whether Plaintiffs Have Standing as to the Unpurchased Snacks</u>

     A "plaintiff may have standing to assert claims for unnamed class members

based on products he or she did not purchase so long as the products and alleged

misrepresentations are substantially similar." *Miller v. Ghirardelli Chocolate Co.*,

912 F. Supp. 2d 861, 869 (N.D. Cal. 2012); *Beckham v. Ariz. Canning Co., LLC*,

No. 316CV02792JAHBLM, 2019 WL 4277393, at *9 (S.D. Cal. Sept. 9, 2019)

*Cordes v. Boulder Brands USA, Inc.*, No. CV 18-6534 PSG (JCX), 2019 WL

1002513, at *2 (C.D. Cal. Jan. 30, 2019) (internal quotations omitted) ("The

'prevailing view' in the Ninth Circuit is that class action plaintiffs can bring claims

for products they did not purchase 'as long as the products and alleged

misrepresentations are substantially similar."); *Astiana v. Dreyer's Grand Ice*

*Cream, Inc.,* No. C-11-2910 EMC, 2012 WL 2990766, at *11 (N.D. Cal. July 20,

2012) ("[T]he critical inquiry seems to be whether there is sufficient similarity

between the products purchased and not purchased.").  Even products with varying

ingredients can be deemed substantially similar when the same wrongful conduct is

attributable to those products.  *Vasic v. PatentHealth, L.L.C.*, 171 F. Supp. 3d

1034, 1044 (S.D. Cal. 2016); *Takano v. Procter & Gamble Co.*, No. 2:17-CV-

00385-TLN-AC, 2018 WL 5304817, at *4 (E.D. Cal. Oct. 24, 2018).  When

sufficient similarity exists between products, "any concerns regarding material

differences in the products can be addressed at the class certification stage."

*Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012)

(citation omitted).  Claims are subject to dismissal "where the unpurchased product

and the purchased product are dissimilar or require an 'individualized factual

inquiry.'"  *Beckham*, 2019 WL 4277393, at *9.

Here, the Hawaiian Snacks are sufficiently similar.  All of the snack

packages include the word "HAWAIIAN" at top, followed by (1) "Kettle Style

Potato Chips" and the respective flavor; (2) "Luau Barbeque Rings"; or (3) "Sweet

Maui Onion Rings."  SAC, ECF No. 54 at ¶¶ 26-33.  All packing also contains a

Hawaiʻi-related image; the Luau Barbeque Chips and Rings share the same image,

as do the Sweet Maui Onion Chips and Rings.  Moreover, Plaintiffs' allegations—

that the use of "Hawaiian" and Hawaiʻi-related imagery deceives consumers into

believing that the Hawaiian Snacks are made in Hawaiʻi—concern the Hawaiian

Snacks' packaging, not their ingredients, and therefore apply to all eight variations

of the Hawaiian Snacks.  *See, e.g., Astiana*, 2012 WL 2990766, at *13 (finding

sufficient similarity between purchased and unpurchased products because they

were the same kind of food products (ice cream) and shared the same labels ("All

Natural Flavors" for Dryer's/Edy's products and "All Natural Ice Cream" for Haagen-Daz products) and concluding that the fact that the products contain different ingredients "is not dispositive as Plaintiffs are challenging the same basic mislabeling practice across different product flavors"); *Anderson*, 888 F. Supp. 2d at 1006 (holding that the plaintiff had standing because sufficient similarity existed between the purchased and unpurchased smoothie kits; all contained the same alleged misrepresentation—"All Natural"—regardless of flavor and all contained allegedly non-natural ingredients).

For these reasons, the Court finds that Plaintiffs have standing to assert claims on behalf of unnamed class members as to the unpurchased Hawaiian Snacks.[14]  The Court therefore DENIES the Motion to the extent it requests dismissal for lack of standing.

## CONCLUSION

In accordance with the foregoing, the Court HEREBY GRANTS IN PART AND DENIES IN PART Defendant's Motion as follows:

- The California consumer protection claims (Counts 4-6) are DISMISSED.

- The UDTPA claim (Count 3) is DISMISSED WITH LEAVE TO AMEND.

- The Motion is DENIED as to these claims:  UDAP (Count 1), Hawai'i false advertising (Count 2), fraud/intentional misrepresentation (Count 7),

---

[14]  The Court expresses no opinion about whether Plaintiffs will ultimately satisfy FRCP 23's requirements and Plaintiffs may not interpret this ruling in such a manner, nor rely upon it in seeking class certification.

41

negligent misrepresentation (Count 8), and quasi-contact/unjust enrichment/restitution claim (Count 9).

▪ The Motion is DENIED as to Defendant's standing challenge.

Plaintiffs may file a Third Amended Complaint by **October 18, 2019**

correcting the deficiencies identified herein and in conformance with this Order.

Plaintiffs may not amend the pleading in an any manner not expressly authorized

by this Order; that is, Plaintiffs may not add claims or parties without leave of

court.  This is Plaintiffs' final opportunity to amend their pleading to cure pleading

defects.  Failure to comply with any provision of this Order may result in the

dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaiʻi, September 19, 2019.



Jill A. Otake
United States District Judge

Civil No. 18-00459 JAO-WRP; *Maeda, et al. v. Kennedy Endeavors, Inc.*; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT FILED ON JULY 17, 2019

42