IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MICHAEL MAEDA and RICK SMITH, individually and on behalf of all others similarly situated, | ) ) ) ) | CIVIL NO. 18-00459 JAO-WRP<br><br>MEMORANDUM OF LAW IN SUPPORT |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| KENNEDY ENDEAVORS, INC., a corporation; and DOES 1 through 50, | ) ) ) | |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| _____ | ) | |

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................1

II.   ARGUMENT AND CITATION TO AUTHORITY ......................................2

      A.    Maeda's Sworn Deposition Testimony Conflicts with His Own
            Allegations and Undermines His Case...................................2

      B.    Plaintiff Maeda Attempts to Fabricate Testimony through His
            Sham Errata. ........................................................7

      C.    The Court Should Strike Maeda's "Sham" Testimony .......................12

      D.    The Court Should Reject Reopening Maeda's Deposition As an
            Illusory Alternative to Striking His "Sham" Errata Testimony ..........15

III.  CONCLUSION ..............................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcraft v. Welk Resort Grp., Corp.*,
　　No. 2:16-cv-02978-JAD-NJK, 2017 U.S. Dist. LEXIS 185470
　　(D. Nev. Nov. 8, 2017) ................................................................. 9, 13, 14, 15

*Azco Biotech, Inc. v. Qiagen, N.V.*,
　　No. 12-cv-2599, 2015 U.S. Dist. LEXIS 8113
　　(S.D. Cal. Jan. 23, 2015) ................................................................................ 17

*Blair v. CBE Grp. Inc.*,
　　No. 13-cv-00134, 2015 U.S. Dist. LEXIS 67920
　　(S.D. Cal. May 26, 2015) .......................................................................... 14, 15

*Bodner v. Oreck Direct, LLC*,
　　No. C 06-4756, 2007 U.S. Dist. LEXIS 30408
　　(N.D. Cal. Apr. 25, 2007) ............................................................................... 17

*Bohn v. Pharmavite, LLC*,
　　No. 11-10430, 2013 U.S. Dist. LEXIS 125006
　　(C.D. Cal. Aug. 7, 2013) ................................................................................. 17

*Garcia v. Pueblo Country Club*,
　　299 F. 3d 1233 (10th Cir. 2002) ......................................................... 2, 12, 15

*Hambleton Bros. Lumber Co. v. Balkin Enters.*,
　　397 F.3d 1217 (9th Cir. 2005) ............................................................... passim

*Juell v. Forest Pharms.*,
　　No. S-05-0378, 2006 U.S. Dist. LEXIS 13673
　　(E.D. Cal. Mar. 8, 2006) .......................................................................... 15, 16

*Kennedy v. Allied Mut. Ins. Co.*,
　　952 F.2d 262 (9th Cir. 1991) .......................................................................... 14

*Mformation Techs. v. Research in Motion Ltd.*,
　　No. C08-04990, 2011 U.S. Dist. LEXIS 78814
　　(N.D. Cal. July 20, 2011) ................................................................................ 14

*Teleshuttle Techs. LLC v. Microsoft Corp.*,
No. C04-02927, 2005 U.S. Dist. LEXIS 34284
(N.D. Cal. Nov. 29, 2005) ..............................................................................14

*Tourgeman v. Collins Fin. Servs.*,
No. 08-cv-1392, 2010 U.S. Dist. LEXIS 123683
(S.D. Cal. Nov. 22, 2010) ..............................................................................17

*ViaSat, Inc. v. Acacia Commc'ns, Inc.*,
No. 16cv463, 2018 U.S. Dist. LEXIS 25357
(S.D. Cal. Feb. 15, 2018) ...................................................................... 12, 13

## Rules

Fed. R. Civ. P. Rule 9(b)....................................................................................2, 3

Fed. R. Civ. P. Rule 30(e) ......................................................................... 7, 14, 17

DEFENDANT'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF
<u>MICHAEL MAEDA'S SHAM DEPOSITION TESTIMONY</u>

## I.   <u>INTRODUCTION</u>

On August 3, 2020, Defendant deposed named Plaintiff Michael Maeda

("Maeda") via remote videoconference.  At the outset of the deposition,

Defendant's counsel confirmed that Maeda understood he was under oath to testify

truthfully—just as if he was testifying before a judge or jury.  Maeda Dep.

