**PERKIN & FARIA LLLC**
BRANDEE J.K. FARIA                6970
841 Bishop Street, Suite 1000
Honolulu, Hawai'i 96813
Telephone: (808) 523-2300
E-mail: bjkfaria@perkinlaw.com

**THE WAND LAW FIRM, P.C.**
AUBRY WAND                       9687
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
E-mail: awand@wandlawfirm.com

Attorneys for Plaintiffs MICHAEL MAEDA
and RICK SMITH, individually and
on behalf of all others similarly situated

[*Additional counsel listed on following page*]

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAI'I

| | | |
|---|---|---|
| MICHAEL MAEDA and RICK SMITH, individually and on behalf of all others similarly situated, | ) ) ) | CIVIL NO. 18-00459 JAO-WRP |
| | ) | |
| Plaintiffs, | ) ) | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO** |
| | ) | **EXCLUDE THE TESTIMONY OF** |
| vs. | ) | **PLAINTIFFS' EXPERT STEFAN** |
| | ) | **BOEDEKER** |
| KENNEDY ENDEAVORS, INC., a corporation; and DOES 1 through 50, | ) ) ) | |
| | ) | |
| Defendants. | ) ) | |

**FARUQI & FARUQI, LLP**
BENJAMIN HEIKALI                    (*Admitted Pro Hac Vice*)
10866 Wilshire Boulevard, Suite 1470
Los Angeles, CA 90024
Telephone: (424) 256-2884
E-mail: bheikali@faruqilaw.com

**FARUQI & FARUQI, LLP**
TIMOTHY J. PETER                    (*Admitted Pro Hac Vice*)
1617 JFK Boulevard, Suite 1550
Philadelphia, PA 19103
Telephone: (215) 277-5771
E-mail: tpeter@faruqilaw.com

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................1

II.    LEGAL STANDARD ...........................................................................2

III.   ARGUMENT........................................................................................3

    A.   Boedeker's Testimony Is Both Relevant And Reliable .......................3

    B.   Boedeker is a Highly Qualified Expert ................................................7

    C.   Boedeker's CBC Analysis Is Not Fundamentally Flawed...................9

        1.   Boedeker's Economic Theory of Harm Does Not Assume 100% Consumer Deception .........................................9

        2.   Boedeker's Damages Model Comports with Plaintiffs' Theory of Liability.................................................11

        3.   Boedeker's Damages Model Considers Supply-Side Factors .................................................14

        4.   Boedeker's Analysis Does Not Produce Irrational Results ......19

        5.   Boedeker's Survey Mimics Real World Conditions ...............20

        6.   Boedeker's Alternative Damages Measure is Relevant and Reliable...............................................24

IV.    CONCLUSION...................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                          **Page(s)**

*In re 5-Hour Energy Mktg. & Sales Practices Litig.*,
　　No. ML 13-2438 PSG, 2017 WL 2559615 (C.D. Cal. June 7, 2017) ...............12

*Alaska Rent–A–Car, Inc. v. Avis Budget Group, Inc.*,
　　738 F.3d 960 (9th Cir. 2013) ...............................................................3

*Apple, Inc. v. Samsung Elecs. Co.*,
　　No. 12-CV-00630-LHK,
　　2014 WL 794328 (N.D. Cal. Feb. 25, 2014) ...........................................5, 20, 23

*In re Arris Cable Modem Consumer Litig.*,
　　327 F.R.D. 334 (N.D. Cal. 2018)...............................................................5, 11

*Beaty v. Ford Motor Co.*,
　　No. C17-5201RBL, 2020 WL 639408 (W.D. Wash. Feb. 11, 2020)...........18, 19

*Brazil v. Dole Packaged Foods, LLC*,
　　660 F. App'x 531 (9th Cir. 2016) .......................................................10

*Briseno v. Conagra Foods, Inc.*,
　　674 F. App'x 654 (9th Cir. 2017) .......................................................12

*Broomfield v. Craft Brew Alliance, Inc.*, 5 8 12 15
　　No. 5:17-cv-01027-BLF,
　　2018 WL 4952519 (N.D. Cal. Sept. 25, 2018)...................................5, 8, 12, 15

*Brown v. Hain Celestial Grp., Inc.*,
　　No. C 11-03082 LB, 2014 WL 6483216 (N.D. Cal. Nov. 18, 2014)..................5

*Chavez v. Blue Sky Natural Beverage Co.*,
　　268 F.R.D. 365 (N.D. Cal. 2010)........................................................24

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*,
　　No. SACV 04-725 CJC (Ex),
　　2006 WL 5187497 (C.D. Cal. Mar. 2, 2006)......................................21

*In re ConAgra Foods, Inc.*,
　　90 F. Supp. 3d 919 (C.D. Cal. 2015) ...............................................5, 12

*Daubert v. Merrell Dow Pharm.*,
  509 U.S. 579 (1993).............................................................................2

*Daubert v. Merrell Dow Pharm., Inc.*,
  43 F.3d 1311 (9th Cir. 1995) ..............................................................3

*Davidson v. Apple, Inc.*,
  No. 16-cv-04942-LHK,
  2018 WL 2325426 (N.D. Cal. May 7, 2018)......................................15

*In Re Dial Complete Mktg. and Sales Practice Litig.*,
  320 F.R.D. 326 (D.N.H. 2017) ..................................................5, 15, 24

*Dzielak v. Whirlpool Corp.*,
  No. 2:12-0089 (KM)(JBC),
  2017 WL 1034197 (D.N.J. Mar. 17, 2017) ..........................................5

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*,
  326 F.R.D. 592 (N.D. Cal. 2018).....................................................5, 22

*Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*,
  No. 17-cv-00564 NC,
  2018 WL 3126385 (N.D. Cal. June 26, 2018)....................................16

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*,
  618 F.3d 1025 (9th Cir. 2010) ........................................................6, 24

