IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL MAEDA and RICK SMITH, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>KENNEDY ENDEAVORS, INC., et al.,<br><br>Defendants. | CIVIL NO. 18-00459 JAO-WRP<br><br>**ORDER DENYING PENDING MOTIONS (ECF NOS. 96, 119–121, 139–141)** |

## ORDER DENYING PENDING MOTIONS (ECF NOS. 96, 119–121, 139–141)

This putative consumer class action arises out of the sale and marketing of Defendant Kennedy Endeavors, Inc.'s ("Defendant") Hawaiian brand snacks, including:  Hawaiian Kettle Style Potato Chips, Original; Hawaiian Kettle Style Potato Chips, Luau BBQ; Hawaiian Kettle Style Potato Chips, Sweet Maui Onion; Hawaiian Kettle Style Potato Chips, Ginger Wasabi; Hawaiian Kettle Style Potato Chips, Hulapeño; Hawaiian Kettle Style Potato Chips, Mango Habanero; Hawaiian Luau Barbeque Rings; and Hawaiian Sweet Maui Onion Rings (collectively, "Hawaiian Snacks").[1]  Plaintiffs Michael Maeda ("Maeda") and Rick Smith

---

[1]  Plaintiffs appear to have narrowed their challenge to the Original, Luau BBQ, and Sweet Maui Onion flavors of the Hawaiian Kettle Style Potato Chips.  ECF No. 105 at 9.

("Smith"), individually and on behalf of others similarly situated (collectively, "Plaintiffs"), allege that they purchased certain varieties of these snacks due to false and deceptive labeling, packaging, and advertising, which misled them into believing that the snacks are made in Hawai'i from local ingredients.

## BACKGROUND

Maeda and formerly named plaintiff Iliana Sanchez ("Sanchez") commenced this action on October 12, 2018 in the Hawai'i Circuit Court of the First Circuit.  Defendant Pinnacle Foods Inc.[2] subsequently removed the action on November 23, 2018.

On May 10, 2019, the Court issued an Order Granting in Part and Denying in Part Defendant Pinnacle Foods Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint, which (1) dismissed Sanchez's claims for lack of personal jurisdiction; (2) dismissed with prejudice the "Made in Hawaii" claim; (3) dismissed with leave to amend the Hawai'i Revised Statutes ("HRS") Chapter 480, California consumer protection, breach of warranty, and fraud/intentional misrepresentation claims; (4) denied the Motion to Dismiss as to the jurisdictional challenges to the unnamed non-resident class members; and (5) denied the Motion to Dismiss as to the

---

[2]  "Pinnacle Foods, Inc. merged into Peak Finance Holdings LLC, which distributed all assets to Kennedy Endeavors, Inc."  ECF No. 44 at 2.  Maeda changed Defendant's name to Kennedy Endeavors, Inc. in the corrected First Amended Class Action Complaint.  ECF No. 47.

Hawaiʻi false advertising, negligent misrepresentation, quasi-contract/unjust enrichment/restitution claims, and the request for injunctive relief.  *See Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231 (D. Haw. 2019) ("*Maeda I*"); *see also* ECF No. 32.  The Court granted Plaintiffs until June 10, 2019 to file an amended pleading in conformance with the Order.  *See Maeda I*, 390 F. Supp. 3d at 1262.

Plaintiffs timely filed a first amended complaint, adding Smith and a Hawaiʻi Uniform Deceptive Trade Practices Act ("UDTPA") claim.  ECF No. 39. The Court struck that filing for violating the Order but allowed Plaintiffs to file another first amended complaint that conformed with the Order.  ECF No. 46. Maeda subsequently filed a corrected First Amended Class Action Complaint ("FAC").  ECF No. 47.

Maeda then filed a Motion for Leave to File Second Amended Class Action Complaint.  ECF No. 50.  The Magistrate Judge granted the motion for good cause, noting the lack of opposition.  ECF No. 53.  On July 17, 2019, Plaintiffs filed their Second Amended Class Action Complaint ("SAC").  ECF No. 54.

Plaintiffs maintain that although the Hawaiian Snacks are manufactured in Algona, Washington, Defendant markets them in such a manner as to mislead consumers into believing that they were manufactured in Hawaiʻi.  The SAC asserts the following claims:  (1) violation of Hawaii's Unfair Deceptive Acts or Practices Statute ("UDAP"), HRS Chapter 480 (Count 1); (2) violation of Hawaii's

3

false advertising law, HRS § 708-871 (Count 2); (3) violation of UDTPA, HRS

Chapter 481A (Count 3); (4) violation of California's Consumers Legal Remedies

Act ("CLRA"), Cal. Civil Code § 1750 (Count 4); (5) violation of California's

unfair competition law ("UCL"), Cal. Bus. & Pros. Code § 17200 (Count 5); (6)

violation of California's false advertising law ("FAL"), Cal. Bus. & Pros. Code

§ 17500 (Count 6); (7) common law fraud/intentional misrepresentation (Count 7);

(8) negligent misrepresentation (Count 8); and (9) quasi-contract/unjust

enrichment/restitution (Count 9).  ECF No. 54.

      The three proposed classes identified by Plaintiffs are as follows:

> <u>Hawaiʻi Class</u>:   All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of Hawaiʻi.

> <u>California Class</u>:   All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of California.

> <u>California Consumer Subclass</u>:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks for personal, family, or household purposes, in the State of California.

*Id.* ¶ 54.  The class periods span from October 12, 2012 to December 31, 2019.

ECF No. 105 at 9 n.1.

      In their prayer for relief, Plaintiffs request:  a declaration that Defendant's

conduct violates the law, injunctive and other equitable relief, restitution, damages,

punitive damages, treble damages, attorneys' fees and costs, and pre- and post-

judgment interest.  ECF No. 54 at 64–65.

On July 31, 2019, Defendant filed a Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Filed on July 17, 2019.  ECF No. 55.  On September 19, 2019, the Court granted in part and denied in part the motion.  *See Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 963 (D. Haw. 2019) ("*Maeda II*"); *see also* ECF No. 74.  The Court dismissed the California consumer protection claims (Counts 4 to 6) and dismissed with leave to amend the UDTPA claim (Count 3).  The Court declined to dismiss the UDAP (Count 1), Hawai'i false advertising (Count 2), fraud/intentional misrepresentation (Count 7), negligent misrepresentation (Count 8), and quasi-contract/unjust enrichment (Count 9) claims, and denied Defendant's standing challenge regarding unpurchased Hawaiian Snacks.  Plaintiffs did not amend the SAC even though the Court permitted them to do so.  Therefore, Plaintiffs' UDAP, Hawai'i false advertising, fraud/intentional misrepresentation, negligent misrepresentation, and quasi-contract/unjust enrichment claims remain.

On November 30, 2020, Plaintiffs filed a Motion for Class Certification.  ECF No. 96.  Defendant filed an opposition on February 22, 2021, ECF No. 118, along with three motions — Motion to Strike Plaintiff Michael Maeda's "Sham" Deposition Testimony, ECF No. 119; Motion to Exclude the Testimony of Plaintiffs' Expert J. Michael Dennis, ECF No. 120; and Motion to Exclude the Testimony of Plaintiffs' Expert Stefan Boedeker, ECF No. 121.  Plaintiffs filed

5

oppositions to these motions on March 19, 2021.  ECF Nos. 131–133.  Plaintiffs

filed a reply to their Motion for Class Certification on March 24, 2021.  ECF No.

134.  Two days later, Defendant filed replies to their motions.  ECF Nos. 135–137.

On April 2, 2021, two weeks before the scheduled hearing on the foregoing

motions, Plaintiffs filed three motions — Motion to Exclude Testimony of

Defendant's Expert Sarah Butler, ECF No. 139; Motion to Strike ECF No. 118-20,

ECF No. 140; and Motion to Exclude Testimony of Defendant's Expert Andrew Y.

Lemon, ECF No. 141.  Defendant filed oppositions on April 23, 2021, ECF Nos.

148–150, and Plaintiffs filed replies on April 30, 2021.  ECF Nos. 151–153.

The Court held a hearing on May 21, 2021.  ECF No. 157.

