IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MICHAEL MAEDA and RICK SMITH, individually and on behalf of all others similarly situated, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>KENNEDY ENDEAVORS, INC., et al.,<br><br>Defendants. | CIVIL NO. 18-00459 JAO-WRP<br><br>**ORDER (1) DENYING PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SARAH BUTLER; (2) DENYING AS MOOT PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT ANDREW Y. LEMON; AND (3) DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT STEFAN BOEDEKER** |

**ORDER (1) DENYING PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SARAH BUTLER; (2) DENYING AS MOOT PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT ANDREW Y. LEMON; AND (3) DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT STEFAN BOEDEKER**

This action arises out of the sale and marketing of Defendant Kennedy Endeavors, Inc.'s ("Defendant") Hawaiian Kettle Style Potato Chips in Original, Luau BBQ, and Sweet Maui Onion flavors (collectively, "Hawaiian Snacks"). Plaintiffs Michael Maeda ("Maeda") and Rick Smith ("Smith") (collectively, "Plaintiffs") allege that they purchased certain varieties of these snacks due to false and deceptive labeling, packaging, and advertising, which misled them into believing that the snacks are made in Hawaiʻi from local ingredients.

Plaintiffs move to exclude the reports and testimony of defense experts Sarah Butler and Andrew Y. Lemon, and Defendant moves to exclude the report and testimony of Plaintiffs' expert Stefan Boedeker ("Boedeker"). At the hearing, Plaintiffs withdrew Boedeker as an expert with respect to individual damages.[1] For the following reasons, the Court DENIES the motions. ECF Nos. 175, 176, 180.

## BACKGROUND

Maeda and formerly named plaintiff Iliana Sanchez ("Sanchez") commenced this action on October 12, 2018 in the Hawaiʻi Circuit Court of the First Circuit. Defendant Pinnacle Foods Inc.[2] subsequently removed the action on November 23, 2018.

On May 10, 2019, the Court issued an Order Granting in Part and Denying in Part Defendant Pinnacle Foods Inc.'s Motion to Dismiss Plaintiffs' Class Action Complaint, which (1) dismissed Sanchez's claims for lack of personal jurisdiction; (2) dismissed with prejudice the "Made in Hawaii" claim; (3) dismissed with leave to amend the Hawaiʻi Revised Statutes ("HRS") Chapter 480, California consumer

---

[1] Plaintiffs' counsel represented that Boedeker would not be utilized to oppose summary judgment or at trial, if this case proceeds only as to Plaintiffs.

[2] "Pinnacle Foods, Inc. merged into Peak Finance Holdings LLC, which distributed all assets to Kennedy Endeavors, Inc." ECF No. 44 at 2. Maeda changed Defendant's name to Kennedy Endeavors, Inc. in the corrected First Amended Class Action Complaint. ECF No. 47.

protection, breach of warranty, and fraud/intentional misrepresentation claims; (4) denied the Motion to Dismiss as to the jurisdictional challenges to the unnamed non-resident class members; and (5) denied the Motion to Dismiss as to the Hawai'i false advertising, negligent misrepresentation, quasi-contract/unjust enrichment/restitution claims, and the request for injunctive relief.  *See Maeda v. Pinnacle Foods Inc.*, 390 F. Supp. 3d 1231 (D. Haw. 2019) ("*Maeda I*"); *see also* ECF No. 32.  The Court granted Plaintiffs until June 10, 2019 to file an amended pleading in conformance with the Order.  *See Maeda I*, 390 F. Supp. 3d at 1262.

Plaintiffs timely filed a first amended complaint, adding Smith and a Hawai'i Uniform Deceptive Trade Practices Act ("UDTPA") claim.  ECF No. 39.  The Court struck that filing for violating the Order but allowed Plaintiffs to file another first amended complaint that conformed with the Order.  ECF No. 46.  Maeda subsequently filed a corrected First Amended Class Action Complaint ("FAC").  ECF No. 47.

Maeda then filed a Motion for Leave to File Second Amended Class Action Complaint.  ECF No. 50.  The Magistrate Judge granted the motion for good cause, noting the lack of opposition.  ECF No. 53.  On July 17, 2019, Plaintiffs filed their Second Amended Class Action Complaint ("SAC").  ECF No. 54.