(attached to the Phillips Decl. as **Exhibit 1**) at 8:6-9.  With that in mind, Maeda

proceeded to provide over 175 pages of sworn testimony throughout the course of

his deposition.  But in giving this testimony, Maeda contradicted factual

allegations that he made in his Second Amended Class Action Complaint ("SAC")

(Dkt. 54), admitted that he did not suffer damages (contrary to what he alleged in

the SAC), and established that he is not an adequate or typical class representative.

After his deposition, Maeda's counsel served a Rule 30(e) Errata Sheet that

sought to re-write key testimony that Maeda gave under oath to conform to the

"facts" alleged in the SAC and to whitewash other glaring weaknesses and

discrepancies that undermined Plaintiffs' case and certification bid.  The Ninth

Circuit forbids such "purposeful rewrites" of sworn deposition testimony.

*Hambleton Bros. Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1225 (9th Cir.

2005).  These "sham" erratas—named so because they are akin to "sham"

affidavits—are routinely stricken by courts throughout this Circuit; "[a] deposition is not a take home examination." *Hambleton*, 397 F.3d at 1225 (quoting *Garcia v. Pueblo Country Club*, 299 F. 3d 1233, 1242, n. 5 (10th Cir. 2002)).[1]  Maeda's after-the-fact, fabricated testimony similarly should be stricken.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    Maeda's Sworn Deposition Testimony Conflicts with His Own Allegations and Undermines His Case.

On Defendant's first motion to dismiss, the Court found that the original complaint failed to satisfy the particularity requirements of Rule 9(b) because he did not "adequately specif[y] the 'who, what, when, where, and how' of the alleged misrepresentations" but granted Plaintiffs leave to try and cure these deficiencies. (Dkt. 32) at 37.  And Plaintiffs took advantage of it.  In their SAC, Plaintiffs introduced exacting and specific allegations in an effort to prop up their claims and satisfy the heightened pleading standards of Rule 9(b), including specific alleged details of Maeda's purchases of Defendant's Hawaiian Brand Chips.

Specifically, in the SAC, Plaintiff Maeda represented—not once, but ***eight*** times—that "Plaintiff Maeda also purchased the Hawaiian Kettle Style Potato Chips, Luau BBQ flavor at Safeway located at 11290 Donner Pass Road, Truckee,

---

[1] Citing *Hambleton Bros.*, by letter dated September 29, 2020 Defendant requested that Maeda's counsel withdraw Maeda's sham errata sheet. *See* Phillips Decl. Ex. 5.  Plaintiffs rejected this request and similar requests made in the parties' meet and confer conferences, necessitating this Motion.

CA, 96161, on or about January 25, 2018.  And on or about January 27, 2018,

Plaintiff Maeda purchased the Hawaiian Kettle Style Potato Chips, Original flavor

at Safeway located at 11290 Donner Pass Road, Truckee, CA, 96161.  Plaintiff

Maeda recalls paying between $4.50 to $5.50 for each of the foregoing purchases

of the Hawaiian Snacks."  SAC ¶¶ 12, 110, 122, 125, 132, 141, 149, & 159.  He

also repeatedly alleged that, "Specifically, in or around June 2017, Plaintiff Maeda

purchased the Hawaiian Kettle Style Potato Chips, Luau BBQ flavor at Safeway

located at 1360 Pali Hwy, Honolulu, HI 96813."  *Id.* ¶¶ 12, 69, 83, & 97.  These

highly specific allegations, providing the dates, specific store locations, and the

prices Maeda paid for his alleged purchases, were introduced for the first time in

the SAC in response to the Court's conclusion that his prior claims failed to satisfy

the particularity standard under Rule 9(b).  Critically, the Court relied on these

very allegations when denying Defendant's motion to dismiss Maeda's SAC. (Dkt.