*In re Gen. Motors LLC Ignition Switch Litig.*,
  407 F. Supp. 3d 212 (S.D.N.Y. 2019) ................................................18

*Guido v. L'Oreal, USA, Inc.*,
  No. 2:11-cv-01067-CAS,
  2014 WL 6603730 (C.D. Cal. July 24, 2014)........................................5

*Hadley v. Kellogg Sales Co.*,
  324 F. Supp. 3d 1084 (N.D. Cal. 2018)..............................................16

*Hasemann v. Gerber Prods. Co.*,
  331 F.R.D. 239 (E.D.N.Y. 2019).........................................................5

*Johannessohn v. Polaris Indus., Inc.*,
  450 F. Supp. 3d 931 (2020) ................................................................5

*Khoday v. Symantec Corp.*,
No. 11-180, 2014 WL 1281600 (D. Minn. March 13, 2014) ..............................5

*Korte v. Pinnacle Food Groups LLC*
No. 17-CV-199-SMY-MAB,
2019 WL 4305464 (S.D. Ill. Sept. 11, 2019).........................................................9

*Krommenhock v. Post Foods, LLC*,
No. 16-cv-04958-WHO,
2020 WL 2322993 (N.D. Cal. May 11, 2020)............................................16, 17

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999)................................................................................................2

*In re: Lenovo Adware Litig.*,
No. 15-md-02624-RMW,
2016 WL 6277245 (N.D. Cal. Oct. 27, 2016) ................................................5, 16

*MacDougall v. American Honda Motor Co.*,
No. SACV 17-1079, 2020 WL 5583534 (C.D. Cal. Sept. 11, 2020)................19

*Mannacio v. LG Elecs. U.S.A., Inc.*,
No. 16-1220, 2020 WL 4676285 (D. Minn. Aug. 12, 2020)............................18

*McMorrow v. Mondelēz Int'l, Inc.*,
No. 17-cv-2327-BAS-JLB,
2021 WL 859137 (S.D. Cal. Mar. 8, 2021) ....................................................6, 16

*Messick v. Novartis Pharm. Corp.*,
747 F.3d 1193 (9th Cir. 2014) ..............................................................................2

*Microsoft Corp. v. Motorola, Inc.*,
904 F. Supp. 2d 1109 (W.D. Wash. 2012) ..........................................................5

*In re MyFord Touch Consumer Litig.*,
291 F. Supp. 3d 936 (N.D. Cal. 2018)................................................................15

*In re NJOY, Inc. Consumer Class Action Litig.*,
120 F. Supp. 3d 1050 (C.D. Cal. 2015) ..............................................................15

*Primiano v. Cook*,
598 F.3d 558 (9th Cir. 2010) ................................................................................3

*Ralston v. Mortg. Investors Grp., Inc.*,
   No. 08-536-JF (PSG),
   2011 WL 6002640 (N.D. Cal. Nov. 30, 2011) ...................................................25

*Saavedra v. Eli Lilly & Co.*,
   No. 2:12-cv-9366-SVW,
   2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) ..................................................15

*Sanchez-Knutson v. Ford Motor Co.*,
   310 F.R.D. 529 (S.D. Fla. 2015) .........................................................................5

*Schechner v. Whirlpool Corp.*,
   2:16-CV-12409, 2019 WL 4891192 (E.D. Mich. Aug. 13, 2019) ....................18

*In re Scotts EZ Seed Litig.*,
   304 F.R.D. 397 (S.D.N.Y. 2015) ........................................................................5

*Southland Sod Farms v. Stover Seed Co.*,
   108 F.3d 1134 (9th Cir. 1997) .............................................................................6

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ...........................................................................11

*Townsend v. Monster Beverage Corp.*,
   303 F. Supp. 3d (C.D. Cal. 2018) ........................................................................6

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices &
   Prods. Liab. Litig.*,
   No. MDL 10–02172–CJC(RNBx),
   2012 WL 4904412 (C.D. Cal. Sept. 20, 2012) ....................................................4

*TV Interactive Data Corp. v. Sony Corp.*,
   929 F. Supp. 2d 1006 (N.D. Cal. 2013)..........................................................5, 22

*Wendell v. GlaxoSmithKline LLC*,
   858 F.3d 1227 (9th Cir. 2017) .............................................................................3

*Zakaria v. Gerber Prods. Co.*,
   No. LA CV15-00200 JAK (Ex),
   2017 WL 9512587 (C.D. Cal. Aug. 9, 2017) ....................................................22

**Other Authorities**

Fed. R. Evid. 401 ....................................................................................2

Fed. R. Evid. 702 ....................................................................................8

## I. __INTRODUCTION__

Choice-based conjoint ("CBC") analysis[1] is a valid and reliable methodology that is regularly accepted by courts in litigation to calculate class-wide damages in consumer false advertising class actions like this one. Stefan Boedeker is a preeminent statistician and economist who has extensive experience with CBC analysis and other econometric models in both the litigation and non-litigation context. Thus, Plaintiffs retained Boedeker to measure whether the Products commanded a price premium based on consumers' belief that they are from Hawai'i. Boedeker determined that CBC was the best methodology to test this empirical question, and after conducting a rigorous analysis grounded in sound methodology and fundamental economic theory, Boedeker calculated a 9.17% price premium. From this number, aggregate damages to the proposed classes can be determined.

In the instant motion ("Mot.") (ECF No. 121), Defendant seeks to strike Boedeker's testimony based on meritless legal arguments, many of which are parroted through an expert who has limited experience with CBC analysis and has never even done a conjoint survey. To the extent Defendant's criticisms have any merit, they do not rise to the level of undermining the reliability of Boedeker's damages model, and thus, go solely to the weight of the evidence, not its admissibility. As such, Boedeker's testimony is admissible under Rule 702 and

---

[1] Also referred to interchangeably as "conjoint analysis."

should not be stricken.