## DISCUSSION

The primary matter before the Court is Plaintiffs' Motion for Class

Certification.  However, because the issues presented in the parties' other motions

impact the scope of evidence and arguments related to class certification, the Court

resolves these motions before turning to the merits of class certification.

## I.    Article III Standing

As a preliminary matter, the Court addresses Plaintiffs' Article III standing

to pursue injunctive relief.  *See Easter v. Am. W. Fin.*, 381 F.3d 948, 962 (9th Cir.

2004) ("The district court correctly addressed the issue of standing before it

addressed the issue of class certification.").  Defendant argues that Plaintiffs lack

standing to pursue injunctive relief because they do not intend to purchase the Hawaiian Snacks in the future and there is no risk they will be misled in the future. ECF No. 122-4 at 44.  Plaintiffs maintain that they have standing because they might purchase the Hawaiian Snacks in the future.  ECF No. 134 at 27–28.

Article III of the Constitution limits the jurisdiction of the federal courts to certain "Cases" and "Controversies."  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013).  A "class representative[] must have Article III standing," *B.K. v. Snyder*, 922 F.3d 957, 966 (9th Cir. 2019) (citation omitted), "for each claim he seeks to press and for each form of relief that is sought."  *Town of Chester v. Laroe Ests., Inc.*, 581 U.S. __, 137 S. Ct. 1645, 1650 (2017) (internal quotation marks and citation omitted).  To establish "standing" to sue in federal court, a plaintiff must have "'(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'"  *Gill v. Whitford*, 585 U.S. __, 138 S. Ct. 1916, 1929 (2018) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. __, 136 S. Ct. 1540, 1547 (2016)).  As the party invoking federal jurisdiction, the plaintiff must establish these elements.  *See Spokeo*, 578 U.S. at __, 136 S. Ct. at 1547 (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)).  A plaintiff exclusively seeking declaratory and injunctive relief is required to "show a very significant possibility of future harm."  *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126

(9th Cir. 1996) (citation omitted).  "[T]he 'threatened injury must be *certainly impending* to constitute injury in fact' and 'allegations of *possible* future injury are not sufficient.'"  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018) (citation omitted).  Article III requires a plaintiff seeking prospective injunctive relief to show irreparable injury; that is, "a sufficient likelihood that he will again be wronged in a similar way."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Even if "an injury [is] shared by a large class of other possible litigants," a plaintiff must nevertheless "allege a distinct and palpable injury to himself." *Warth v. Seldin*, 422 U.S. 490, 501 (1975) (citation omitted); *see Spokeo*, 578 U.S. at __ n.6, 136 S. Ct. at 1547 n.6 ("That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" (alteration in original) (some internal quotation marks and citation omitted)).

In the consumer protection arena, the Ninth Circuit has held that

> a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm.

*Davidson*, 889 F.3d at 969 (citation omitted).  That the plaintiff knew "the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Id.* (footnote omitted).  Threats of future harm may include the consumer's plausible allegations that (1) "she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to" or (2) "she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70 (citations omitted).

The Court previously concluded that Maeda[3] had standing to pursue injunctive relief:

> Based on the allegations in the Complaint, the Court finds that this case presents an even closer call than *Davidson*,[4] as

---

[3]  At the time, Smith was not a party to the action.

[4]  In *Davidson*, the plaintiff purchased Scott Wipes based on the "flushable" notation on the packaging.  *See Davidson*, 889 F.3d at 961.  The plaintiff stopped using the wipes after learning that they were not truly flushable.  *See id.* at 962. She wanted to purchase wipes that were genuinely flushable, if she could determine that the wipes were suitable for flushing prior to purchase.  *See id.*  The Ninth Circuit's determination that the plaintiff had standing to pursue injunctive relief because she faced a threat of imminent or actual harm was based on her inability to rely on the defendant's label in the future; that is, she had "no way of determining whether the representation 'flushable' [was] in fact true." *Id.* at 967, 970–71 (some internal quotation marks omitted).  While acknowledging that it was a "close question," the *Davidson* court reasoned that the plaintiff alleged that she desired to purchase the defendant's flushable wipes in the future and that the first

(continued . . .)

unlike the *Davidson* plaintiff, Plaintiff Maeda is not precluded from verifying the origin of the Hawaiian Snacks until consumption/use.  Giving the Court additional pause is Plaintiff Maeda's somewhat contradictory allegation that he will abstain from purchasing the Hawaiian Snacks absent an injunction and that he will continue to suffer ongoing injury until the snacks are *manufactured in Hawaiʻi* or Defendant is "enjoined from making further false and misleading representations."  Compl. at ¶ 50 (emphasis added).

However, given the Court's obligation to presume the truth of Plaintiff Maeda's allegations and construe all allegations in his favor at this stage of the proceedings, the Court finds that Plaintiff Maeda has adequately alleged that he faces an imminent or actual threat of future harm by being unable to rely on Defendant's packaging and marketing.  As in *Davidson*, Plaintiff Maeda alleges that he wishes to purchase the Hawaiian Snacks. Accepting the truth of this claim, as it must, the Court finds that Plaintiff Maeda's alleged harm sufficiently confers standing to seek injunctive relief.

*Maeda I*, 390 F. Supp. 3d at 1260–61 (footnote omitted).  The current procedural posture of the case imposes a heavier burden on Plaintiffs to establish standing. "Because the elements of standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required *at the successive stages of the litigation.*'"  *Sali v. Corona Regʻl Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)

---

(. . . continued)
amended complaint was "devoid of any grounds to discount [Davidson's] stated intent to purchase [the wipes] in the future."  *Id.* at 971 (alterations in original) (internal quotation marks and citation omitted).

(quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)); *see B.K.*, 922 F.3d at 966–67 (citation omitted); *Guzman v. Chipotle Mexican Grill, Inc.*, Case No. 17-cv-02606-HSG, 2020 WL 227567, at *5 (N.D. Cal. Jan. 15, 2020) ("[P]utative class representatives 'must demonstrate, not merely allege, that they have suffered an injury-in-fact to establish Article III standing to bring the claims asserted on behalf of the [class].'" (second alteration in original) (citations omitted)).

Based on the evidence presently before the Court, Plaintiffs lack standing to pursue injunctive relief.  In *Maeda I*, the Court accepted Maeda's allegation that he wishes to purchase the Hawaiian Snacks in the future.  But he has since testified that he does not intend to purchase Hawaiian Snacks again.  ECF No. 118-2 at 27 (76:18–24).  A plaintiff must demonstrate that he or "she faces an imminent or actual threat of future harm caused by" the defendant's conduct.  *Davidson*, 889 F.3d at 970.  In addition, "[w]here standing is premised entirely on the threat of repeated injury, a plaintiff must show 'a sufficient likelihood that he will again be wronged in a similar way.'"  *Id.* at 967 (citation omitted).  Maeda will suffer no harm, much less an imminent or actual threat of future harm, nor be wronged again in a similar way if he never purchases the products again.

Smith was somewhat equivocal when asked whether he would ever purchase the Hawaiian Snacks again:  "Well, you know, if they built a potato chip factory here and made Hawaiian potato chips in Hawaii, they would get my vote there.  I

11

would probably buy them; or if, you know, they're a little more truthful in their branding, possible." ECF No. 118-3 at 23 (76:15–19). But "profession of an 'inten[t]' . . . is simply not enough." *Lujan*, 504 U.S. at 564 (first alteration in original). "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury" that standing requires. *Id.* (citation and footnote omitted). The mere possibility that Smith will purchase the Hawaiian Snacks if certain conditions are met cannot satisfy standing. *See Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (concluding that "Lanovaz's statement that she would 'consider buying' Twinings products" did not establish standing). This is especially so because unlike the plaintiff in *Davidson* who could not determine whether the wipes were in fact flushable until using them, Smith knows that the Hawaiian Snacks are not made in Hawai'i and he can simply reference the packaging to ascertain the products' place of manufacture. The back of the packaging always disclosed that the products are made in Washington and the front of the packaging now includes a disclaimer that the Hawaiian Snacks are "Not a Product of Hawaii." ECF No. 105 at 15. Accordingly, Plaintiffs lack standing to pursue injunctive relief.