Plaintiffs maintain that although the Hawaiian Snacks are manufactured in Algona, Washington, Defendant markets them in such a manner as to mislead

consumers into believing that they were manufactured in Hawaiʻi.  The SAC asserts the following claims:  (1) violation of Hawaii's Unfair Deceptive Acts or Practices Statute ("UDAP"), HRS Chapter 480 (Count 1); (2) violation of Hawaii's false advertising law, HRS § 708-871 (Count 2); (3) violation of UDTPA, HRS Chapter 481A (Count 3); (4) violation of California's Consumers Legal Remedies Act ("CLRA"), Cal. Civil Code § 1750 (Count 4); (5) violation of California's unfair competition law ("UCL"), Cal. Bus. & Pros. Code § 17200 (Count 5); (6) violation of California's false advertising law ("FAL"), Cal. Bus. & Pros. Code § 17500 (Count 6); (7) common law fraud/intentional misrepresentation (Count 7); (8) negligent misrepresentation (Count 8); and (9) quasi-contract/unjust enrichment/restitution (Count 9).  ECF No. 54.

> The three proposed classes identified by Plaintiffs are as follows:
>
> Hawaiʻi Class:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of Hawaiʻi.
>
> California Class:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks, in the State of California.
>
> California Consumer Subclass:  All persons, who, within the relevant statute of limitations period, purchased any of the Hawaiian Snacks for personal, family, or household purposes, in the State of California.

*Id.* ¶ 54.  The class periods span from October 12, 2012 to December 31, 2019.

ECF No. 105 at 9 n.1.

In their prayer for relief, Plaintiffs request: a declaration that Defendant's conduct violates the law, injunctive and other equitable relief, restitution, damages, punitive damages, treble damages, attorneys' fees and costs, and pre- and post-judgment interest.  ECF No. 54 at 64–65.

On July 31, 2019, Defendant filed a Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint Filed on July 17, 2019.  ECF No. 55.  On September 19, 2019, the Court granted in part and denied in part the motion.  *See Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953, 963 (D. Haw. 2019) ("*Maeda II*"); *see also* ECF No. 74.  The Court dismissed the California consumer protection claims (Counts 4 to 6) and dismissed with leave to amend the UDTPA claim (Count 3).  The Court declined to dismiss the UDAP (Count 1), Hawaiʻi false advertising (Count 2), fraud/intentional misrepresentation (Count 7), negligent misrepresentation (Count 8), and quasi-contract/unjust enrichment (Count 9) claims, and denied Defendant's standing challenge regarding unpurchased Hawaiian Snacks.  Plaintiffs did not amend the SAC even though the Court permitted them to do so.  Therefore, Plaintiffs' UDAP, Hawaiʻi false advertising, fraud/intentional misrepresentation, negligent misrepresentation, and quasi-contract/unjust enrichment claims remain.

On November 30, 2020, Plaintiffs filed a Motion for Class Certification.  ECF No. 96.

5

On February 22, 2021, Defendant filed three motions — Motion to Strike Plaintiff Michael Maeda's "Sham" Deposition Testimony; Motion to Exclude the Testimony of Plaintiffs' Expert J. Michael Dennis; and Motion to Exclude the Testimony of Plaintiffs' Expert Stefan Boedeker.  ECF Nos. 119–121.

On April 2, 2021, Plaintiffs filed three motions — Motion to Exclude Testimony of Defendant's Expert Sarah Butler; Motion to Strike ECF No. 118-20; and Motion to Exclude Testimony of Defendant's Expert Andrew Y. Lemon.  ECF Nos. 139–141.

On June 23, 2021, the Court denied the foregoing motions.  ECF No. 163; *see also Maeda v. Kennedy Endeavors, Inc.*, CIVIL NO. 18-00459 JAO-WRP, 2021 WL 2582574 (D. Haw. June 23, 2021).

On June 30, 2021, Defendant filed a Renewed Motion to Strike Plaintiff Michael Maeda's "Sham" Deposition Testimony[3] and Plaintiffs filed an *Ex Parte* Motion to Stay Pending Rule 23(f) Petition.[4]  ECF Nos. 165–166.  The Court denied the Ex Parte Motion to Stay.[5]  ECF No. 167.

---

[3]  The Court granted the motion on September 10, 2021.  ECF No. 207.

[4]  Plaintiffs filed a Petition for Permission to Appeal with the Ninth Circuit on July 7, 2021.  ECF No. 170.

[5]  The Ninth Circuit also denied Plaintiffs' emergency motion to stay district court proceedings.  ECF No. 181.