74) at 17.

Yet Maeda's deposition testimony strongly suggests those specific facts of

his purchases were fabricated.  Maeda did not mince words when describing

whether it would even be ***possible*** for someone to allege the details of his

purchases of Defendant's products with the type of particularity found within the

SAC:

> Q. Okay. So if somebody said, "Mr. Maeda bought the Hawaiian brand snacks on this day of this year at this store," you wouldn't be able to say if that was true or not, right?
> A. No, I would not be able to say if it's true … [or if] it's false either.

Dep. of Michael Maeda at 53:25-54:5-11 (relevant excerpts attached to the Phillips Decl. as **Exhibit 1**) ("Maeda Dep.").  Throughout his deposition, Maeda specifically disclaimed several other of the SAC's exacting and specific allegations of his purchases. For example:

- In the SAC, Maeda provided specific dates on which he alleged that he purchased Hawaiian Brand Chips (*see, e.g.*, SAC at ¶12)[2], but during his deposition, Maeda admitted that since the lawsuit was filed he could not provide ***any specific dates*** on which he bought the Hawaiian chips (Maeda Dep. at 46:7-11).

- In the SAC, Maeda alleged that he purchased the Hawaiian Brand Snacks from specific Safeway stores in Truckee, California (SAC at ¶ 12), but during his deposition, Maeda testified that he could not definitively say which store in Truckee, California he purchased

---

[2] "Plaintiff Maeda purchased the Hawaiian Kettle Style Potato Chips, Luau BBQ flavor … on or about January 25, 2018. And on or about January 27, 2018, Plaintiff Maeda purchased the Hawaiian Kettle Style Potato Chips…."

the Hawaiian Brand Chips from (Maeda Dep. at 47:15-21).[3]  When

asked whether he had any "documentation, like a receipt, from

purchasing Hawaiian brand snacks that would allow someone to make

that statement, just to verify that statement," Maeda responded

plainly:  "No, I do not have any receipt."  *Id.* at 54:11-25; *see also id.*

at 53:4-8 (admitting that Maeda has no receipts showing his purchase

of Hawaiian brand snacks ***anywhere***).

Maeda's deposition testimony also contradicted allegations in his SAC that

he suffered damages as a result of his purchases.  Specifically, in the SAC, Maeda

claimed that he "suffered injury in fact and lost money as a result of" Defendant's

practices (SAC ¶ 13), but during his deposition, Maeda admitted that he suffered

no economic damage and that he paid a fair price for the chips.  Maeda Dep. at

60:21-61:5; 93:18-20 (Q. And you thought it was – it was priced fairly, correct?

A. Yes.).  When asked:  Q.  "**You personally have not suffered any financial**

**injury – damages because of your purchase of those products, correct**?"

Maeda responded unequivocally:  A. **No, I have not**. 176:8-16.  Maeda also

testified that the Hawaiian Chips "were within the price range that I would

probably normally spend for a chip" (*id.* at 61:4-5), that he did not specifically

---

[3] Q. And you can't definitively even say which store in Truckee, California, you
purchased them from, can you?  A. No, I can't.  Q. And that would be true at all
times since you first – since you filed this lawsuit, right?  A. That is correct.

remember how much he paid for the chips (*id.* at 62:23-25), and that he could only estimate that it was "somewhere between [$]2.50 and [$]5 a bag" (*id.* at 63:8-9). Finally, when asked again on whether he suffered damages from purchasing the Hawaiian brand chips, Maeda again confirmed he suffered no damages: "No, I don't -- I don't see how a bag of potato chips is going to harm me economically. It's not -- ***it's not the cost. It's the principle***." *Id.* at 156:9-11 (emphasis added).[4]