## II. <u>LEGAL STANDARD</u>

Rule 702 should be applied with a "liberal thrust" favoring admission. *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 588 (1993). The Court's gatekeeping obligation is straightforward—to ensure that the proffered expert testimony is relevant and based on reliable methods, rendering it admissible under Rule 702. *Daubert*, 509 U.S. at 589.

Evidence is relevant when it has "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. "The relevancy bar is low, demanding only that the evidence 'logically advances a material aspect of the proposing party's case.'" *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)). Reliability requires that an expert's testimony "have a reliable basis in the knowledge and experience of his discipline." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999).[2] The court must determine "whether the reasoning or methodology underlying the testimony is scientifically valid[.]" *Daubert*, 509 U.S. at 592–93. Exclusion of expert testimony is only appropriate when it qualifies as

---

[2] Unless stated otherwise, all emphases are added and citations, internal quotation marks and footnotes are omitted.

irrelevant or unreliable "junk science." *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1237 (9th Cir. 2017).

The court's focus "'must be solely on principles and methodology, not on the conclusions that they generate.'" *Id.* at 1232 (quoting *Daubert*, 509 U.S. at 595). In other words, the *Daubert* test "is not the correctness of the expert's conclusions but the soundness of his methodology." *Daubert*, 43 F.3d at 1318. Moreover, the court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent–A–Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Thus, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Primiano v. Cook*, 598 F.3d 558 (9th Cir. 2010) (citing *Daubert*, 509 U.S. at 596).

## III.   ARGUMENT

### A.   Boedeker's Testimony Is Both Relevant And Reliable

Boedeker's testimony is clearly relevant, as it will assist the fact-finder with deciding a pertinent factual issue—namely, the manner in which aggregate damages can be calculated. Moreover, "[a]t the class certification stage an expert is not charged with resolving factual disputes or determining the merits of the case. Rather, an expert need only provide testimony that is relevant to determining whether the alleged conduct constitutes a common pattern and practice that could affect the entire

class." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales Practices & Prods. Liab. Litig.*, No. MDL 10–02172–CJC(RNBx), 2012 WL 4904412, at *4 (C.D. Cal. Sept. 20, 2012).

The remaining inquiry is whether the methodology offered by Boedeker is reliable, not whether the specific application of the methodology is beyond dispute. CBC analysis is a reliable methodology. Major corporations frequently utilize CBC analysis outside of litigation, for example, to assist with pricing determinations of new products. ECF No. 96-33, Expert Report of Stefan Boedeker ("Boedeker Rep.") ¶ 84. Moreover, conjoint analysis is a scientifically accepted methodology that has been subjected to peer-review, is being taught at the university level, and has been published in numerous academic articles and textbooks. *See id.*; *Toyota*, 2012 WL 4904412, at *4 (holding that the "proposed methods of analysis, *i.e.* hedonic regression, contingent valuation, and discrete choice,[3] are generally accepted, have been tested, and are part of peer-reviewed studies."). Defendant appears to take the radical position that the same methodology is unreliable simply because it was conducted in litigation. Yet Defendant's own expert, Sarah Butler, agrees that a methodology is not rendered unreliable simply because it is used in litigation. Declaration of Aubry Wand ("Wand Decl.") ¶ 3, Ex. A ("Butler Dep. Tr.") at 56:14-58:6.

---

[3] Discrete choice includes conjoint analysis, the methodology applied by Boedeker.

Indeed, CBC analysis has been widely accepted by the courts as a reliable and well-established scientific method for calculating a price premium attributable to a specific attribute in consumer class actions.[4] Defendant's own experts (Ms. Butler, in conjunction with an economist) have even performed CBC analysis in a consumer class action as recently as last year. *See Johannessohn v. Polaris Indus., Inc.*, 450 F. Supp. 3d 931, 969-70 (2020) (consumer class action where Ms. Butler conducted a conjoint survey); Butler Dep. Tr. at 10:18-12:19, 30:16-31:2; *see also Guido v. L'Oreal, USA, Inc.*, No. 2:11-cv-01067-CAS (JCx), 2014 WL 6603730, at *8 (C.D. Cal. July 24, 2014) (concluding that conjoint analysis was admissible under Rule

---

[4] A non-exhaustive list of cases includes: *Apple, Inc. v. Samsung Elecs. Co.*, No. 12-CV-00630-LHK, 2014 WL 794328, at *17 (N.D. Cal. Feb. 25, 2014); *Dzielak v. Whirlpool Corp.*, No. 2:12-0089 (KM)(JBC), 2017 WL 1034197, at *6-8 (D.N.J. Mar. 17, 2017); *In re: Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 1027-31 (C.D. Cal. 2015)*; Guido v. L'Oreal, USA, Inc.*, No. 2:11-cv-01067-CAS (JCx), 2014 WL 6603730, at *4-8 (C.D. Cal. July 24, 2014); *TV Interactive Data Corp. v. Sony Corp.*, 929 F. Supp. 2d 1006, 1020-26 (N.D. Cal. 2013); *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2012); *Khoday v. Symantec Corp.*, No. 11-180 (JRT/TNL), 2014 WL 1281600, at *10-11 (D. Minn. March 13, 2014); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 538-39 (S.D. Fla. 2015); *Brown v. Hain Celestial Grp., Inc.*, No. C 11-03082 LB, 2014 WL 6483216, at *19 (N.D. Cal. Nov. 18, 2014); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 413-15 (S.D.N.Y. 2015); *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 374 (N.D. Cal. 2018); *In Re Dial Complete Mktg. and Sales Practice Litig.*, 320 F.R.D. 326, 337 (D.N.H. 2017); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 602-03 (N.D. Cal. 2018); *Broomfield v. Craft Brew Alliance, Inc.*, No. 5:17-cv-01027-BLF, 2018 WL 4952519, at *18 (N.D. Cal. Sept. 25, 2018); *Hasemann v. Gerber Prods. Co.*, 331 F.R.D. 239, 277-78 (E.D.N.Y. 2019).