## II.     Non-Class Certification Motions

### A.     *Daubert* Motions

The parties submitted expert reports to support and oppose class

certification, which are the subject of multiple motions to exclude.  ECF Nos. 120–

121, 139, 141.  At the class certification stage, the admissibility of expert reports is

evaluated under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579

(1993).[5]  *See Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984–85 (9th Cir.

2020) (citation omitted).  "Under *Daubert*, 'the district court judge must ensure

that all admitted expert testimony is both relevant and reliable.'"  *Id.* at 984

(quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)).

"Expert opinion testimony is relevant if the knowledge underlying it has a valid

connection to the pertinent inquiry.  And it is reliable if the knowledge underlying

it has a reliable basis in the knowledge and experience of the relevant discipline."

*Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotation marks and

_____

[5]  Federal Rule of Evidence ("FRE") 702 governs the admissibility of expert evidence.  *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003). Experts may offer opinions based on their "knowledge, skill, experience, training, or education" if these requirements are met:  (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

footnote omitted).  "'The focus of the district court's analysis must be solely on principles and methodology, not on the conclusions that they generate,' and 'the court's task is to analyze not what the experts say, but what basis they have for saying it.'" *Grodzitsky*, 957 F.3d at 984–85 (citation omitted); *see also Daubert*, 509 U.S. at 592–93.

"Inadmissibility alone is not a proper basis to reject evidence submitted in support of class certification," however.  *Sali*, 909 F.3d at 1004 (footnote omitted). "[A]dmissibility must not be dispositive.  Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id.* at 1006.

After reviewing the parties' motions to exclude, the Court finds that their expert challenges go to the weight, not admissibility, of testimony for the purpose of class certification.  Accordingly, the Court DENIES the motions for the reasons stated below, and, as relevant, will address the parties' arguments as they relate to class certification.  *See Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288, 297 (N.D. Cal. 2020); *Aberin v. Am. Honda Motor Co.*, Case No. 16-cv-04384-JST, 2021 WL 1320773, at *4 (N.D. Cal. Mar. 23, 2021).

### 1.    Plaintiffs' Expert Dr. J. Michael Dennis

Dr. J. Michael Dennis ("Dr. Dennis") created and conducted a consumer survey to measure two issues:  (1) "the extent to which (if any) that consumers

understand the Products' packaging to communicate that the Products are made in the state of Hawaii" and (2) "the extent to which (if any) the Products' packaging is material to the purchasing decisions of consumers by communicating that the Products are made in the state of Hawaii." ECF No. 96-32 ¶ 16.

Defendant requests exclusion of Dr. Dennis' report and testimony on the following grounds: (1) his "consumer perception" survey is neither relevant nor reliable and (2) his "materiality" survey is irrelevant because it does not measure materiality. ECF No. 120-1. But the Ninth Circuit has "long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (alterations in original) (citations omitted); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016) (holding that the district court erred in excluding survey evidence on materiality). Even "'technical inadequacies' in a survey, 'including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Fortune Dynamic*, 618 F.3d at 1036 (citations omitted). The Court concludes that Dr. Dennis' report is relevant and reliable with respect to class certification and therefore DENIES Defendant's motion to exclude his testimony. ECF No. 120.

### 2.   Plaintiffs' Expert Stefan Boedeker

Plaintiffs retained Stefan Boedeker ("Boedeker") "to measure whether the Products commanded a price premium based on consumers' belief that they are from Hawai'i." ECF No. 133 at 9. Utilizing a choice-based conjoint analysis to test the foregoing, Boedeker concluded that consumers paid a 9.17% price premium. *Id.*

Defendant moves to exclude Boedeker's testimony and report on the bases that his conjoint analysis: (1) relies on the faulty assumption that 100% of consumers were deceived into believing that the Hawaiian Snacks were made in Hawai'i; (2) fails to consider supply-side factors and cannot therefore measure benefit-of-the-bargain, market-based damages; (3) produces unreliable results; and (4) fails to mimic real-world conditions. ECF No. 121-1 at 12–28. Defendant also argues that Boedeker's alternative damages measure is flawed and unreliable. *Id.* at 28–30.

The Court's consideration of Boedeker's report is ultimately limited to the report's shortcomings when divorced from Dr. Dennis' survey, and regardless, Defendant's challenges pertain to weight, not admissibility, for the purpose of class certification. As such, the Court DENIES the motion to exclude. ECF No. 121.

### 3.   Defense Expert Sarah Butler

Defendant retained Sarah Butler ("Butler") to review Dr. Dennis' survey and

16

report.  ECF No. 118-33 ¶ 8.  In doing so, she designed and conducted a rebuttal

survey to correct the purported flaws in Dr. Dennis' survey.  *Id.* ¶ 9.

Plaintiffs seek to exclude Butler's testimony as irrelevant in that it is

inconsistent with their theory of liability and does not answer the applicable test for

materiality.  ECF No. 139-3 at 7.  The Court does not rely on Butler's testimony in

deciding class certification, so it DENIES as moot the motion to exclude.  ECF No.

139.

### 4.    Defense Expert Dr. Andrew Y. Lemon

Defendant retained Dr. Andrew Y. Lemon ("Dr. Lemon") to analyze and

comment on Dr. Dennis' and Boedeker's reports, and to address the following

issues:

> Can the fact and magnitude, if any, of class-wide injury be
> reasonably and reliably established by a common method of
> proof, applied to a common set of facts, such  that demonstrating
> injury to proposed class representatives, Mr. Maeda and Mr.
> Smith, would reasonably and reliably establish the fact of injury
> for all, or almost all, members of the proposed class?  Or,
> alternatively, can the fact and magnitude, if any, of injury only
> be reasonably and reliably determined by individualized  inquiry
> into the facts and circumstances affecting each proposed class
> member?

ECF No. 118-31 ¶¶ 12–13.

Plaintiffs move to exclude Dr. Lemon's testimony regarding conjoint

analysis on the grounds that he lacks the knowledge, skill, experience, training, and

education to do so.[6]  ECF No. 141-4 at 7.  In evaluating class certification, the Court's reliance on Dr. Lemon's report is limited to his analysis of Dr. Dennis' survey results.  Because the Court does not rely on Dr. Lemon's rebuttal of Boedeker's conjoint analysis — the only portion of Dr. Lemon's analysis challenged by Plaintiffs — the motion to exclude is DENIED as moot.  ECF No. 141.

### B.     Maeda's Deposition Errata

Defendant moves to strike Maeda's deposition errata because it contradicts his deposition testimony.  ECF No. 119-1.  Federal Rule of Civil Procedure ("FRCP") 30(e) provides:

> (1) *Review; Statement of Changes.* On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
>
> > (A) to review the transcript or recording; and
> >
> > (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
>
> (2) *Changes Indicated in the Officer's Certificate.* The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

---

[6]  At the hearing, the Court asked Plaintiffs' counsel whether Plaintiffs' challenges are limited to Dr. Lemon's findings 8 and 9.  Plaintiffs' counsel responded, "at a minimum," but confirmed that the challenges are limited to Dr. Lemon's conjoint analysis.

Fed. R. Civ. P. 30(e).  Analogizing "sham" corrections with "sham" affidavits, the Ninth Circuit has held that FRCP "30(e) is to be used for corrective, and not contradictory, changes."  *Hambleton Bros. Lumber Co. v. Balkin Enters., Inc.*, 397 F.3d 1217, 1225–26 (9th Cir. 2005).  Courts have interpreted *Hambleton* as establishing two prohibitions on changes to deposition testimony pursuant to FRCP 30(e):  "first, a prohibition against 'sham' corrections (i.e., 'changes offered solely to create a material factual dispute in a tactical attempt to evade an unfavorable summary judgment'), and second, a separate, more or less per se prohibition against changes that contradict rather than correct the original deposition testimony."  *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, Case No. 3:12-cv-00090-TMB, 2017 WL 2332859, at *2 (D. Alaska Mar. 23, 2017) (footnotes omitted).