On July 16, 2021, the parties filed the motions that are the subject of this Order: (1) Plaintiffs' Renewed Motion to Exclude Testimony of Defendant's Expert Sarah Butler, ECF No. 175; (2) Plaintiffs' Renewed Motion to Exclude Testimony of Defendant's Expert Andrew Y. Lemon, ECF No. 176; and (3) Defendant's Motion to Exclude Plaintiffs' Expert Stefan Boedeker, ECF No. 180. They filed oppositions on August 2, 2021 and replies on August 9, 2021.[6]  ECF Nos. 195–197, 200–202.

The Court held a hearing on September 22, 2021.  ECF No. 209.

## LEGAL STANDARD

The admissibility of expert reports is evaluated under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).[7]  "Under *Daubert*, 'the district

---

[6] The parties are reminded that they must attach all evidence cited in their motions and memoranda and may not cite generally to evidence (*e.g.*, deposition transcripts or expert reports) that can be found elsewhere in the record.  It is not the Court's responsibility to comb through the record to locate the evidence relied upon by the parties.

[7] Federal Rule of Evidence ("FRE") 702 governs the admissibility of expert evidence.  *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003).  Experts may offer opinions based on their "knowledge, skill, experience, training, or education" if these requirements are met: (1) "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue"; (2) "the testimony is based on sufficient facts or data"; (3) "the testimony is the product of reliable principles and methods"; and (4) "the expert has reliably applied the principles and methods to the facts of the case."  Fed. R. Evid. 702.

court judge must ensure that all admitted expert testimony is both relevant and reliable.'" *Grodzitsky v. Am. Honda Motor Co.*, 957 F.3d 979, 984 (9th Cir. 2020) (quoting *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232 (9th Cir. 2017)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (internal quotation marks and footnote omitted). The Court's gatekeeping function extends to all expert testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

**A.   Reliability**

District courts have broad latitude in determining reliability and deciding how to determine reliability. *See Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). The following nonexclusive factors bear on the reliability of a particular scientific theory or technique: "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593–94). District courts need not "examine factors that are not 'reasonable measures of reliability in a particular case.'" *Id.* (citation omitted).

"'The focus of the district court's analysis must be solely on principles and methodology, not on the conclusions that they generate,' and 'the court's task is to analyze not what the experts say, but what basis they have for saying it.'" *Grodzitsky*, 957 F.3d at 984–85 (citation omitted); *see also Daubert*, 509 U.S. at 592–93. The district court's function is to "screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013).

**B.     Relevance**

"[R]elevance means that the evidence will assist the trier of fact to understand or determine a fact in issue." *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007) (citing *Daubert*, 509 U.S. at 591–92). That is, "[t]he evidence must logically advance a material aspect of the party's case." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995)). The district court "is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Alaska Rent-A-Car*, 738 F.3d at 969–70. A court's gatekeeping inquiry "must be tied to the facts of a particular case." *Cooper*, 510 F.3d at 942 (some internal quotation marks and citations omitted).

## DISCUSSION

A.    **Defense Expert Sarah Butler**

Plaintiffs move to exclude Sarah Butler's ("Butler") testimony on relevance grounds. ECF No. 175-1 at 7. They argue that while Butler attempted to measure the importance of the attribute "Manufacturing Location" and its relative importance, she did not measure the importance of the belief that the Hawaiian Snacks are from Hawai'i, which is the relevant test for materiality. *Id.* Defendant counters that Butler in fact conducted a two-part consumer survey: (1) a MaxDiff exercise ("MaxDiff") that measured how important the manufacturing location of kettle style chips was to consumers in comparison to other "important purchase drivers" *and* (2) a revised referendum exercise ("RRE") that measured whether a consumer's belief that the chips were made in Hawai'i influenced purchasing decisions. ECF No. 195 at 7 (citation omitted); *id.* at 9–14.

As a preliminary matter, the Court addresses Plaintiffs' failure to discuss or challenge the RRE in the motion. Because Plaintiffs initially sought Butler's exclusion based *solely* on the MaxDiff's purported shortcomings — which would logically be limited to Butler's MaxDiff testimony — the Court will not consider Plaintiffs' additional request to exclude Butler based on defects in the RRE, raised for the first time in the reply. *See Savage ex rel. United States v. CH2M Hill Plateau Remediation Co.*, No. 4:14-cv-05002-SMJ, 2020 WL 8678015, at *4 n.1

(E.D. Wash. Apr. 20, 2020) ("A moving party may not request new or additional relief for the first time in a reply brief."); *see also* Local Rule 7.2 ("Any argument raised for the first time in the reply shall be disregarded."). The Court rejects Plaintiffs' contention that "this argument is subsumed within the general relevance argument Plaintiffs advanced in their opening brief." ECF No. 201 at 18. Indeed, the crux of Plaintiffs' relevance argument is that Butler failed to measure the significance to consumers that a product is manufactured in Hawaiʻi.[8] But in so arguing, Plaintiffs ignore the RRE altogether. Therefore, the Court is unconvinced that Plaintiffs' legitimately challenged the RRE in their motion. In any event, for the reasons discussed in this Order, Butler's testimony regarding the RRE is relevant and is not subject to exclusion.