Finally, aspects of Maeda's testimony were inconsistent with deposition testimony of his friend and co-plaintiff, Rick Smith. Specifically, Maeda denied discussing the lawsuit with Smith (*id.* at 34:15-17; 35:5-6), yet Smith testified that he and Maeda had discussed the suit and Maeda had referred to the lawsuit as "a bunch of bullsh\*t." (Smith Dep. at 63:12-23 (attached to the Phillips Decl. as **Exhibit 2**) ("Smith Dep.")). Issues related to Maeda's credibility and sincerity in asserting this lawsuit are relevant to whether he is the adequate or typical class representative he claims to be in the SAC. SAC ¶¶ 63, 64.

Based on this Court's previous rulings, if Plaintiff cannot plausibly allege the circumstances surrounding the purchase of the Hawaiian brand chips, his fraud-based claims must be dismissed. *See* (Dkt. 32) at 31, 37. Likewise, Maeda's

---

[4] *See also, id.* at 156:13-17 (Q. You don't believe you were charged more for the Hawaiian brand chips because they were called Hawaiian brand chips, do you? A. No. They're in competition with a lot of other companies. They can't overcharge.).

multiple admissions that he did not suffer damages are fatal to any claim where

damages are a required element.  Finally, Maeda's express dismissiveness or

disdain for this lawsuit—referring to it as "bullsh\*t"—undermines his claim that he

could adequately serve as a class representative.[5]  Maeda should not be permitted

to erase or "purposeful[ly] rewrite" his damaging under-oath deposition via the

submission of sham testimony in the form of an errata sheet.  *Hambleton Bros.*

*Lumber Co. v. Balkin Enters.*, 397 F.3d 1217, 1225 (9th Cir. 2005).

## B. Plaintiff Maeda Attempts to Fabricate Testimony through His Sham Errata.

On September 18, 2020, Maeda, through his attorneys, submitted "his

***changes*** to the transcript of his deposition" in the form of his Rule 30(e) errata

sheet.  *See generally* Phillips Decl. Ex. 4, at 1.  However, rather than simply

correct transcription errors in his deposition transcript—the intended purpose of

Rule 30(e)—Maeda used his errata to insert manufactured testimony that

substantively alter Maeda's sworn testimony to conform them to the facts alleged

in the SAC.  Notably, not one of Maeda's errata entries were included for the

---

[5] Maeda's deposition testimony also shed light on other facts that undermine his
ability to serve as an adequate class representative, including the fact that he has
had little interest in this lawsuit from the beginning.  Maeda's testimony revealed
that he only became involved in this suit after he "heard a conversation [by his
counsel] about the lawsuit or about the chips not being made in Hawaii, and [he]
said, well, I bought the chips, and I find that that's discouraging."  Maeda Dep. at
19:2-7.  Prior to overhearing that discussion of his counsel, Maeda "was not aware
that [the Hawaiian Snacks] weren't made in Hawaii."  *Id.* at 23:24-25.

purpose of "correcting" transcription errors.  Instead, the listed reason for each

"change[]" submitted by Maeda was "Clarification."  *See id.* at 2-4.  Through those

"changes" to his deposition testimony, Maeda attempts to inject new testimony and

materially change the answers he provided when under oath.