702 in part based on recognition that "L'Oreal's expert . . . testified at deposition that he himself has used RCDE and Conjoint analysis in his academic work and when consulting for firms.").

Consequently, at the class certification stage, "admissibility must not be dispositive. Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *McMorrow v. Mondelēz Int'l, Inc.*, No. 17-cv-2327-BAS-JLB, 2021 WL 859137, at *2 (S.D. Cal. Mar. 8, 2021) (citing *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)). And specifically, with respect to expert survey work, while the details are often challenged, they go to weight and not admissibility. *See*, *e.g.*, *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d, 1010, 1025 (C.D. Cal. 2018); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Management, Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("The admissibility threshold for survey evidence in the Ninth Circuit is notably low. The offering party need only show that the survey is relevant and conducted according to accepted principles."); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.2 (9th Cir. 1997) ("Unlike novel scientific theories, a [finder of fact] should be able to determine whether asserted technical deficiencies undermine a survey's probative value.").

**B.     Boedeker is a Highly Qualified Expert**

As an initial matter, Boedeker is a highly qualified expert in the field of statistics and economics. As set forth in greater detail in his curriculum vitae, Boedeker is a Managing Director at the Berkeley Research Group. Boedeker Rep. ¶ 2. He has over 25 years of experience focusing on the application of economic, statistical, and financial models across a variety of industries including, *inter alia*, healthcare, retail, grocery, manufacturing, technology, entertainment, and local government agencies. *Id.* ¶ 3. Boedeker has extensive experience designing and conducting surveys and conjoint studies, as well as statistically analyzing results from surveys in both the litigation context as a consultant and/or designated expert and the non-litigation context as a statistical or economic consultant. *Id.* ¶ 4. In the litigation context, Mr. Boedeker has testified approximately 102 times as an expert witness and performed conjoint analysis in approximately 30 cases. Wand Decl. ¶ 4, Ex. B ("Boedeker Dep. Tr.") at 18:9-15; 19:15-17. In the non-litigation context, Fortune 500 companies have retained Boedeker to conduct CBC to determine prices for new products, product bundles, and new features on existing products. *Id.* at 14:2-15:14. In short, Boedeker possesses far more than the minimal requisite qualifications to testify as to the use of the standard, time-honored technique of CBC analysis, to isolate the impact of the Hawaiian Representations on the market price of the Products, and the means by which class-wide damages can be calculated

thereby. Fed. R. Evid. 702 (an expert witness is a witness who is qualified "by knowledge, skill, experience, training, or education.").[5]

At most, Defendant's expert, Andrew Lemon, raises a difference of opinion regarding economic theory or the manner in which the CBC analysis was conducted. Boedeker rebuts Lemon's points. *See generally* Wand Decl. ¶ 6, Ex. D ("Boedeker Rebuttal Report"). Although the Court should not evaluate the merits of either sides' expert opinion, to the extent such an evaluation is necessary, the Court should afford far more weight to Boedeker's opinion, based on his credentials and experience, compared with that of Lemon, who has only submitted expert analysis in three other cases and has never even conducted a CBC analysis. *Id.* ¶ 5, Ex. C, *curriculum vitae* of Lemon; *see also* Boedeker Rebuttal Report ¶¶ 16-17, 69-71. In fact, in *Broomfield v. Craft Brew Alliance, Inc.*, the one case that has considered an expert report by Lemon, the court found that his attacks on the Boedeker's expert opinion did not hold water. *See* No. 17-CV-01027-BLF, 2018 WL 4952519, at *20 (N.D. Cal. Sept. 25, 2018). Further, as Lemon's testimony in the *Broomfield* matter confirms, Lemon admittedly is not an expert in designing, and has never even conducted a conjoint survey. Wand Decl. ¶ 7, Ex. E, Dep. Tr. of Andrew Yuichi Lemon at 108:10-109:8

---

[5] Defendant cites a handful of cases where courts have purportedly rejected Boedeker's testimony over the course of his esteemed career. Mot. 1. However, work performed by Boedeker in other cases is relevant only to the extent they involve overlapping issues. Thus, below Plaintiffs distinguish the cases Defendant cites in the context in which they are raised.

(June 27, 2018). And in *Korte v. Pinnacle Food Groups LLC*, the court did not even consider Lemon's expert report in ruling on plaintiff's motion for class certification. *See* No. 17-CV-199-SMY-MAB, 2019 WL 4305464 (S.D. Ill. Sept. 11, 2019).[6]

### C.   Boedeker's CBC Analysis Is Not Fundamentally Flawed

Notwithstanding the foregoing, Defendant challenges Boedeker's methodology as "fundamentally flawed" for the following reasons: (1) it assumes that 100% of consumers were deceived; (2) it does not measure the price premium attributable to the Products' packaging,; (3) it fails to account for supply-side factors; (4) it produces unreliable results; (5) it fails to replicate market conditions; and (6) Boedeker's proposed alternative damages measure is flawed. As explained below, these arguments lack merit, and they certainly do not rise to the level of striking Boedeker's opinions.

### 1.   Boedeker's Economic Theory of Harm Does Not Assume 100% Consumer Deception

The correct measurement of a price premium in a consumer product false advertising class action is "the difference between the prices customers paid and the value of the [Products] they bought—in other words, the 'price premium'

---

[6] In *Cappalli v. BJ's Wholesale Club, Inc.*, No. 1:10-cv-00407 (D.R.I. Oct. 1, 2010), Lemon was only tasked with identifying potential settlement class members based on his analysis of defendant's customer database. To this end, Lemon submitted an affidavit in support of Plaintiff's Motion for Final Judgment and Final Approval of Class Action Settlement and Certification of Settlement Class. ECF No. 110-3.

attributable to" the alleged misstatements and omissions. *Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 534 (9th Cir. 2016). Boedeker's CBC damages model measures precisely that.