Plaintiffs argue in part that aside from procedural deficiencies, errata are only stricken in the summary judgment context.  ECF No. 131 at 21.  However, courts have applied *Hambleton* in other contexts, including class certification.  *See, e.g.*, *Young v. Cree, Inc.*, Case No. 17-cv-06252-YGR (TSH), 2019 WL 260853, at *1 (N.D. Cal. Jan. 18, 2019); *Peterson*, 2017 WL 2332859, at *2–3; *Lee v. Pep Boys-Manny Moe & Jack of Cal.*, Case No. 12-cv-05064-JSC, 2015 WL 6471186, at *2 (N.D. Cal. Oct. 27, 2015); *Tourgeman v. Collins Fin. Servs.*, Inc., No. 08-CV-1392 JLS (NLS), 2010 WL 4817990, at *3 (S.D. Cal. Nov. 22, 2010).

19

Although at least some of the changes in the errata are questionable, the Court need not decide whether they comport with FRCP 30(e) for the purpose of class certification. When evaluating a motion for class certification, the Court is not limited to considering admissible evidence. *See Sali*, 909 F.3d at 1004–05. The Court should "consider 'material sufficient to form a reasonable judgment on each [Rule 23(a)] requirement.'" *Id.* at 1005 (alteration in original) (citation omitted). And in assessing class certification, the Court may — and in some instances, must — resolve factual disputes. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).

Defendant specifically wants to strike the errata because it contradicts Maeda's original deposition testimony, which purportedly evidences Maeda's inadequacy as a class representative, *see* Fed. R. Civ. P. 23(a)(4), and an absence of damages. *See* Fed. R. Civ. P. 23(b)(3). Because the Court finds the referenced discrepancies to be relevant to Maeda's adequacy as a class representative, the Court declines to strike the errata under the circumstances.[7] Accordingly, Defendant's Motion to Strike Plaintiff Michael Maeda's Sham Deposition Testimony, ECF No. 119, is DENIED without prejudice.

---

[7] Defendant is not foreclosed from renewing this request at a later date, if appropriate.

20

C.     **Exhibit 19 to the Declaration of Andrew G. Phillips in Support of Defendant's Opposition to Plaintiffs' Motion for Class Certification**

Plaintiffs move to strike Exhibit 19 (ECF No. 118-20) to Andrew G. Phillips' declaration in support of Defendant's opposition to Plaintiffs' class certification motion.  ECF No. 140.  Plaintiffs characterize Exhibit 19 as Defendant's attempt to circumvent the page limitations imposed by the Local Rules and the Court.  ECF No. 140-3 at 3–6.  Although the Court has broad discretion to strike any document in the record, it declines to do so here.  The Motion to Strike, ECF No. 140, is therefore DENIED.  The Court encourages the parties to be more judicious in their litigation practices moving forward in order to limit unnecessary motions.

## III.   Class Certification

Plaintiffs argue that class certification is appropriate because they satisfy the requirements set forth in FRCP 23(a) and 23(b)(3).  ECF No. 105 at 17.  They also request certification of an injunctive relief class under FRCP 23(b)(2).  *Id.* at 33–34.  Defendant challenges certification on multiple grounds,[8] which the Court will address in the pertinent sections that follow.

---

[8]  Defendant initially contends that certification is precluded by the Court's prior determination that the Hawaiian Snacks' packaging could not deceive a reasonable consumer.  ECF No. 122-4 at 16–23.  The Court disagrees.  "In determining the

(continued . . .)

"Class actions are 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013)). As such, FRCP 23 "imposes 'stringent requirements' for class certification." *Id.* (quoting *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013)). "The party seeking class certification has the burden of affirmatively demonstrating that the class meets the requirements of Federal Rule of Civil Procedure 23." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012) (citation omitted). "[T]he failure of any one of Rule 23's requirements destroys the alleged class action." *Rutledge v. Elec.*

---

(. . . continued)

propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) (internal quotation marks and citation omitted). And in any event, regardless of whether Plaintiffs ultimately prevail, the Court already concluded that their remaining claims are adequately pled. Given the Court's position, it need not address Plaintiffs' request for reconsideration. ECF No. 105 at 18 ("*Second*, and only to the extent it is relevant here, the Court should reconsider its position on the reasonable consumer standard because there have been intervening changes in facts and law." (footnote omitted)). The Court notes, however, that it will not consider a request for reconsideration without a proper motion. Plaintiffs cite the Court's prior statement that it can reconsider its own orders before judgment enters, *see id.* n.5, failing to recognize that the statement was made in the context of the law of the case doctrine, which Plaintiffs previously invoked — albeit improperly — to (ironically) claim the Court should not revisit earlier rulings. *See Maeda II*, 407 F. Supp. 3d at 963–64.

*Hose & Rubber Co.*, 511 F.2d 668, 673 (9th Cir. 1975) (citation omitted).  A party requesting class certification must *first* satisfy FRCP 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements.[9]  *See Olean*, 993 F.3d at 784 (citing *Leyva v. Medline Indus.*, 716 F.3d 510, 512 (9th Cir. 2013); Fed. R. Civ. P. 23(a)).

If all four of these prerequisites are met, Plaintiffs must then "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."  *Comcast*, 569 U.S. at 33.  Pertinent here, the Court can certify an FRCP 23(b)(2) class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  And when

---

[9]  FRCP 23(a) provides:

One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

monetary damages are involved, "a putative class must also establish that 'the questions of law or fact common to class members predominate over any questions affecting only individual members,'" *Olean*, 993 F.3d at 784 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013); Fed. R. Civ. P. 23(b)(3)), and "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

"When considering whether to certify a class, it is imperative that district courts 'take a close look at whether common questions predominate over individual ones'" and "perform a 'rigorous analysis' to determine whether this exacting burden has been met before certifying  a class."  *Olean*, 993 F.3d at 784 (citations omitted).  In conducting this "rigorous analysis," district courts are required to "'judg[e] the persuasiveness of the evidence presented' for and against certification."  *Id.* (citation omitted).  "Courts must resolve all factual and legal disputes relevant to class certification, even if doing so overlaps with the merits." *Id.* (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011)).  However, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage."  *Amgen*, 568 U.S. at 466.  Such inquiries "may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Id.* (citations omitted); *see also Comcast*, 569 U.S. at 33 (explaining that the court may

24

need to "probe behind the pleadings before coming to rest on the certification question" (internal quotation marks and citation omitted)).  "A district court that 'has doubts about whether the requirements of Rule 23 have been met should refuse certification until they have been met.'"  *Olean*, 993 F.3d at 793 (citation and footnote omitted).

The Court begins with FRCP 23(a)'s prerequisites,[10] noting that Defendant does not challenge Plaintiffs' satisfaction of the numerosity or commonality requirements.[11]

### A.    FRCP 23(a)

#### 1.    Numerosity

Numerosity is satisfied if "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  This requirement mandates an "examination of the specific facts of each case and imposes no absolute limitations."  *Gen. Tel. Co. of the Nw. v. EEOC*, 446 U.S. 318, 330 (1980).  "[A]s a

---

[10]  Plaintiffs address FRCP 23(b)'s requirements concurrently with FRCP 23(a)'s requirements.  But because Plaintiffs must satisfy one of FRCP 23(b)'s requirements *in addition* to the conditions imposed by FRCP 23(a), the Court considers FRCP 23(a) first.

[11]  At the hearing, defense counsel conceded numerosity but argued that Defendant challenges commonality.  However, Defendant did not address commonality in its opposition.  A non-movant's failure to oppose an issue presented in a motion generally constitutes a waiver.  *See Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (citation omitted).

general rule, classes of 20 are too small, classes of 20–40 may or may not be big enough depending on the circumstances of each case, and classes of 40 or more are numerous enough." *Handloser v. HCL Techs. Ltd.*, Case No. 19-CV-01242-LHK, 2021 WL 879802, at *5 (N.D. Cal. Mar. 9, 2021) (internal quotation marks and citation omitted); *see also McMillon v. Hawaii*, 261 F.R.D. 536, 542 (D. Haw. 2009) ("Generally, a class satisfies numerosity if it is likely to exceed forty members." (citations omitted)).