Plaintiffs' relevance argument necessarily fails, whether applied to the MaxDiff, the RRE, or both. For their theory of liability, Plaintiffs' materiality question is "whether the belief the Products are from Hawaiʻi is important to

---

[8] Although the reply permissibly responded to Defendant's refutation of this argument — necessitated by Plaintiffs' selective presentation of the scope of Butler's surveys — Plaintiffs may not expand the scope of/basis for the requested relief in their reply. At the hearing, Plaintiffs' counsel argued that Defendant is not harmed because it has been aware of Plaintiffs' challenges. Plaintiffs' counsel also contended that the Court previously exercised leniency, *i.e.*, allowing Defendant to incorporate by reference a memorandum in support of its Renewed Motion to Strike Maeda's "Sham" Deposition Testimony. However, the Court did not consider the memorandum incorporated by reference, and therefore declined to deny the motion on the procedural grounds urged by Plaintiffs. ECF No. 207 at 2.

consumers." ECF No. 175-1 at 7. Butler's conclusions, based on both the MaxDiff and RRE, address that very question:

> 98. I have corrected many of the flaws in Dr. Dennis' survey and can use these results to appropriately estimate the extent to which the product packaging relative to packaging which clearly states the product is not made in Hawaii would have an impact on consumer purchases. The research I conducted stands in marked contrast to Dr. Dennis' survey. I find there is no difference in purchasing intent between those shown the at-issue label and those shown a label which states "Not a Product of Hawaii" on the front of the package. A total of 40.2 percent of respondents shown the packaging Plaintiffs allege is misleading indicate this is their preferred product compared to 40.9 percent of respondents shown the package clearly indicating the product is not made in Hawaii. The net difference of -0.8 percent is not statistically significantly different. These results demonstrate that whatever features of the chips affect consumers' interest in purchasing, it is not a belief that the product is made in Hawaii.
>
> 99. Further, rather than ask biased questions, I designed a test to understand the importance consumers place (if any) on manufacturing location within the context of all of the other factors that might influence a purchase decision. My results show respondents view price, flavor, brand, and package size as important characteristics. More than half of all survey respondents selected one of these items as "most important" in at least one of their preference sets. In stark contrast, and contrary to Dr. Dennis' survey results, 669 of 905 (74 percent) of respondents identified manufacturing location as the least important product attribute in even a single one of their preference sets, placing it last of the 14 attributes ranked.

ECF No. 118-33 at 51–52.

Plaintiffs focus heavily on the legal standard for materiality to claim that Butler's testimony is irrelevant, arguing that "materiality is not a test of relative

importance" of a product's attributes, ECF No. 175-1 at 13, but rather "whether 'a reasonable consumer would attach importance' to the representation." *Id.* at 12 (quoting *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013)); *see* ECF No. 201 at 8–13.  Although Plaintiffs accuse Defendant of promoting a materiality legal standard that *requires* a comparison of product attributes, *see* ECF No. 201 at 10–11, Defendant in fact argues that courts have admitted surveys and evidence similar to the MaxDiff "because other product attributes are relevant to whether the challenged statements actually impact reasonable consumers' purchasing decisions."  ECF No. 195 at 19 (citations omitted).[9]  This is consistent with the materiality standard relied upon by Plaintiffs, and even if it were not, Defendant's reliance on an incorrect materiality standard would not itself render Butler's testimony irrelevant.

     Plaintiffs clearly disagree with Butler's conclusions, but the Court's role in evaluating relevance is limited to whether Butler's testimony would assist a jury, not whether she is correct.  *See Alaska Rent-A-Car*, 738 F.3d at 969–70.  Because Butler squarely addresses whether the belief that a product is made in Hawai'i is important to consumers (Plaintiffs' materiality question), her testimony is relevant.  As such, the Court DENIES Plaintiffs' motion to the extent it seeks exclusion on relevance grounds.

---

[9]  The cases cited by Defendant support this argument.  ECF No. 195 at 19.