Specifically, Maeda seeks to alter his deposition testimony as follows:[6]

| Question | Original Answer | Altered Answer |
|---|---|---|
| Have you talked to Mr. Smith about this lawsuit? | No. | No, *but I did tell him B.S., meaning that I didn't want to talk about the lawsuit*. |
| At any time since this lawsuit has been filed, has anybody asked you for a specific date that you bought the Hawaiian chips in Truckee, California? | I've been asked. I couldn't answer the question. | I've been asked. I *can't* answer the question *without revealing what I discussed with my attorneys*. |
| Do you have any – you wouldn't have any receipts or documentation showing your purchase of Hawaiian brand snacks anywhere, would you? | I do not have any – any receipts showing that. | I do not have any – any receipts showing that, *but I do have credit card statements*. |
| Could you – would be – there be any way for you to identify a day and a month that you purchased Hawaiian brand snacks in Hawaii? | Not that I'm aware of. | Not that I'm aware of *other than the credit card statements.* |

---

[6] These changes are even more egregious when viewed in context of Maeda's other deposition testimony.  Attached to the Phillips Declaration as **Exhibit 6** is a chart that more fully sets out and compares the relevant sections of Maeda's deposition testimony with the changes he seeks to make through his errata sheet.

| And you have no documentation, like a receipt or something like that, from purchasing Hawaiian brand snacks that would allow someone to make that statement, just to verify that statement, right? | No, I do not have any receipt. | No, I do not have any receipt*, but I do have credit card statements.* |
| You, Mr. Maeda – you, Mr. Maeda, when you bought the chips, weren't economically harmed, were you? | No, I don't – I don't see how a bag of potato chips is going to harm me economically. It's not – it's not the cost. It's the principle. | No, I don't – I don't see how a bag of potato chips is going to harm me economically *because they only cost a few dollars each. It's not – it's not just the cost. It's the principle*. |
| My question is you personally have not suffered any financial injury – damages because of your purchase of those products, correct? | No, I have not. | No, I have not *suffered a serious financial injury because the chips only cost a few dollars*. |

The Court should see through this charade and strike Maeda's sham

deposition testimony because he "failed to comply with the procedural dictates of

FRCP 30(e)." *Hambleton*, 397 F.3d at 1226.  Rather than use his deposition errata

as intended under Rule 30(e)—to "correct[] stenographic mistakes"—Maeda

makes mockery of the Rule and deposition process to inject entirely ***new***

substantive testimony that often is misleading in its own right.  *Ashcraft v. Welk*

*Resort Grp., Corp.*, No. 2:16-cv-02978-JAD-NJK, 2017 U.S. Dist. LEXIS 185470,

at *11 (D. Nev. Nov. 8, 2017).  The Ninth Circuit forbids such "purposeful

rewrites" of deposition testimony. *Hambleton*, 397 F. 3d at 1225.  The Court

should apply the rule of this Circuit and strike Maeda's manufactured testimony as

"sham" deposition errata.

That this manufactured testimony is misleading in its own right only

strengthens the conclusion that the Court should strike Maeda's "sham" errata

sheet.  ***First***, the changes related to Maeda's product purchases—specifically, his

newfound reliance on "credit card statements" (Phillips Decl. Ex. 4)—are attempts

to gloss over the glaring inconsistencies between Maeda's allegations in the SAC,

(SAC ¶¶ 12, 110, 122, 125, 132, 141, 149, & 159) (stating that Maeda purchased

the Hawaiian Brand Chips in specific California grocery stores, on specific days,

and for specific prices), and his sworn deposition testimony that he did not

know[7]—and lacked any documentation which could demonstrate—when, where,

and for how much he purchased the Hawaiian Brand Chips.  *See, e.g.*, Maeda Dep.

at 46:7-11, 53:4-8, 54:11-25.  This misuse of an errata sheet is particularly

egregious because the specific details surrounding Maeda's purchases were added

to the SAC in response to an ***order of this Court*** that enabled Maeda to avoid the

dismissal of his claims with prejudice.

---

[7] Maeda did ***not*** testify that at the time of his deposition he simply could not recall
the specific details of his purchases.  Rather, Maeda conceded that at any point
since this lawsuit was filed—***including when Plaintiffs filed the SAC***—that he
was asked and could not provide a specific date that he bought the Hawaiian Brand
Chips.  Maeda Dep. at 46:7-11.