Defendant contends—without legal authority in support—that Boedeker's analysis is flawed because he assumes that 100% of all consumers were deceived into believing the Products are from Hawaiʻi. Mot. 7-8. For example, Defendant claims that Boedeker's analysis conflicts with Dr. Dennis's perception survey, which shows that "as much as 27.0% and 16.7% of purchasers in California and Hawaiʻi" were not deceived by the Hawaiian Representations. Defendant fundamentally misunderstands the economic theory of harm underlaying Boedeker's study, which does not assume that 100% of the class was misled, but rather calculates how the increase in price due to the Hawaiian Representations caused 100% of the class to suffer economic injury. Boedeker Dep. Tr. 34:20-35:1-9; 79:2-23. In other words, the misrepresentation that the Products are from Hawaiʻi allows the Products to command a higher price—a price paid by all consumers, even those who may not deceived by the challenged representations or who may not care about the geographical origin. Boedeker Rebuttal Report ¶¶ 34-41; *see also* Butler Dep. Tr. at 77:4-17. Boedeker's damages model relies on no assumption here.

Notably, Defendant provides no economic evidence to rebut this fundamental economic principle. But even accepting Defendant's argument that some consumers

were not deceived and *ergo* suffered no economic injury, it is irrelevant to the class certification inquiry and therefore cannot be a basis to strike Boedeker's testimony. *In re Arris Cable Modem Consumer Litig.*, 327 F.R.D. 334, 349 (N.D. Cal. 2018) ("To the extent that some [product] buyers may be owed $0 in restitution, that is a matter of damage calculations, and the Ninth Circuit has held that damage calculations alone cannot defeat certification."); *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) ("[T]he possibility that an injurious course of conduct may sometimes fail to cause injury to certain class members" does not defeat predominance).

        2.    <u>Boedeker's Damages Model Comports with Plaintiffs' Theory of Liability</u>

Plaintiffs' damages model is tethered directly to their liability case because it measures the difference between the price paid and value received vis-à-vis a Product from Hawai'i and one that is not. Nonetheless, Defendant contends that Boedeker's methodology is flawed because it does not measure the effect of the packaging itself. Mot. 8. However, Defendant's argument ignores Plaintiffs' two-pronged approach, which uses CBC to isolate the price premium attributable solely to the belief the Product is from Hawai'i, but only after establishing this predicate belief based on the packaging through Dr. Dennis' empirical survey. This matches

squarely with Plaintiffs' liability case as required by *Comcast*.[7]

Indeed, in *Broomfield*, a case that Defendant has repeatedly referenced throughout the litigation, the court held that same two-pronged damages approach from Boedeker and Dennis—the same experts here—satisfied *Comcast*:

> The Court agrees with Plaintiffs that Boedeker's model need not account for the impact of the product packaging in order to be tied to Plaintiffs' theory of liability. As discussed above, Dennis's survey is aimed at answering the questions of whether Kona beers' packaging misleads consumers into believing the beer is brewed in Hawaii and whether that belief is material to the consumers' purchasing decisions. *See generally* Dennis Decl. If the answer to both of those questions is yes, then the only question that remains is how purchases based on that belief have injured consumers. That is the question Boedeker's model seeks to answer. Thanks to Dennis's results, the packaging is irrelevant to this final question, and thus unnecessary to Boedeker's model.

2018 WL 4952519, at *17.

Moreover, the Ninth Circuit has approved the type of two-pronged approach to calculating a price premium in consumer class actions that Plaintiffs propose using here. In *Briseno v. Conagra Foods, Inc.*, 674 F. App'x at 657, the Ninth Circuit upheld the district court's approval of plaintiffs' damages model as consistent with

---

[7] In any event, a *Comcast* inquiry does not pertain to admissibility of an expert's opinions. *See, e.g.*, *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 946 (C.D. Cal. 2015), *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017), *and aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017); *see also In re 5-Hour Energy Mktg. & Sales Practices Litig.*, No. ML 13-2438 PSG (PLAx), 2017 WL 2559615, at *5 (C.D. Cal. June 7, 2017). To the extent Defendant briefed this issue in a *Daubert* motion instead of its Opposition to Plaintiffs' Motion for Class Certification to avoid the page limit, the Court should refuse to consider this briefing.

their theory of liability, holding in relevant part:

> Plaintiffs propose to measure the classwide price premium attributable to their theory of liability using two steps: First, Plaintiffs will use hedonic regression analysis to calculate the price premium attributable to the "100% Natural" label; second, they will use conjoint analysis to segregate the portion of that premium attributable to a "no-GMO" understanding of the label. ConAgra challenges the reliability and soundness of combining these two well-established damages models, but it was not an abuse of discretion for the district court to conclude that Plaintiffs' proffered model tracked their theory of liability and was therefore sufficient to survive class certification.

Defendant misunderstands this two-prong approach, arguing that Boedeker's analysis should be rejected because he did not test whether "the product packaging caused putative class members to believe that the products were manufactured in Hawai'i." Mot. 8 (citing *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010 (C.D. Cal. 2018) (rejecting analysis when the representation at issue was not tested)). In this litigation, it was not Boedeker's role to determine whether consumers are misled by the packaging. This was the role reserved for Dr. Dennis, and Dr. Dennis did precisely that: his survey demonstrated that the Products' labels deceived consumers into believing the Products were made in Hawai'i. Boedeker's task was solely to measure the increase in price (or price premium) Defendant was able to demand for a purported Hawaiian-made potato chip versus a potato chip not made in Hawai'i. This task is entirely divorced from the label itself, making Defendant's use of *Townsend* inapposite to Boedeker's analysis.

In sum, through Dr. Dennis' survey, Plaintiffs first established that, based on

the packaging, a majority of consumers believe the Products are from Hawaiʻi. After doing so, they utilized CBC, a well-established scientific method for calculating a price premium attributable to the belief that the Products are from Hawaiʻi. Thus, the damages model comports with Plaintiffs' theory of liability.