Because Defendant concedes that Plaintiffs have satisfied the numerosity requirement, and indeed, there are at least 40 consumers in Hawaiʻi and California, *see* ECF No. 105 at 20, the Court finds that joinder of numerous consumer class members would be impracticable.  Plaintiffs have therefore satisfied the numerosity requirement.

## 2. Commonality

Commonality ensures that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  It requires class members' claims to "'depend upon a common contention' and that the 'common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'"  *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1153 (9th Cir. 2016) (quoting *Wal-Mart*, 564 U.S. at

350).  Critical to certification "is not the raising of common questions—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation."  *Wal-Mart*, 564 U.S. at 350 (internal quotation marks and citation omitted).  "So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)."  *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014) (some internal quotation marks and citations omitted).

Defendant waived any argument that Plaintiffs failed to meet the commonality requirement, and central to this lawsuit is the allegedly deceptive packaging of the Hawaiian Snacks that caused Plaintiffs and other consumers to believe the snacks were made in Hawai'i, which is capable of class-wide resolution.  Consequently, the Court concludes that there are questions of law and fact common to the class sufficient to meet Rule 23(a)(2).[12]  *See Broomfield v. Craft Brew All., Inc.*, Case No. 17-cv-01027-BLF, 2018 WL 4952519, at *5 (N.D.

---

[12]  Plaintiffs incorrectly argue that the FRCP 23(b)(3) predominance inquiry is triggered by satisfaction of FRCP 23(a)(2).  ECF No. 105 at 21 (citation omitted).  Unless FRCP 23(a)'s prerequisites are met (not merely FRCP 23(a)(2)), it is unnecessary to reach FRCP 23(b).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) ("In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or (3)." (citation omitted)), *overruled on other grounds by Wal-Mart*, 564 U.S. 338.

Cal. Sept. 25, 2018); *Fitzhenry-Russell v. Dr. Pepper Snapple Grp., Inc.*, 326 F.R.D. 592, 607–08 (N.D. Cal. 2018).

### 3. Typicality

Typicality requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (internal quotation marks and citation omitted). Typicality is a permissive requirement so representative claims need not be substantially identical; they are "typical" as long as "they are reasonably coextensive with those of absent class members." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017) (internal quotation marks and citation omitted). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.* (some internal quotation marks and citation omitted).

Plaintiffs argue that they satisfy this requirement because their claims stem from the same course of conduct underlying the class members' claims. ECF No. 134 at 23. Defendant counters that in light of the Court's prior determination that

no reasonable consumer could be misled, which also bears out in real-world data, Plaintiffs' claims are atypical.[13]  ECF No. 122-4 at 22–23.

Applying the relevant measures, which Defendant in large part disregarded, the Court finds that Plaintiffs' claims are reasonably co-extensive with the class members' claims.  Other members have the same or similar injuries based on the identical alleged course of conduct — the use of words and imagery on the Hawaiian Snacks' packaging to mislead consumers into believing that the products are made in Hawai'i, thereby commanding a higher price.  Thus, Plaintiffs satisfy the typicality requirement.

### 4. Adequacy of Representation

FRCP 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The Court must "carefully scrutinize the adequacy of representation in all class actions."  *Rutledge*, 511 F.2d at 673 (internal quotation marks and citation omitted); *see also Daly v. Harris*, 209 F.R.D. 180, 196 (D. Haw. 2002) (citing *id.*).  The purpose of the adequacy of representation requirement is to ensure that absent class members are

---

[13]  This is not germane to the typicality inquiry.  As the Court already noted, its class certification assessment does not factor the merits of Plaintiffs' claims.  *See Eisen*, 417 U.S. at 178.  Moreover, the Court determined that Plaintiffs' current claims were adequately pled.  The Court's conclusion that no reasonable consumer could be deceived pertained to Plaintiffs' California consumer protection claims, which were dismissed.

"afforded adequate representation before entry of a judgment which binds them."
*Hanlon*, 150 F.3d at 1020 (citation omitted).  Two inquiries determine whether
representation will be fair and adequate:  (1) whether "the named plaintiffs and
their counsel have any conflicts of interest with other class members" and (2)
whether "the named plaintiffs and their counsel prosecute the action vigorously on
behalf of the class."  *Id.* (citation omitted); *see also Rodriguez v. Hayes*, 591 F.3d
1105, 1125 (9th Cir. 2010) ("Whether the class representatives satisfy the
adequacy requirement depends on 'the qualifications of counsel for the
representatives, an absence of antagonism, a sharing of interests between
representatives and absentees, and the unlikelihood that the suit is collusive.'"
(some internal quotation marks and citation omitted)).  Finally, "the honesty and
credibility of a class representative is a relevant consideration when performing the
adequacy inquiry 'because an untrustworthy plaintiff could reduce the likelihood
of prevailing on the class claims.'"  *Harris v. Vector Mktg. Corp.*, 753 F. Supp. 2d
996, 1015 (N.D. Cal. 2010) (some internal quotation marks, brackets, and citations
omitted).

Plaintiffs baldly claim that they and their counsel are adequate
representatives.  ECF No. 105 at 32–33.  The only evidence submitted by Plaintiffs
regarding their adequacy are their declarations containing identical recitations
about their lack of conflicts, their intent to represent the classes' interests, and their

willingness to actively participate in this lawsuit.  ECF Nos. 96-28 ¶¶ 6–7; 96-29 ¶¶ 7–8.[14]

Defendant contends that Plaintiffs are inadequate representatives because (1) the circumstances under which they became involved in this case are troubling, especially in view of their 13-year social relationship with counsel; (2) they provided conflicting — and even "sham" — testimony; and (3) they have demonstrated indifference about and disdain for this litigation.  ECF No. 122-4 at 36–42.

### a. Plaintiffs' relationships with each other and counsel

Maeda has had a social relationship — described by him as a "casual friends[hip]" — with counsel Brandee Faria since approximately 2006 or 2007.[15] ECF No. 118-2 at 5–6 (13:3–14:14).  During the course of the relationship, Maeda attended a social gathering at Ms. Faria's house and at least 50 sports gatherings at counsel's office.  *Id.* at 8–9 (16:9–17:20).  Smith has had friendships with his "wine brother" Mr. Perkin, Ms. Faria, and Maeda, and they socialized at the wine store Simply Grape and at Mr. Perkin and Ms. Faria's office.  ECF No. 118-3 at 7–

---

[14]  Plaintiffs also cite paragraphs 10 and 11 of their declarations, *see* ECF No. 134 at 24, 26, but their declarations do not contain such paragraphs.

[15]  Maeda also had a lengthy social relationship (approximately 13 to 14 years) with Ms. Faria's former law partner, John Perkin, who is now deceased.  ECF No. 118-2 at 6–7 (14:16–15:10).

12 (38:15–41:12, 42:8–43:15).  Maeda and Smith also golfed together.  *Id.* at 10 (41:13–21).