Plaintiffs alternatively argue that the MaxDiff is unreliable due to bias. ECF No. 175-1 at 9. Specifically, Plaintiffs accuse Butler of selecting product attributes designed to skew the results to Defendant's desired outcome, *e.g.*, "Manufacturing Location," because it is ambiguous and would unlikely be selected by survey participants as the most important product attribute. *Id.* Plaintiffs describe the MaxDiff as "an extreme example of biased design compounded by modification of attributes to reach an intended result," that fails to accord with scientifically accepted principles.[10] ECF No. 201 at 16. They contend that Butler's improper ascription of positive modifiers to certain attributes (*i.e.*, low fat, non-GMO, affordable price, low salt) was compounded by the MaxDiff's construction, which required participants to select the most important and the least important attributes from a list of six. *Id.*

The Ninth Circuit has "long held that survey evidence should be admitted 'as long as [it is] conducted according to accepted principles and [is] relevant.'" *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1036 (9th Cir. 2010) (alterations in original) (citations omitted); *see also ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 613 (9th Cir. 2016) (holding that the district court erred in excluding survey evidence on materiality). Even "'technical inadequacies' in a survey, 'including the format of

---

[10] Plaintiffs present no legal authority to support exclusion on these grounds.

the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.'" *Fortune Dynamic*, 618 F.3d at 1036 (citations omitted). This includes methodology, self-serving questions, objectivity, and counterintuitive results. *See id.* at 1037; *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997); *Keith v. Volpe*, 858 F.2d 467, 481 (9th Cir. 1988); *Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp. of Cal.*, 694 F.2d 1150, 1156 (9th Cir. 1982) (rejecting minority position that a survey containing self-serving questions and failing to duplicate actual marketing conditions is properly excluded; adopting majority view because the better course is "to admit the survey and discount its probative value" (citation omitted)). Thus, even if the Court were to find merit in Plaintiffs' criticisms of the MaxDiff, the challenges pertain to "'methodology, survey design, reliability, . . . [and] critique of conclusions,' and therefore 'go to the weight of the survey rather than its admissibility.'" *Fortune Dynamic*, 618 F.3d at 1038 (alterations in original) (citations omitted). The Court accordingly DENIES Plaintiffs' motion to exclude. ECF No. 175.

**B.    Plaintiffs' Expert Stefan Boedeker**

Defendant moves to exclude Boedeker on the bases that the Court already rejected his damages model in denying class certification and his conjoint methodology is flawed. ECF No. 180-1 at 7–8; ECF No. 200 at 5–7. Because Plaintiffs withdrew Boedeker as an expert with respect to individual damages and

they will not rely on his report or call him as a witness (assuming the case proceeds only as to Plaintiffs), the motion is DENIED as moot.[11]

### C. Defense Expert Dr. Andrew Y. Lemon

Plaintiffs ask the Court to exclude key findings numbers 8 and 9 from Dr. Andrew Y. Lemon's ("Dr. Lemon") report. ECF No. 176-1 at 3. These findings address Boedeker's conjoint analysis, among other things. ECF No. 118-31 at 11–14 (¶¶ 38–46). Because Plaintiffs have withdrawn Boedeker as an expert regarding individual damages, Dr. Lemon will have no reason to address Boedeker's findings. Plaintiffs' motion to exclude is therefore DENIED as moot.[12] ECF No. 176.

//

//

//

//

//

//

//

---

[11] Defense counsel conceded that the motion is moot if Boedeker is withdrawn.

[12] At the hearing, Plaintiffs' counsel conceded that the motion is mooted by Boedeker's withdrawal.

## CONCLUSION

In accordance with the foregoing, the Court:

(1) DENIES Plaintiffs' Renewed Motion to Exclude Testimony of Defendant's Expert Sarah Butler [ECF No. 175];

(2) DENIES AS MOOT Plaintiffs' Renewed Motion to Exclude Testimony of Defendant's Expert Andrew Y. Lemon [ECF No. 176]; and

(3) DENIES AS MOOT Defendant's Motion to Exclude Plaintiffs' Expert Stefan Boedeker [ECF No. 180].

IT IS SO ORDERED.

DATED: Honolulu, Hawaiʻi, September 24, 2021.

Jill A. Otake
United States District Judge

Civil No. 18-00459 JAO-WRP, *Maeda, et al. v. Kennedy Endeavors, Inc.*; ORDER (1) DENYING PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT SARAH BUTLER; (2) DENYING AS MOOT PLAINTIFFS' RENEWED MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S EXPERT ANDREW Y. LEMON; AND (3) DENYING AS MOOT DEFENDANT'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT STEFAN BOEDEKER

17