What's more, Maeda's newfound reliance on "credit card statements" is a complete red herring because those statements (produced by Maeda during discovery and attached to the Phillips Decl. at **Exhibit 7**) cannot corroborate *any* of the purchase details contained in the SAC.  They are not itemized and provide no insight as to whether Maeda purchased Hawaiian Brand Chips on a specific day, from a specific store, for a specific price, or whether he even purchased Hawaiian Brand Chips at all.  Maeda's deposition testimony makes clear that he lacked the knowledge or documentation needed to make the specific allegations regarding product purchases contained in the SAC.  He may not obviate that exposed subterfuge via sham testimony.

***Second***, the changes related to Maeda's purported suffering of economic damages are transparent, impermissible attempts to salvage fatal testimony to any of Plaintiffs' claims where damages is a necessary element.  Maeda's deposition testimony established that ***he did not suffer damages as a result of the purchases***. As Maeda explained when asked if he incurred economic damages:  "No, I don't – I don't see how a bag of potato chips is going to harm me economically.  It's not – it's not the cost.  It's the principle."  Maeda Dep. at 156:9-11.  But damages are a necessary element of any of Maeda's legal claims.  Clearly recognizing this testimony would be fatal at summary judgment, Maeda's counsel changed his response to:  "No, I don't – I don't see how a bag of potato chips is going to harm

me economically *because they only cost a few dollars each*.  It's not – it's not *just* the cost.  It's the principle."  Phillips Decl. Ex. 4, at 3-4.

*Third*, although Maeda testified that he had not spoken to his friend and co-plaintiff Rick Smith, Smith testified the very next day that they had discussed this lawsuit—the "big potato chip caper"—and Maeda called it "a bunch of bullsh*t." Smith Dep. at 63:21.  The errata sheet attempts to explain away this sworn testimony by adding the language "but I did tell him B.S., meaning that I didn't want to talk about the lawsuit" to Maeda's response.  Phillips Decl. Ex. 4, at 3-4. Maeda's remaining errata changes are equally egregious.

### C.  The Court Should Strike Maeda's "Sham" Testimony

The Ninth Circuit has held that "Rule 30(e) is to be used for corrective, and not contradictory, changes."  *Hambleton*, 397 F.3d at 1226.  Accordingly, courts throughout the Ninth Circuit have confirmed that "Rule 30(e) is not properly used to alter deposition testimony provided under oath and correctly transcribed." *ViaSat, Inc. v. Acacia Commc'ns, Inc.*, No. 16cv463, 2018 U.S. Dist. LEXIS 25357, at *10 (S.D. Cal. Feb. 15, 2018).  Indeed, deponents are not permitted to answer questions one way at their deposition and then "return home and plan artful responses"—"[a] deposition is not a take home examination." *Hambleton*, 397 F.3d at 1225 (quoting *Garcia v. Pueblo Country Club*, 299 F.3d 1233, 1242, n. 5 (10th Cir. 2002)). That is true, "regardless of whether the deponent truly believes

his testimony was mistaken." *ViaSat, Inc.*, 2018 U.S. Dist. LEXIS 25357, at *9;

*Ashcraft*, 2017 U.S. Dist. LEXIS 185470, at *11 ("changes are limited to

correcting stenographic mistakes and cannot be used to alter the actual testimony

given").

Here, Maeda seeks to inject "contradictory," rather than "corrective"

changes through his Rule 30(e) errata.  In fact, ***none*** of Maeda's proposed

"corrections" actually attempt to correct stenographic errors of the court reporter.

His errata instead is a transparent, impermissible attempt "to alter [his] deposition

testimony provided under oath and correctly transcribed[.]".  *ViaSat, Inc.*, 2018

U.S. Dist. LEXIS 25357, at *10.  The purpose of those alterations is equally

transparent.  Each of Maeda's errata "clarifications" seeks to materially rewrite

answers and fabricate testimony to conform with the facts alleged in the SAC and

salvage claims subject to dismissal.  Courts in this Circuit have rejected similar

"purposeful rewrites" as contrary to the "procedural dictates of FRCP 30(e)."  *See,*

*e.g.*, *Hambleton*, 397 F.3d at 1225-26.