    3. <u>Boedeker's Damages Model Considers Supply-Side Factors</u>

   Defendant argues that Boedeker's CBC analysis fails to consider supply-side factors. Mot. 9-19. But Defendant conveniently ignores Boedeker's explanation for how his economic damages model accounts for supply-side factors. In short, Boedeker's CBC analysis accounts for the supply side because all of the factors that affected Defendant's willingness to sell (i.e., supply) are reflected in the number of units sold and prices that were extant in the market. In other words, the supply in the but-for-world is the same as in the actual world. As a result, economic loss (i.e., the price premium) can be calculated by comparing the difference in the observed price in the actual world—where consumer demand and supply in the market clears—and the price at which the purchasers would have purchased in the but-for world. Boedeker Rep. ¶¶ 71-79; Boedeker Rebuttal Report ¶¶ 43-51.

   Numerous courts have held that the CBC methodology that Boedeker proposes using here sufficiently accounts for supply side factors for the reasons

described herein.[8] *See In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 334 (D.N.H. 2017) (Boedeker's CBC methodology "account[ed] for the supply side" because "the supply element of the supply and demand price function is fixed" in the analysis "and is set, or included, in the [market] price[s] paid for" the product at issue.); *In re MyFord Touch Consumer Litig.*, 291 F. Supp. 3d 936, 970 (N.D. Cal. 2018) (Boedeker's CBC methodology accounted for supply-side factors "by assuming that the supply—the quantity—was fixed."); *Davidson v. Apple, Inc.*, No. 16-cv-04942-LHK, 2018 WL 2325426, at *22 (N.D. Cal. May 7, 2018), *appeal docketed*, No. 18-80060 (9th Cir. May 23, 2018) (Boedeker's CBC methodology "account[ed] for the supply side of the equation" by holding supply – and therefore quantity – constant); *Broomfield*, 2018 WL 4952519, at *19 ("the Court agrees with Plaintiffs (and the myriad courts to consider Boedeker's reports in similar cases) that Boedeker's CBC model accounts for supply-side factors."); *see also* Boedeker

---

[8] Defendant cites several cases not involving Boedeker for the general proposition that CBC does not account for supply-side factors. Mot. 9-11. But of course, each case must be examined on its unique facts, which includes consideration of, *inter alia*, the nature of the work performed, the industry, etc. For example, the unique markets in *Saavedra v. Eli Lilly & Co.*, No. 2:12-cv-9366-SVW (MANx), 2014 WL 7338930, at *8 (C.D. Cal. Dec. 18, 2014) (highly regulated, inefficient prescription drug market) and *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1063 (C.D. Cal. 2015) (nascent e-cigarette market) were distinguishing factors not present here. *Broomfield*, 2018 WL 4952519, at *19 (distinguishing *Saavedra* and *NJOY* for these reasons). In any event, Plaintiffs cite numerous cases where courts have concluded that CBC analysis adequately accounts for supply-side factors, when, as here, it incorporates market prices and units sold during the class period.

Rebuttal Report ¶¶ 49-56.

Numerous courts in the Ninth Circuit and in other circuits have concluded that CBC analysis adequately accounts for supply side factors, and therefore measures the price premium in the market (not just a theoretical willingness to pay), provided the prices used in the surveys underlying the analyses reflect the actual market prices that prevailed during the class period and the quantities used (or assumed) in the statistical calculations, reflect the actual quantities of products sold during the class period. *See*, *e.g.*, *In re Lenovo Adware Litig.*, No. 15-md-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016); *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1105 (N.D. Cal. 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp.*, No. 17-cv-00564 NC, 2018 WL 3126385, at *8-9 (N.D. Cal. June 26, 2018), *appeal docketed*, No. 18-80081 (9th Cir. July 11, 2018); *see also* Boedeker Rebuttal Report ¶ 48.

Less than two weeks ago, a highly instructive opinion, *McMorrow v. Mondelēz International, Inc.*, was issued. The *McMorrow* court rejected the same argument Defendant makes here and concluded that conjoint analysis adequately accounts for supply-side factors when, as here, it is based on real world sales data and quantity of the products sold during the class period. 2021 WL 859137, at *4-6. Similarly, in *Krommenhock v. Post Foods, LLC*, , the court held that any arguments that the plaintiff's experts' conjoint analysis "fail[s] to prove classwide impact

because they did not take into account changes in pricing or consumers' willingness to pay price premia over time or location" went to the weight, not admissibility, of the damages model. No. 16-cv-04958-WHO, 2020 WL 2322993, at *2 (N.D. Cal. May 11, 2020). In reaching this conclusion, the *Krommenhock* court held that, "[n]either the unpublished Ninth Circuit opinion in *Zakaria v. Gerber Products Co.*, 755 Fed. Appx. 623, 625 (9th Cir. 2018), nor the out of circuit decisions applying California's unfair competition law (*In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 224 (S.D.N.Y. 2019) & *Schechner v. Whirlpool Corp.*, 2:16-CV-12409, 2019 WL 4891192, at *8 (E.D. Mich. Aug. 13, 2019)) persuade me to reconsider these conclusions." *Id.* at *2 n.3.

Consistent with the foregoing authority, Boedeker's CBC used actual market-clearing prices as the basis for the prices in the survey, and actual label claims on the Products. Boedeker utilized real world sales prices for the Products to design the price range in his conjoint survey to be both below and above the price points in the market, in order to measure the demand curve. Boedeker Rep. ¶¶ 137-43; Boedeker Dep. Tr. at 146:22-148:1-13. Moreover, the survey was performed in a market that is long-established and efficient, where retailers' pricing is responsive to market forces. It also takes into account the fixed quantity of supply of the Products during the class period.