During one of the social gatherings at counsel's office, Maeda overheard Ms. Faria and Mr. Perkin discussing the fact that the Hawaiian Snacks are not manufactured in Hawaiʻi, which he had not previously realized.  ECF No. 118-2 at 11–12 (20:2–21:11, 21–25).  Maeda considered becoming part of a lawsuit after hearing this conversation.  *Id.* at 12 (21:2–4).  Smith similarly learned for the first time that the Hawaiian Snacks are made outside Hawaiʻi after he heard Ms. Faria discussing the matter at an office social gathering.  ECF No. 118-3 at 13–15 (47:21–48:4, 50:3–6).  Smith offered, and Ms. Faria asked him, to be involved in a lawsuit.  *Id.* at 13–14 (47:24–48:4).  And it appears this litigation was already underway before Ms. Faria informed Smith that the subject products are not made in Hawaiʻi:  he purchased the chips after the lawsuit commenced, ECF No. 54 ¶ 14, and testified that he has not purchased the chips since learning about the place of manufacture.  ECF No. 118-3 at 23 (76:2–7).  "[I]n the absence of some evidence to indicate that a friendship between the class representative and one of his attorneys would create a conflict of interest, the court will not presume one."  *DeNicolo v. Hertz Corp.*, Case No. 19-cv-00210-YGR, 2021 WL 1176534, at *6 (N.D. Cal. Mar. 29, 2021) (citations omitted).   However, not only do Plaintiffs have a longstanding friendship with Ms. Faria — one of the proposed class counsel

32

— they learned about the allegations in this lawsuit from Ms. Faria and Mr. Perkin. At a minimum, this creates a *potential* conflict, particularly when coupled with the relationship between Maeda, Smith, and Ms. Faria. This relationship "casts doubt on [Plaintiffs'] ability to place the interests of the class above that of [Ms. Faria]." *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 (11th Cir. 2003). Indeed, "[c]ourts . . . fear . . . the danger of champerty [when there is a] close relationship between the putative class representative and counsel" because the attorneys' fees will far exceed the class representatives' recovery and may result in a settlement less favorable to class members. *Id.* at 1254 (alterations in original) (internal quotation marks and citation omitted). Ms. Faria is a name partner and will directly benefit from any success in this litigation.[16]

---

[16] In cases where the named plaintiffs were adequate representatives notwithstanding their relationships with attorneys, the attorneys were tangentially involved, if at all, and lacked a personal stake in the litigation. *See*, *e.g.*, *DeNicolo*, 2021 WL 1176534, at *6 ("Christopher Hack is not a partner and is one of several attorneys from two different firms acting as counsel to the putative class."); *Farar v. Bayer AG*, Case No. 14-cv-04601-WHO, 2017 WL 5952876, at *7 (N.D. Cal. Nov. 15, 2017) (finding no conflict of interest because while two of the named plaintiffs' husbands worked at the law firm representing them, they were not partners and had no personal stake in the litigation — one was a salaried employee and the other was not working on the case); *Kumar v. Salov N. Am. Corp.*, Case No.: 14-CV-2411-YGR, 2016 WL 3844334, at *3 (N.D. Cal. July 15, 2016) ("Any suggestion of a conflict here is undermined by the fact that Simplicio is not a partner and is only one of several attorneys, from two firms, litigating the case." (citations omitted)); *Kesler v. Ikea U.S. Inc.*, No. SACV 07–568 JVS (RNBx), 2008 WL 413268, at *6 (C.D. Cal. Feb. 4, 2008) ("Kesler sought legal advice from a friend who was a lawyer, and that friend, Sharpe, referred her to Sharpe's law

(continued . . .)

Moreover, the fact that Plaintiffs learned about the products' manufacture outside Hawaiʻi from Ms. Faria, while attending social gatherings at her office, is concerning, and raises questions about what is driving this action.  While not nearly as problematic as those cases where there is an indication of active recruitment, *see*, *e.g.*, *Bodner v. Oreck Direct, LLC*, No. C 06-4756 MHP, 2007 WL 1223777, at *2 (N.D. Cal. Apr. 25, 2007) (where an attorney "constructed [the] lawsuit before it had a plaintiff" and the plaintiff joined the action only after responding to an advertisement by the attorney), the manners in which Plaintiffs learned of the action are similar to other cases where courts have concluded that a conflict exists based in part on the events leading to a plaintiff joining a suit.  *See*, *e.g.*, *Moheb v. Nutramax Laboratories, Inc.*, No. CV 12-3633-JFW (JCx), 2012 WL 6951904, at *5 (C.D. Cal. Sept. 4, 2012) (the plaintiff — a friend of a class counsel's mother — became a client after that counsel began researching viability of class action).

These friendships and discussions about the Hawaiian Snacks alone would not necessarily result in a finding of inadequacy of representation.  Taken together

---

(. . . continued)
firm.  There is little reason to think that Kesler might place the interests of the class counsel in obtaining attorney's fees above those of the absentee class members."), *superseded by statute on other grounds*, Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. No. 110–241, 122 Stat. 1565 (2008) (codified at 15 U.S.C. § 1681n(d)).

34

with other issues related to Maeda, however, the Court is skeptical about Maeda's ability to adequately represent the classes, and his ability to vigorously prosecute this action on behalf of the class.

### b.    Maeda's credibility

The inconsistencies between the SAC, Maeda's deposition, and his errata call into question his credibility, as they bear directly on issues pertaining to the litigation. *See Harris*, 753 F. Supp. 2d at 1015 ("There is 'inadequacy only where the representative's credibility is questioned on issues directly relevant to the litigation or there are confirmed examples of dishonesty[.]'" (citations omitted)). For example, the SAC provides dates and locations at which Maeda purchased the original and luau BBQ flavors of the Hawaiian Kettle Style Potato Chips, and a general price he paid for them.  ECF No. 54 ¶ 12.  Yet at his deposition, Maeda testified that he had no receipts, documentation, or proof of purchase and could not confirm when or where he purchased the subject products in Hawaiʻi or California.[17]  ECF No. 118-2 at 17–20 (46:3–47:21, 53:4–54:25).  Then in his errata, he "clarified" that although he did not have receipts, nor could he identify

---

[17]  In opposing Defendant's motion to strike Maeda's deposition errata, Plaintiffs blame defense counsel's questioning and failure to introduce bank records for Maeda's inability to recall critical details regarding his purchases.  ECF No. 131 at 9.  But Maeda's testimony speaks for itself and he was not hamstrung by the questioning.  Certain portions of Maeda's deposition transcript cited by Plaintiffs were not provided to the Court.

where he purchased the products, he had credit card statements.[18]  ECF No. 118-5; ECF No. 119-1 at 12–13.  Plaintiffs request damages — economic, monetary, actual, consequential, compensatory, punitive, and treble — in the SAC, ECF No. 54 at 64–65, but Maeda disclaimed economic injury during his deposition.  ECF No. 118-2 at 52–55 (155:21–156:17, 175:18–176:16).[19]  Through his errata, he modified his response to suggest a financial injury, albeit a non-serious one.  ECF No. 118-5; ECF No. 119-1 at 13.  These inconsistencies further demonstrate Maeda's inadequacy as a class representative.

### c.    Plaintiffs' commitment to vigorously prosecute this action

In addition to the aforementioned concerns regarding Plaintiffs' adequacy to serve as class representatives, the Court questions Maeda's commitment to vigorously prosecute this case.  Maeda was ill prepared for his deposition and unable to provide basic details about his alleged purchases of the subject products, even representing that he was never able to confirm the details of his purchases.  ECF No. 118-2 at 18–20 (47:6–21, 53:4–54:25).  This conduct demonstrates a

---

[18]  Credit card statements only show dates and locations of purchases, not what was purchased, nor the prices of specific items.  And in any event, Maeda expressly testified that he never had any documentation that could prove purchase date or location.  ECF No. 118-2 at 18–20 (47:6–21, 53:4–54:25).

[19]  Maeda also testified that the Hawaiian Snacks were in the same price range, and not higher, than he would normally pay for chips.  ECF No. 118-2 at 21–22 (60:21–61:13).

limited commitment to protecting the interests of the classes.  *See Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK (AGRx), 2013 WL 4517895, at *3 (C.D. Cal. Aug. 7, 2013) ("Plaintiff never bothered to conduct any due diligence on the purchase that formed the very basis of her claims.  Instead, she testified at her deposition based on unverified memories that turned out to be mostly incorrect.  These issues could have been easily avoided had Plaintiff made the effort to conduct simple due diligence on her claims.  That she failed to do so—and provided a deposition testimony without having done so—raises serious questions about her interest and commitment to protecting the interest of the classes." (citation omitted)).  A plaintiff — especially one seeking to represent a class — should be prepared to answer questions about the most fundamental facts related to his claims.

Defendant questions Smith's commitment to his responsibilities based on his failure to look for an origination label on the products and his indifference regarding discovery responsibilities.  ECF No. 122-4 at 41–42.  When asked why he did not comply with a discovery request asking for the contents of his refrigerator, Smith responded that he thought it was "a bit much" and he "didn't want to."  ECF No. 118-3 at 5 (15:2–8, :15–20).  As a class representative, Smith cannot selectively decide when he wants to fulfill his obligations related to the prosecution of this case, most of which will require far more than responding to a

discovery request.  Nevertheless, these shortcomings, even when coupled with Smith's friendship with Ms. Faria, are insufficient to render Smith inadequate.