The Court should do so here and strike Maeda's errata in its entirety as

"sham" testimony.  "When a party has attempted to utilize Rule 30(e) beyond [its

intended] scope, courts should strike the proposed changes."  *Ashcraft*, 2017 U.S.

Dist. LEXIS 185470, at *12; *accord Hambleton*, 397 F.3d at 1226.  The Ninth

Circuit explained in *Hambleton* that, much like parties are prohibited from creating

"an issue of fact by an affidavit contradicting his prior deposition testimony" under the "sham" affidavit rule, so too should they be prohibited from making "sham" corrections through a Rule 30(e) errata.  397 F.3d at 1225 (citing *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).  Accordingly, parties have no latitude to "include changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment."  *Id.*  That rule applies broadly, as "[c]ourts have applied *Hambleton* to deposition changes made outside the summary judgment context."  *Mformation Techs. v. Research in Motion Ltd.*, No. C08-04990, 2011 U.S. Dist. LEXIS 78814, at *4 (N.D. Cal. July 20, 2011); *see Teleshuttle Techs. LLC v. Microsoft Corp.*, No. C04-02927, 2005 U.S. Dist. LEXIS 34284, at *9 (N.D. Cal. Nov. 29, 2005) (finding disputed changes impermissible under *Hambleton* and granting stand-alone motion to strike errata).

Here, there is no legitimate dispute that Maeda attempts "to alter [his] deposition testimony provided under oath and correctly transcribed" through submission of "contradictory" rather than "corrective" changes in his errata sheet. *Hambleton*, 397 F.3d at 1226.  The Court should reject Maeda's abuse of the Federal Rules and deposition process and strike his errata sheet in its entirety. *Ashcraft*, 2017 U.S. Dist. LEXIS 185470, at *14-15; *Blair v. CBE Grp. Inc.*, No. 13-cv-00134, 2015 U.S. Dist. LEXIS 67920, at *26 (S.D. Cal. May 26, 2015);

*Juell v. Forest Pharms.*, No. S-05-0378, 2006 U.S. Dist. LEXIS 13673, at *4 (E.D. Cal. Mar. 8, 2006) (finding improper "gross departures from original testimony" which "raise suspicions that the deponent, in retrospect, realizing that the truthful answer will cause problems in the case, changes the response simply to ward off a motion").

### D. The Court Should Reject Reopening Maeda's Deposition As an Illusory Alternative to Striking His "Sham" Errata Testimony

In addition, the Court should reject any argument that it instead should reopen Maeda's deposition so that Defendant would have the opportunity to question him on the issues raised in his errata sheet. Any such "opportunity" is illusory, would only compound Plaintiffs' mockery of the Federal Rules and deposition process, and is contrary to the law of this Circuit.

***First***, the Ninth Circuit is clear: "[a] deposition is not a take home examination" under Rule 30. *Hambleton*, 397 F.3d at 1225 (quoting *Garcia v. Pueblo Country Club*, 299 F. 3d 1233, 1242, n. 5 (10th Cir. 2002)). There is good reason why this is so. Attorneys cannot "coach[] a witness during her deposition. Allowing a deponent to alter testimony through after-the-fact changes (potentially in consultation with her attorney) would undermine these well-settled deposition rules, effectively permitting the substitution of interrogatory answers for deposition testimony and permitting attorneys to alter the deponent's testimony." *Ashcraft*, 2017 U.S. Dist. LEXIS 185470, at *14-15; *Blair*, 2015 U.S. Dist. LEXIS