Because *McMorrow* and *Krommenhock* clearly articulate why the cases

17

Defendant relies on are distinguishable, Plaintiffs make only two brief points. ***First***, *Schechner v. Whirlpool Corp.*, a case relied on by Defendant, expressly held that the expert's conjoint adequately considered supply-side factors for the purpose of admissibility. *See* No. 2:16-cv-12409, 2019 WL 4891192, at *7 (E.D. Mich. Aug. 13, 2019). ***Second***, courts have recently begun to distinguish between classic mislabeling cases like this one and dangerous product defect cases, for obvious reasons. For example, in the *In re GM LLC Ignition Switch Litigation*, 407 F. Supp. 3d 212 (S.D.N.Y. 2019), another case cited by Defendant, the court focused on the specific theory of liability—a dangerous automobile defect—from cases involving "classic allegations of mislabeling." *Id.* at 238. The court agreed with *Hadley*, *Fitzhenry-Russell*, *Broomfield*, and several other cases, holding:

> [i]n a classic mislabeling case, however, that makes sense. A conjoint survey that asks respondents whether they would rather pay x for a product labeled "100% Fruit Juice" or y for a similar product labeled "50% Fruit Juice," for example, would account for supply-side factors if both x and y reflect the prices for which juice companies actually sell similarly labeled products in the marketplace. Accounting for supply-side factors is not so simple, however, where the alleged misrepresentations and omissions concern dangerous defects, as in this case.

*Id.* at 238-39;[9] *see also Mannacio v. LG Elecs. U.S.A., Inc.*, No. 16-1220 (JRT/KMM), 2020 WL 4676285, at *4, *8 (D. Minn. Aug. 12, 2020) (distinguishing

---

[9] The same is true for *Beaty v. Ford Motor Co.*, No. C17-5201RBL, 2020 WL 639408, at *1 (W.D. Wash. Feb. 11, 2020), which involved allegations that the car's sunroof could spontaneously shatter. Also, the *Beaty* court's sparse discussion of

product defect cases like *In re GM LLC Ignition Switch Litig.* with respect to the ability of CBC analysis to account for supply-side factors and denying *Daubert* motion as "merely another attack on the idea of a conjoint survey being used to measure class-wide damages in a mislabeling case.").

In sum, this is a classic mislabeling case, and given that Boedeker's damages model accounts for a fixed number of Products sold based on real-world pricing data, the model sufficiently considers the supply-side of the market.

### 4.   Boedeker's Analysis Does Not Produce Irrational Results

In consumer class actions, it is a common tactic for defendants to question the quality of survey data—regardless of whether it is logical to do so or is consistent with best practices or the applicable literature—to cobble together a superficially appealing argument that the survey produces illogical results. That is Defendant's strategy here: it uses Dr. Lemon as the mouthpiece for the claim that Boedeker's CBC analysis yields irrational results purportedly because a majority of respondents prefer higher prices than lower prices. Mot. 19-22; *see* ECF No. 118-31, Expert Report of Andrew Y. Lemon, Pd.D. ("Lemon Report") ¶ 204. For the reasons explained below, the Court should reject this contrived argument.

---

conjoint analysis was *dicta*. *See id.* at *7. *MacDougall v. American Honda Motor Co.*, No. SACV 17-1079, 2020 WL 5583534, at *4 (C.D. Cal. Sept. 11, 2020) similarly involved a transmission defect. In addition, the *MacDougal* court held that the conjoint analysis did not account for the supply-side because Boedeker's pricing was not based on real-world prices, which is not an issue here. *See id.* at *5.

As an initial matter, Lemon's analysis of the raw data is incorrect, and so there is no basis for the factual premise underpinning his criticism. Boedeker Rebuttal Report ¶¶ 85-89. In addition, Defendant's criticism that Boedeker "interven[ed] in Sawtooth to impose a 'monotonicity constraint'" is of no consequence. Mot. 21. Using a monotonicity constraint in the Sawtooth software is standard practice, and therefore, Boedeker did not manually intervene in the data for some nefarious purpose as Lemon misleadingly (or mistakenly) suggests. Boedeker Rebuttal Report ¶¶ 90-97. This is not just Boedeker's opinion. For example, in *Apple, Inc. v. Samsung Electronics Co.*, the court rejected the same argument made by Samsung (i.e., that the results were irrational because "68% of survey respondents preferred a higher price smartphone over an identical phone that was priced lower"), and accepted Apple's expert's use of a "price monotonicity constraint" which is "a standard tool that is included in the Sawtooth Software." No. 12-CV-00630-LHK, 2014 WL 794328, at *16 n.10 (N.D. Cal. Feb. 25, 2014). In any event, there is no statistically significant difference in the results with or without the monotonicity constraint. Boedeker Rebuttal Report ¶ 89. Lastly, the findings are not inconsistent with the economic literature that consumers might show a preference for higher prices because higher prices can be a signal of quality. *Id*. ¶ 88.

     5.   Boedeker's Survey Mimics Real World Conditions

Defendant argues that Boedeker's CBC survey fails to mimic real world

conditions because it includes attributes that are allegedly not important and does not include purportedly important attributes that Lemon speculates, without any evidence, are significant to consumers. Mot. 22-23. This argument fails on multiple levels.

*First*, the argument is factually baseless, as Boedeker included important attributes. Several of the attributes are printed on the Products' packaging (kosher, gluten free), and all of the attributes are important to consumers when purchasing potato chips according to Defendant's own Rule 30(b)(6) witness. Wand Decl. ¶ 8, Ex. F ("Barberi Dep. Tr.") at 340:23-341:21. Because Defendant acknowledged these attributes were important, this was a reasonable judgment call. *See Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, No. SACV 04-725 CJC (Ex), 2006 WL 5187497, at *7 (C.D. Cal. Mar. 2, 2006) ("there is no such thing as a 'perfect' survey.").