Finally, Maeda has not diligently prosecuted this action.  FRCP 23(c)(1)(A) provides:  "*At an early practicable time* after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action."  Fed. R. Civ. P. 23(c)(1)(A) (emphasis added).  Maeda waited over two years after commencing this action, and more than one year after the issuance of *Maeda II*, to seek class certification.  This delay further demonstrates his inadequacy as a class representative.  *See Lau v. Standard Oil Co. of Cal.*, 70 F.R.D. 526, 528 (N.D. Cal. 1975) (holding that the plaintiffs did not prosecute the case with reasonable diligence, due in part to their three-year delay in seeking class certification, and for that "reason, plaintiffs would not fairly and adequately protect the class they now seek to represent within the meaning of Rule 23(a)(4)").

### d.    Adequacy of class counsel

Defendant does not refute class counsel's ability to fairly and adequately represent the classes.  The Court considers "whether proposed counsel is (1) 'qualified, experienced and generally able to conduct the litigation' and (2) will 'vigorously prosecute the interests of the class.'"  *Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245, 261 (N.D. Cal. 2015) (footnote omitted).  Here, proposed class counsel have extensive combined experience litigating class actions

and they represent that they will continue to devote the time and resources necessary to vigorously prosecute this action on behalf of the classes.  ECF No. 96-2; ECF No. 96-30; ECF No. 96-31.  The Court therefore finds that counsel are sufficiently qualified and experienced, and will vigorously prosecute the classes' interests.

For these reasons, while the Court has some concerns about Smith's ability to fairly and adequately represent the class, they do not warrant his disqualification.  On the other hand, Maeda will not fairly and adequately protect the interests of the classes due to his relationship with Ms. Faria, the manner in which he became involved in the litigation, his credibility issues, and his inability and/or unwillingness to vigorously prosecute on behalf of the classes.  *See*, *e.g.*, *Drimmer v. WD-40 Co.*, 343 F. App'x 219, 221 (9th Cir. 2009) (affirming the district court's discretionary decision that the plaintiff was an inadequate class representative based on the plaintiff's personal and landlord-tenant relationship with his attorney and the plaintiff's "disinterest in pursuing all remedies available to him" (internal quotation marks omitted)); *San Pedro-Salcedo v. Häagen-Dazs Shoppe Co.*, Case No. 5:17-cv-03504-EJD, 2019 WL 6493978, at *5 (N.D. Cal. Dec. 3, 2019) (concluding that the plaintiff was not an adequate class representative due to her 13-year personal friendship with her attorney, as well as her attorney's friendship with her husband, and her unfamiliarity with the lawsuit);

39

*Bohn*, 2013 WL 4517895, at *2–4 (concluding that the plaintiff "cannot adequately represent the class, given her inconsistent testimony regarding her purchase, her failure to conduct basic due diligence, and her close personal friendship with" class counsel, with whom she gathered weekly and knew for seven to eight years).

Maeda's inadequacy as a class representative affects the proposed California classes, as only he allegedly purchased the Hawaiian Snacks in California. "A named plaintiff must be a member of the class she seeks to represent[.]" *Sali*, 909 F.3d at 1007 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 156 (1982)). Because Smith is not a member of the California classes, he cannot represent those classes.

In sum, Plaintiffs satisfy FRCP 23(a)(1)–(3). Smith and class counsel also satisfy FRCP 23(a)(4). Maeda is an inadequate class representative, so the California classes cannot be certified. The Court now turns to FRCP 23(b).

## B.    FRCP 23(b)(2)

Plaintiffs request certification of an injunctive relief class. FRCP 23(b)(2) authorizes a court to certify an injunctive relief class when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Insofar as Plaintiffs lack standing to pursue injunctive relief, a class cannot be certified pursuant to FRCP 23(b)(2).

*See In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 575–76 (C.D. Cal. 2014) (declining to certify classes under FRCP 23(b)(2) because none of the named plaintiffs had standing to pursue injunctive relief).

### C.   FRCP 23(b)(3)

Under FRCP 23(b)(3), Plaintiff must demonstrate that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### a.   Predominance

FRCP 23(b)(3)'s predominance requirement "is even more demanding" than the commonality prerequisite in FRCP 23(a)(2). *See Comcast*, 569 U.S. at 34 (citation omitted); *see also Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied by [a] shared experience, the predominance criterion is far more demanding." (citation omitted)). It "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623 (citation and footnote omitted). This requires courts to carefully scrutinize "the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). Individual questions involve evidence "'that varies from member to member,'" while common questions allow class members to

utilize the same evidence "'to make a prima facie showing [or] the issue is

susceptible to generalized, class-wide proof.'"  *Id.* (alteration in original) (quoting

2 William Rubenstein, *Newberg on Class Actions* § 4:50 at 196–97 (5th ed. 2012)).

"When 'one or more of the central issues in the action are common to the class and

can be said to predominate, the action may be considered proper under Rule

23(b)(3) even though other important matters will have to be tried separately, such

as damages or some affirmative defenses peculiar to some individual class

members.'"  *Id.* at 453–54 (quoting 7AA Charles Alan Wright, Arthur R. Miller &

Mary Kay Kane, *Federal Practice and Procedure* § 1778 at 123–24 (3d ed. 2005)).

A plaintiff must establish predominance by a preponderance of the evidence.

*See Olean*, 993 F.3d at 784.  That is, "the evidence used to satisfy predominance

[must] be 'sufficient to *sustain a jury finding* as to liability if it were introduced in

each plaintiff's individual action.'"  *Id.* at 785 (brackets omitted) (quoting *Tyson*,

577 U.S. at 459).  A district court's failure to sufficiently determine that

predominance is met before certifying a class is an abuse of discretion.  *See id.* at

784 (citation omitted).

Plaintiffs argue that they establish predominance because (1) common

questions of fact and law predominate with respect to their claims; (2) materiality

is subject to common proof; (3) there is an inference of reliance; and (4) damages

can be proved class wide.  ECF No. 105 at 20–30.  "[A]t the class-certification

stage (as at trial), any model supporting a 'plaintiff's damages case must be

consistent with its liability case,'" and "a model purporting to serve as evidence of

damages in this class action must measure only those damages attributable to that

theory." *Comcast*, 569 U.S. at 35 (citations omitted).  "[U]ncertainty regarding

class members' damages does not prevent certification of a class as long as a valid

method has been proposed for calculating those damages."  *Nguyen v. Nissan N.

Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019) (internal quotation marks and citation

omitted).

Because Plaintiffs' damages' model cannot satisfy the predominance

inquiry, the Court discusses it first.  Plaintiffs advance a price premium theory[20] of

liability and damages, proffering that all consumers paid a premium for the

Hawaiian Snacks based on the mistaken belief that the snacks are made in

Hawai'i.[21]  ECF No. 105 at 29.  Plaintiffs' damages model consists of two parts:

(1) Dr. Dennis' empirical survey purportedly demonstrating that the product

packaging causes consumers to believe the products are from Hawai'i and (2)

Boedeker's conjoint analysis calculating a price premium based on that belief.  *Id.*

---

[20] At the hearing, defense counsel characterized Plaintiffs' price premium theory as a fraud on the market theory and argued that the latter is not supported by Plaintiffs' damages model.

[21]  The price premium theory differs somewhat from Plaintiffs' existing theory of liability in that it assumes all consumers overpaid for the Hawaiian Snacks, regardless of whether they were deceived or were willing to pay the retail price.

Notably, Plaintiffs emphasize that Boedeker's model, *coupled* with Dr. Dennis'
survey, comports with their theory of liability.  But Dr. Dennis' survey
demonstrates that a significant percentage of class members would be uninjured.