67920, at *26-27 ("The purpose is certainly not to find out how the witness

answers questions with the ability to calmly reflect on the responses for 30 days in

collaboration with counsel.  Under Plaintiffs' theory that these errata are

appropriate [and that courts should adopt a standard broadly allowing Rule 30(e)

changes], the purpose of a deposition evaporates."); *Juell*, 2006 U.S. Dist. LEXIS

13673, at *5 ("[T]he courts should not routinely task the interrogating party with

the requirement of multiple depositions pre-trial until the deponent 'gets it

right.' . . . Neither should the court foster a rule where a deponent gets to 'do it

over' in terms of testimony prior to a motion.").  Here, reopening Maeda's

deposition would grant Maeda not just a "take home examination" but also a

"retake exam"—with the benefit of another session with his counsel to "prepare"

and provide even manufactured testimony to align with the SAC and other already

provided testimony by co-plaintiff Smith.

   ***Second***, reopening Maeda's deposition would allow him to use both the

Court and the deposition process to launder the attorney-driven, contradictory

changes to his testimony given under oath.  Allowing Maeda to be re-deposed on

his "sham" testimony—even for impeachment purposes—tacitly accepts its

validity by allowing it to be incorporated into Maeda's transcript.  Such a result

would ignore the Ninth Circuit's holding that "Rule 30(e) is to be used for

corrective, and not contradictory, changes." *Hambleton*, 397 F.3d at 1225-26.

Other courts in this Circuit have rejected similar invitations to reopen because it was inconsistent with *Hambleton*, "impos[es] no remedy at all for [a party's] clearly improper use of an errata sheet[,]" and would nullify Rule 30(e)'s "procedural and substantive requirements." *Tourgeman v. Collins Fin. Servs.*, No. 08-cv-1392, 2010 U.S. Dist. LEXIS 123683, at *11 (S.D. Cal. Nov. 22, 2010); *see also Azco Biotech, Inc. v. Qiagen, N.V.*, No. 12-cv-2599, 2015 U.S. Dist. LEXIS 8113, at *13 (S.D. Cal. Jan. 23, 2015) (rejecting argument that a party could impeach the witness at trial on sham errata).

*Finally*, Maeda already demonstrated that he cannot serve as an adequate class representative because his interests and those of his counsel conflict with those of the putative class members. Maeda's counsel "constructed this lawsuit before [they] had a plaintiff" and then carefully tailored—and, where necessary, rewrote—Maeda's testimony to "fit the narrative" of their case. *Bodner v. Oreck Direct, LLC*, No. C 06-4756, 2007 U.S. Dist. LEXIS 30408, at *6-7 (N.D. Cal. Apr. 25, 2007); *Bohn v. Pharmavite, LLC*, No. 11-10430, 2013 U.S. Dist. LEXIS 125006, at *7-9 (C.D. Cal. Aug. 7, 2013). This errata sheet, which introduces sham testimony based on invented facts, only underscores the conclusion that counsel—not Maeda—is the invested party here. The Court should not overlook practices described as "abhorrent," "lack[ing] ethical scruples," and "inconsistent with the standards of federal class action suits." *Bodner*, 2007 U.S. Dist. LEXIS

30408, at *6-7.  It should reject any request to reopen Maeda's deposition as an

impermissible attempt to ratify his counsel's efforts to rewrite and correct his prior

testimony for consistency with allegations in the SAC.

## III.  <u>CONCLUSION</u>

For the reasons discussed above, the Court should follow the rule in the

Ninth Circuit and strike Maeda's improper Rule 30(e) errata in its entirety.

DATED:  Honolulu, Hawai'i, February 22, 2021.

<u>/s/ David J. Minkin</u>
DAVID J. MINKIN
JESSE J. T. SMITH
ANGELA M. SPIVEY (*pro hac vice*)
ANDREW G. PHILLIPS (*pro hac vice*)
JAMIE S. GEORGE (*pro hac vice*)

Attorneys for Defendant
KENNEDY ENDEAVORS, INC.