*Second*, while Defendant claims that Boedeker does not account for important attributes (e.g., environmental-friendliness), Defendant and its citations to the Lemon Report fail to include any data, research or analysis, such as a consumer survey, supporting the contention that these attributes are necessary in a survey or important purchase drivers. Mot. 22-23 (citing Lemon Report ¶¶ 41-43; 187-200). Without any support for its position that these are important attributes to consumers, Defendant's argument is of no use to the Court. Regardless, even if Defendant had

21

demonstrated that these attributes are valuable to consumers, any purported exclusions of certain attributes goes to the weight of Boedeker's analysis, not its admissibility. *Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2017 WL 9512587, at *13 (C.D. Cal. Aug. 9, 2017) (finding that the defendant's objections regarding an expert's failure to account for certain important product attributes in his conjoint surveys "go to weight, not admissibility."). Further, as demonstrated below, conjoint surveys need not contain every attribute imaginable to be accepted.

*Third*, the argument is unsupported by the literature. It is well-established that conjoint surveys need not include every important attribute; rather, they should include some relevant attributes. Boedeker Rep. ¶¶ 133-35; *TV Interactive Data Corp.*, 929 F. Supp. 2d at 1025 (rejecting argument that using 5 attributes in conjoint analysis is insufficient, citing Professor Hauser's testimony in *Apple*: "from a scientific perspective, it is unnecessary to include all features of a product when designing a conjoint study. Such a requirement is not consistent with the academic literature or commercial use of conjoint studies."). Even assuming the accuracy of Defendant's argument, Defendant articulates no meaningful impact that additional or substitute attributes would have on the reliability of the survey. *Fitzhenry-Russell*, 326 F.R.D. at 604 (rejecting argument that conjoint survey did not include taste as an attribute because the defendant "did not follow it up with a 'so what' explanation

22

of what legal difference this makes."). Moreover, the other attributes serve as distractors which disguise the particular attribute being measured. Boedeker Rep. ¶ 135; *see also Apple*, 2014 WL 794328, at *16 & n.10 ("The literature on conjoint analysis and the case law recognize that there are limitations on the number of distraction features that can be surveyed in a conjoint survey" and "[w]hether Dr. Hauser chose the correct distraction features, or whether he should have instead relied on other distraction features, goes to weight, not admissibility.").

Notably, Ms. Butler conducted a MaxDiff survey (a choice-based survey similar to conjoint) where she used attributes that are highly biased and likely to skew the results of her survey. In particular, Ms. Butler used "affordable price" and "familiar brand" (specific, positive attributes) in comparison to "manufacturing location" (a broad, neutral attribute),[10] and thus when asked which attribute is most important or least important, a respondent is far more likely to select "affordable price" over "manufacturing location." *See* ECF No. 118-33, Expert Report of Sarah Butler ("Butler Rep.") ¶¶ 91-92.

Finally, at most, this difference of professional opinion goes to the weight of

---

[10] As will be discussed in more detail in Plaintiffs' reply brief in support of class certification and/or a separate *Daubert* motion, a consumer's value of an unidentified "manufacturing location" does not test Plaintiffs' theory of liability. In any event, Butler should have compared apples to apples—e.g., "local manufacturing location" or "familiar manufacturing location" compared with "familiar brand, "familiar flavor," and "affordable price."

the evidence, not its admissibility. *Fortune Dynamic, Inc.*, 618 F.3d at 1037–38 (holding that criticisms about a survey's "fail[ure] to replicate real world conditions"—"valid as they may be"—"go to 'issues of methodology, [] design, reliability, . . . and critique of conclusions,' and therefore 'go to the weight of the survey rather than its admissibility.'"); *Dial*, 320 F.R.D. at 332 ("Dial also argues, plausibly, that, by limiting the attributes surveyed to four (five, including price), [plaintiff's expert's] model fails to adequately take into account and properly weight other attributes that may well be very important to liquid hand soap consumers . . . As plaintiffs correctly note, those issues—and the myriad others identified by Dial— are either curable, or go to the weight, not admissibility, of [plaintiff's expert's] testimony.").

      6.   <u>Boedeker's Alternative Damages Measure is Relevant and Reliable</u>

Defendant argues that Boedeker's alternative damages measure, which proposes using hedonic pricing analysis, Boedeker Rep. ¶ 186, is flawed. Mot. 23-24. To the contrary, the analysis is not flawed because Boedeker has not yet performed it; he has, however, outlined the contours of how as a methodology it could be used to calculate class-wide damages and has demonstrated that the available data indicates a price premium similar to the price premium estimated using conjoint analysis. Boedeker Rebuttal Report ¶¶ 99-102. Nor is Boedeker required to actually perform the analysis at the class certification stage. *Chavez v.*

*Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (a plaintiff is not required to "show that [damages] method will work with certainty at [class certification]."). Regardless, Boedeker has experience performing hedonic pricing analysis and it is his opinion that he can do so here if additional information and data is obtained. Boedeker Rebuttal Report ¶ 102; *see also Ralston v. Mortg. Investors Grp., Inc.*, No. 08-536-JF (PSG), 2011 WL 6002640, at *9-10 (N.D. Cal. Nov. 30, 2011) (denying motion to strike damages model where the model was flexible and could be adjusted to account for additional variables).

Lastly, the prosed hedonic pricing analysis would build on the price analysis he already performed. Boedeker found that the actual market price premium for the Products over competitor chips was similar to the price premium from his CBC analysis (Boedeker Rep. ¶¶ 185-87), *i.e.* it validates the results of his CBC study. *Id.* ¶ 187. Although this price analysis does not control for other variables—hence Boedeker's CBC analysis—it is still relevant because it corroborates Plaintiffs' damages theory that consumers pay a price premium in the competitive potato chip market for the Products. Further, Defendant fails to challenge the reliability of Boedeker's pricing analysis, the testimony is both relevant and reliable.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's Motion to Strike the Testimony of Stefan Boedeker.

DATED: March 19, 2021            Respectfully submitted,

**PERKINS & FARIA LLP**

By: <u>/s/ Brandee J.K. Faria</u>
      Brandee J.K. Faria

**THE WAND LAW FIRM, P.C.**
Aubry Wand

**FARUQI & FARUQI, LLP**
Timothy J. Peter
Benjamin Heikali

*Attorneys for Plaintiffs and the Putative
Classes*