One of the Court's key factual determinations in considering predominance
"is whether the plaintiffs' statistical evidence sweeps in uninjured class members."
*Olean*, 993 F.3d at 791.  Through generalized evidence, Plaintiffs must establish
"that all (or nearly all) members of the class suffered damage as a result of"
Defendant's conduct.  *Id.* (internal quotation marks and citation omitted).  "If a
substantial number of class members 'in fact suffered no injury,' the 'need to
identify those individuals will predominate,'" and so the Court "cannot find by a
preponderance of the evidence that 'questions of law or fact common to class
members predominate over any questions affecting only individual members.'"  *Id.*
at 791–92 (citations omitted).[22]

Although "the mere presence of some non-injured class members does not
defeat predominance, . . . the number of uninjured class members must be *de
minimis*."  *Id.* at 793 n.12.  The Ninth Circuit has yet to establish "a threshold for
how great a percentage of uninjured class members would be enough to defeat

---

[22]  Without reaching the issue, the Ninth Circuit recently expressed concerns about
Article III standing implications when uninjured parties are part of a certified class.
*See Olean*, 993 F.3d at 791 n.7.

predominance" but other courts have identified a *de minimis* outer limit of 5% to 6%.  *See id.* at 792–93 (citations omitted).

According to Dr. Dennis' "consumer perception" survey results, 83.4% and 90.5% of survey respondents in California[23] and Hawai'i, respectively, believe the Hawaiian Snacks are made in Hawai'i based on the front packaging.  ECF No. 96-32 ¶ 20.  By correlation, 16.6% of California respondents and 9.5% of Hawai'i respondents do not think the products are made in Hawai'i.  ECF No. 118-31 ¶ 118.  Adjusting these calculations to reflect the proposed classes, *i.e.*, purchasers of the Hawaiian Snacks, Dr. Lemon explains that as much as 27% of California purchasers and 16.7% of Hawai'i purchasers do not believe the products are made in Hawai'i based on the front packaging.  *Id.*

Dr. Dennis also reports that 55% and 80.8% of surveyed consumers in California and Hawai'i, respectively, "(i) perceived that the Products were made in Hawaii and (ii) stated a preference to purchase the Products made in Hawaii rather than the Products made in the state of Washington."  ECF No. 96-32 ¶ 24.  In other words, these consumers' belief that the Hawaiian Snacks were made in Hawai'i based on Defendant's packaging was material to their purchasing decision.[24]  *Id.*

---

[23]  The Court already determined that the California classes cannot be certified but includes the California results for illustrative purposes.

[24]  With respect to materiality, Plaintiffs inexplicably argue in part that materiality

(continued . . .)

¶ 23.  However, the foregoing calculations conversely reveal that 45% of consumers in California and 19.2% of consumers in Hawaiʻi are uninjured under Plaintiffs' theory of liability because they "(1) did not mistakenly believe that the challenged products were made in Hawaiʻi as a result of Defendant's alleged misconduct; *or* (2) do not value the challenged products more when they are made in Hawaiʻi from local ingredients rather than otherwise."  ECF No. 118-31 ¶ 129.  Dr. Lemon explains that modifying Dr. Dennis' calculations to account for only those respondents who *purchased* the Hawaiian Snacks — as required by the proposed class definitions — up to 51% and 26.8% of purchasers in California and Hawaiʻi, respectively, were not injured.[25]  *Id.* ¶ 130.  Even relying on the figures

_____

(. . . continued)
is established as a matter of law because Hawaii's legislature enacted HRS § 486-111 to prohibit deceptive made in Hawaiʻi claims.  ECF No. 134 at 17 n.4.  The Court *dismissed* Plaintiffs' HRS § 486-111 claim on the bases that the statute was implemented to protect local craftspeople, not consumers, and that it does not authorize a private cause of action.  *See Maeda I*, 390 F. Supp. 3d at 1248–50.  So, it is unclear how HRS § 486-111 supports Plaintiffs' position in any respect.  Plaintiffs also reference a study commissioned by the legislature examining the economic impacts of deceptive Hawaiʻi origin claims.  ECF No. 105 at 27.  Curiously, Plaintiffs provide a website citation to testimony submitted in connection to the relevant bill, but not a citation to the bill itself.  *Id.* n.8.

[25]  Dr. Lemon opines that these percentages would likely be higher if additional sources of information, such as the rear labels on the packaging, are considered.  ECF No. 118-31 ¶ 130.

more favorable to Plaintiffs, 45% and 19.2% are not *de minimis*.[26]  *See Olean*, 993 F.3d at 793 ("[U]nder any rubric, if Plaintiffs' model is unable to show impact for more than one-fourth of the class members, predominance has not been met. While we do not set the upper bound of what is *de minimis*, it's easy enough to tell that 28% would be out-of-bounds." (footnote omitted)).  Inasmuch as Dr. Dennis' surveys reveal that the class includes too many uninjured members, Plaintiffs cannot satisfy the predominance requirement.

Plaintiffs unpersuasively argue that 100% of the class is injured because all members overpaid for the Hawaiian Snacks.  ECF No. 133 at 18; ECF No. 134 at 22.  This necessarily assumes that all class members were confused or misled by the packaging and that they would not have paid the alleged price premium had they known the Hawaiian Snacks were not made in Hawaiʻi.  But Dr. Dennis' survey results establish otherwise.  Thus, to the extent Plaintiffs rely on Boedeker's calculations alone to demonstrate that a sufficient number of class members were injured, they come up short because Boedeker's calculations are predicated on Dr. Dennis' survey results regarding the belief that the Hawaiian Snacks are made in Hawaiʻi.  *See* ECF No. 133 at 19 ("Plaintiffs' two-pronged approach . . . uses CBC

---

[26] Although a closer call, the survey results concerning the packaging likewise exceed a *de minimis* limit.  But these results cannot be viewed in isolation because they only measure whether the packaging caused respondents to believe the Hawaiian Snacks are made in Hawaiʻi.

to isolate the price premium attributable solely to the belief the Product is from

Hawai'i, but only after establishing this predicate belief based on the packaging

through Dr. Dennis' empirical survey.").  Indeed, Boedeker's model does not

address the Hawaiian Snacks' packaging, which is a critical component of

Plaintiffs' theory of liability that consumers were deceived into believing that the

products were made in Hawai'i.[27]  Boedeker measures the price premium of

consumers' preference for a product made in Hawai'i, as compared with one made

in Washington.  *See Comcast*, 569 U.S. at 35 ("[A] model purporting to serve as

evidence of damages in this class action must measure only those damages

attributable to that theory.").

Having failed to provide a damages model measuring damages attributable

to their theory of liability, Plaintiffs cannot satisfy FRCP 23(b)(3)'s predominance

requirement.  In light of this determination, it is unnecessary to address FRCP

23(b)(3)'s superiority requirement.  Plaintiffs have not met FRCP 23(b)(2) or (3).

Hence, class certification is DENIED.

//

//

//

---

[27]  At the hearing, Plaintiffs' counsel conceded that should the Court find deficient either prong of Plaintiffs' damages model, the damages model fails, and Plaintiffs cannot satisfy FRCP 23(b)(3).

# CONCLUSION

In accordance with the foregoing, the Court:

(1) DENIES Plaintiffs' Motion for Class Certification [ECF No. 96];

(2) DENIES WITHOUT PREJUDICE Defendant's Motion to Strike Plaintiff Michael Maeda's "Sham" Deposition Testimony [ECF No. 119];

(3) DENIES Defendant's Motion to Exclude the Testimony of Plaintiffs' Expert J. Michael Dennis [ECF No. 120];

(4) DENIES Defendant's Motion to Exclude the Testimony of Plaintiffs' Expert Stefan Boedeker [ECF No. 121];

(5) DENIES AS MOOT Plaintiffs' Motion to Exclude Testimony of Defendant's Expert Sarah Butler [ECF No. 139];

(6) DENIES Plaintiffs' Motion to Strike ECF No. 118-20 [ECF No. 140];

(7) DENIES AS MOOT Plaintiffs' Motion to Exclude Testimony of Defendant's Expert Andrew Y. Lemon [ECF No. 141].

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, June 23, 2021.



Jill A. Otake
United States District Judge

Civil No. 18-00459 JAO-WRP, *Maeda, et al. v. Kennedy Endeavors, Inc.*; ORDER DENYING PENDING MOTIONS (ECF NOS. 96, 119–121, 139–141)